UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GENERAL WAITERS,
                      Petitioner,

  -against-

WILLIAM LEE, Superintendent of
Greene Haven Correctional Facility,
                      Respondent.
-------------------------------------------------------x

**PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 USC§2254**

CV13-3636

GLEESON, J.

**PETITION**

1.    Petitioner submits this petition in support of his request for a writ of habeas corpus pursuant to 28 USC §2254.

2.    The name and location of the court which entered the judgment of conviction under attack is Kings County Supreme Court, 320 Jay Street, Brooklyn, 11201.

3.    The date of the judgment of conviction is June 2, 2008.

4.    The length of the sentence that petitioner received is 50 years to life.

5.    The nature of the offenses involved are Murder in the Second Degree (PL 125.25(1)), attempted murder in the second degree (PL 110/125/25(1)), three counts of Assault in the first degree (PL120.10(1)); Criminal Possession of a weapon in the second degree and forth degree.

1

6. Petitioner entered a plea of not guilty and had a trial by jury. Petitioner did not testify on his own behalf.

7. Petitioner appealed the judgment of conviction to the Appellate Division, Second Department. The grounds raised on appeal were: (1) The verdict was against the weight of the evidence; and (2) petitioner was denied due process to a fair trial by as a result of prosecutorial misconduct, (3) Petitioner was deprived of ineffective assistance of counsel; (4) Petitioner was illegally sentenced in violation of PL §70.25.

8. On May 8, 2012, the Appellate Division, Second Department affirmed the judgment of conviction. People v. Waiters, 95 AD.3d 1043, 943 NYS.2d 589.

9. On August 7, 2012, the New York Court of Appeals denied leave to appeal. People v. Waiters, 19 NY.3d 1002, 975 NE.2d 924.

10. On October 5, 2010, petitioner filed a motion to vacate the judgment of conviction pursuant to CPL §440.10(1)(h). Petitioner alleged that his trial counsel was ineffective because his attorney failed to (1) call an expert witness to explain and interpret medical records that would have established how intoxicated petitioner was, and (2) counsel requested an inappropriate lesser offense that forced the jury to convict on the top count of intentional murder in the second degree, and he failed to request lesser offenses for the remaining intentional counts.

11. January 26, 2011, the Kings County Supreme Court, rendered a decision summarily denying petitioner's motion without a hearing. The court held petitioner's claim of ineffective assistance could be raised on direct appeal.[1]

12. In 2011, before the perfection of petitioner's direct appeal, the Appellate Division, Second Department, denied leave to appeal. Petitioner did not appeal to the New York Court of Appeals.

## FACTUAL HISTORY OF CASE[2]

13. The petitioner, General Waiters (hereinafter "Mr. Waiters"), had a problem with alcohol. He and his girlfriend Jacqueline drank every day, finishing a fifth bottle of rum in a day or two. Waiters became verbally abusive when he drank. They drank with Jacqueline's aunt, Mary Lee Clark, every other weekend (Tr. 286, 390, 436-437).

14. On May 6, 2006, Jacqueline held a birthday party for Mr. Waiters. Mr. Waiter's began drinking Bacardi Light rum mixed with soda before 2 p.m., and Jacqueline and the others joined in later. Mr. Waiters did not stop drinking until well after 11 p.m. (Tr. 434, 438). The next morning before 11 a.m. Jacqueline, Mary Lee Clark, and Mr. Waiters began drinking rum again. Approximately a half

---

[1] However, when the same claims were raised on the subsequent direct appeal, the Appellate Division, Second Department, held: "Since the defendant's claim of ineffective assistance cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety."

[2] Parenthetical references are to trial transcripts.

3

hour into their "drinking session" Jacqueline tried to prevent Mr. Waiters from consuming any more alcohol by taking the bottle from him as she felt he was drinking too much (Tr: 398-399, 443, 445). Mr. Waiters responded "fuck you bitch," and she told him "fuck you" back (Tr: 399-400). Mr. Waiters retrieved a handgun and fired five times, killing Tajmere Clerk and injuring Mary Lee Clerk, Lorenzo Warren, and Shatashia Lewis.

15. Before resting, defense counsel sought to introduce some medical records to support his intoxication defense (Tr: 531).[3] The court was inclined to let the medical records in that were relevant to Waiters' intoxication only if a medical expert was called to explain the meanings of the records to the jury (Tr: 543-544, 547, 549-550, 557).

16. The court, prosecutor and defense counsel were confused as to the meanings of the medical terminology in the records (Tr: 535, 543). For example, the judge speculated that "C.N.S." could mean certified nurse (Tr: 551).[4]

17. In any event, the prosecutor expressed a willingness to wait for an expert to be called because they were not under any "time crunch" (Tr: 548). However, defense counsel stated that he did not intend to call any more witnesses and was willing to let the court rule on whether to admit the medical records

---

[3] The medical records that defense counsel sought to introduce are attached to Mr. Waiter's CPL 440.10 motion in full as Exhibit C. Each page is consecutively numbered and references to a specific page of the medical records is be delineated as Ex C. followed by the page number.

[4] "CNS" is an abbreviation for central nervous system. See Stedman's Medical Dictionary, 28th Ed.

4

(Tr:552). According to the record, defense counsel felt the trial testimony that Mr. Waiters was intoxicated was sufficient to allow the records in (Tr: 535).

18. The prosecutor argued, and the court agreed, that the issue was not intoxication, **but the level of intoxication**, which could negate the intent element of the crime. (Tr: 546-547). As a result of defense counsel's refusal to call a medical expert as a witness, the court only allowed into evidence two documents which simply stated that Mr. Waiters was intoxicated (Tr: 552).[5]

19. There are 53 pages of medical records. There may be more evidence within those records that demonstrate exactly how intoxicated Mr. Waiters was; however, without the benefit of an expert it is unclear what the medical terminology means.

20. In any event, the documents that showed Mr. Waiters ethyl/alcohol level to be 386.24 mg/dL and the fact that he suffered delirium tremens were never introduced or brought to the attention of the jury. See Exhibit C, pages 2, 38.

Defense Summation

21. In summation, defense counsel argued that Mr. Waiters was intoxicated without giving any direct evidence that would clarify **how** that

---

[5] The entire colloquy with respect to defense counsel attempting to introduce the medical records and neglecting to call an expert witness is attached to Mr. Waiters' CPL 440.10 motion as Exhibit D.

intoxication could negate intent. Furthermore, he argued that Mr. Waiters acted recklessly rather than intentionally.

Prosecutors Summation

22. In summation, the prosecutor highlighted the fact that although Mr. Waiters was intoxicated, the defense counsel failed to offer evidence that would show the level of that intoxication. He even alluded to the two medical records, which simply stated that Mr. Waiters was intoxicated, as not being sufficient since they failed to explain the all important issue of "how" intoxicated Mr. Waiters was (Tr: 640-641).

Jury Charge

23. Despite arguing that Mr. Waiters was too intoxicated to form the intent to be found guilty, Defense counsel only requested for a lesser charge of manslaughter in the first degree, which also has an "intent" element. Defense counsel never requested a lesser charge of manslaughter in the second degree which would have supported his theory that the Mr. Waiters acted recklessly, due to him being intoxicated, and not intentionally. Furthermore, defense counsel did not request lesser offenses relative to all the other intent crimes for which Mr. Waiters was charged.

6

24. Mr. Waiters pleads that defense counsel, Calvin J. Simons, without any reasonable or legitimate trial strategy, failed to call an expert witness to testify and interpret medical records relative to how intoxicated Mr. Waiters was.

25. Mr. Waiters respectfully submits that had Mr. Simons called an expert witness, or requested an adjournment to obtain one, the court would have honored his request.

26. Furthermore, Mr. Simons compounded the error by requesting Manslaughter in the first degree as a lesser-included offense to Murder in the second degree under the intentional theory, and not requesting any lesser offenses for the other intent crimes. Mr. Simons did not request any other lesser offenses to the attempted murder and assault charges.

27. Thus, under the facts of the case at bar, had Mr. Simons' requested Manslaughter in the Second degree, there is a reasonable probability that the court would have granted the request and, if not, the court would have committed reversible error.

## **GROUNDS FOR RELIEF**

THE PETITIONER WAS DEPRIVED OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL (1) FAILED TO CALL AN EXPERT WITNESS TO EXPLAIN AND INTERPRET MEDICAL RECORDS THAT WOULD HAVE ESTABLISHED HOW INTOXICATED PETITIONER WAS, AND (2) COUNSEL REQUESTED AN INAPPROPRIATE LESSER-INCLUDED OFFENSE THAT FORCED THE JURY TO CONVICT ON THE TOP COUNT.. *U.S. Const. 6th. Amdt.*

28. Defense counsel was ineffective for several reasons. First, counsel, with absolutely no legitimate and apparent trial strategy, neglected to call an expert witness to interpret and explain various medical records that would have established how intoxicated Petitioner was. Second, defense counsel, although arguing that Petitioner was too intoxicated to form intent, requested the court submit manslaughter in the first degree, an intent crime, to the jury as a lesser-included offense to second-degree intentional murder. He failed to request manslaughter in the 2nd degree and other "non-intent" crimes.

29. Despite having committed a crime against society or its members, criminal defendants retain the right to effective assistance of counsel. *U.S. Const. 6th. Amdt.; see also,* McMann v. Richardson, 397 U.S. 759, 771 (1970); Strickland v. Washington, 466 U.S. 668, 685 (1984). In the United States, where the

adversarial process pits defendants against the powers and resources of state prosecutors, the right to counsel plays a crucial role.

30. The standard for determining whether counsel's assistance was ineffective is that a defendants must show: (1) that counsel's performance was objectively unreasonable under prevailing professional standards; and (2) that counsel's unreasonable performance was prejudicial to his case. Strickland, 466 U.S. at 687, 694.

31. In establishing the first (performance) component of the test, a defendant must show that counsel's errors or omissions were so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, supra, 466 U.S. at 687. The Supreme Court has advised courts to "indulge a strong presumption" that counsel's conduct fell within the range of reasonable professional assistance. Id. at 489 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission was unreasonable.").

32. With respect to the second (prejudice) component, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland, 466 U.S. at 690. A "reasonable probability" of a different result has been interpreted as

a probability "sufficient to undermine the confidence in the outcome of the proceeding." Id. at 694.

33. Here, Mr. Waiters' defense was that he was too intoxicated to form intent. There was evidence in the form of testimony that Mr. Waiters drank on both the day before and the morning of the incident (Tr. 434, 438, 443-445, 398-399). Defense counsel argued in opening and closing statements that Mr. Waiters was intoxicated. Thus, his defense was undeniably structured around Mr. Waiters' level of intoxication. Indeed, the fact that the judge gave an intoxication charge demonstrates that intoxication was not the sole issue. Rather, the important issue was whether Mr. Waiters was so intoxicated that he could not form the requisite intent to commit the crimes charged.

34. Before resting, defense counsel sought to introduce several medical records that would support his intoxication argument. See CPL 440.10 Motion at Exhibit C. This led to a lengthy, rather interesting proceeding on whether the judge should admit these documents into evidence. A couple of the documents unambiguously mentioned the fact that Mr. Waiters was intoxicated. However, a few of the other documents gave clarity to the **level** of Mr. Waiters intoxication. Due to the ambiguity of the medical terminology and the structuring of the documents, it was unanimously agreed by the judge and the prosecutor that an

10

expert was required to clear up any confusion that these documents would have caused the jury.

35. Throughout the proceedings, the judge expressed her opinion that an expert should be called to explain these documents. The prosecutor agreed with this reasoning. The judge even implied that she would let the records in if someone were called to explain them. Amazingly, the prosecutor even stated that "it can still be done" because "we aren't under any time constraints." However, defense counsel was adamant in his refusal to call any witnesses and expressed his willingness for the judge to make her ruling on the admittance of the documents bearing in mind that no expert would be called to explain them.

36. As a result, the judge properly excluded the essential documents that would have needed expert explanation while admitting the unambiguous documents that simply stated the obvious: that Mr. Waiters was intoxicated. Defense counsel's insouciance left the jury to engage in mental acrobatics trying to figure out exactly "how" intoxicated Mr. Waiters was.

37. It has been held that "establishing that a defendant was intoxicated when he committed a crime in question is not, in and of itself, helpful; the evidence must also lead the fact finder to an inference that intoxication deprived the Petitioner of the ability to form intent." Combs v. Coyle, 205 F3d 269, 288 (6th

Circuit 2000). In this case, such evidence was available but defense counsel never introduced it.

38.  Defense counsel did not have a legitimate reason for failing to call an expert witness. Although it is true that counsel has discretion over what witness to call, a failure to call an expert witness in this case was a deathblow. Had an expert been called he would have explained that Mr. Waiters had an ethyl/alcohol level of 384.26 mg/dl.[6] He would have further interpreted the ethyl/alcohol levels and how that level could have affect Mr. Waiters.

39.  Mr. Waiters' research demonstrates that an ethyl/alcohol level of 384.26 mg/dl is almost four times above the legal definition of alcoholic intoxication. See Steadman Medical Dictionary. An expert would have explained that once a person reaches this level of three times the level of alcoholic intoxication they are subject to blackouts, which would negate the ability to act conscientiously.

40.  In Miller v. Terhune, the Eastern District in California ruled on a case similar to the case at bar. This case lends helpful guidance in demonstrating the importance of an expert. The petitioner in that case brought an ineffective assistance of counsel claim based on defense counsel's failure to present evidence

---

[6] For medical and forensic purposes, the level of ethanol in the blood is measured as the weight of ethanol per volume of blood and expressed as a percentage. Thus, an ethanol concentration of 100 mg/dL (21.7 mmol/L) corresponds to 0.1% (a level widely used in legal definitions of alcoholic intoxication). Stedman's Medical Dictionary, 28th Ed., p. 674 Measurable cognitive impairment occurs at a blood alcohol level of about 0.05%, gait disturbances at 0.10%, slurred speech at 0.15%. A level of 0.3-0.4% leads to unconsciousness, and respiratory arrest occurs around 0.5%. Id

of voluntary intoxication. At an evidentiary hearing, an expert was called, and it was established that the petitioner had a blood alcohol (BAC) level of .30%. The expert testified, "that petitioner's BAC of .30% at 2:25 a.m. indicated a likely BAC between .33% and .34% at the time of the shooting. This qualified as 'extreme alcohol intoxication' at which coma and death can occur." Miller v. Terhune, 510 FSupp.2d 486, 490 (E.D. Cal. 2007).

41. In the instant case, Mr. Waiters BAC was .38% hours after the shooting. Obviously, it was even higher than that when the incident occurred. In addition, as evidenced in the medical records (see CPL 440.10 motion, Exhibit "C" at pps. 48-50), Mr. Waiters suffered from "delirium tremens." Certainly, an expert could have explained to the jury what exactly was "delirium tremens" and what occurs when a person suffers from it. Furthermore, an expert could have testified that once a person suffers from delirium tremens they have reached a poisonous level, which can be fatal if the appropriate detoxification is not administered. See Wereb v. Maui County, 830 F.Supp.2d 1026, 1036 (D. Hawai'i 2011)

42. Furthermore, in light of defense counsel's failure to call an expert as stated above, the Miller case is instructive. In Miller, supra, the expert testified that "there is not always a correlation between the degree of physical impairment and the degree of mental impairment." Id at 490. Without the likes of this

testimony, the prosecutor was able to grotesquely misconstrue alcohol's effects on a person's brain.

43. For example, the prosecutor improperly asserted "[Mr. Waiters] was able to move around. There was nothing that was bothering him in terms of that... you didn't have somebody there who was falling down, rolling down, slobbering drunk." (T: 636). This speculative approach could have easily been circumvented by expert testimony. As the petitioner argued in Miller, "without education about the effects of alcohol on the brain, the jury was too willing to follow the prosecutor's lead in attributing to [the Petitioner] the cognitive processes of a sober person," (at supra 496). Moreover, the court in Miller agreed and reasoned, "these inconsistencies are exactly why expert testimony would have been helpful." Id at 496. The court held "it is apparent that the trial counsel never investigated the effects of alcohol on petitioner's perception, cognition, or ability to form the requisite intent. Nor did counsel consult any expert who could have educated the jury as to the effects of alcohol. Instead, counsel acted on his own assumptions about intoxication evidence. Accordingly, his choice of strategy was not based on any investigation and was unreasonable under Strickland." Id at 501.

44. Thus, the same decision should follow in the case at bar. In Miller, the defense counsel elected to abandon the intoxication defense in favor of self-defense, so at least he had a reason, albeit a very weak one, for not producing an

14

expert. Whereas here, the defense counsel pursued an intoxication defense while concomitantly neglecting to call an expert to allow the jury the opportunity to hear direct evidence that would have supported his argument. This distinction bolsters Mr. Waiters' ineffective assistance of counsel claim since it illustrates that defense counsel's failure to investigate and then call an expert witness could not have conceivably been part of a legitimate trial strategy.

45. The defense counsel's insoluble behavior demonstrates that he failed to investigate the meaning of the medical terms in the documents he sought to introduce. Such negligence places him below the standard of "effective assistance" as established in Strickland.

46. It has also been held, where an expert witness's opinion is "crucial to the defense theory[,] defense counsel's failure to have questioned [the expert]... prior to trial is inexcusable" Combs v. Coyle, 205 F.3d 269, 288 (6th Cir.2000).

47. The defense counsel's fatal error was exploited in the prosecutor's summation when he tauntingly reminded the jury that they were never told exactly "how" intoxicated Mr. Waiters was at the time of the shooting. He then urged them to rely on their experiences of alcoholic intoxication to determine whether Mr. Waiters was too intoxicated to commit these crimes intentionally.

48. Compounding defense counsel's incompetence was his request of an inappropriate lesser included. A lesser-included offense must be charged, "if there

is a reasonable view of the evidence which would support a finding that the Petitioner committed such lesser offense but did not commit the greater." See CPL 300.50(1); People v. Scarborough, 49 N.Y.2d 364, 426 N.Y.S.2d 224 (1980); People v. Brockett, 74 A.D.3d 1218, 904 N.Y.S. 2d 172 (AD 2 Dept. 2010).

49. The evidence at trial demonstrated that Mr. Waiters' was intoxicated and, thus was not able to form the requisite intent to have committed an intentional homicide. In his summation, he vehemently argued that Mr. Waiters was too intoxicated to form intent. However, defense counsel requested manslaughter in the first degree as a lesser-included offense to murder in the second degree under the intoxication theory.

50. Manslaughter in the first degree possesses an intent element. See Penal Law §125.20. However, Manslaughter in the second degree does not. It reads: A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person. Thus, if defense counsel forcefully argued to the jury that Mr. Waiters recklessly caused the death of Tajmere Clark, would it not have been proper to request manslaughter in the second degree as a lesser-included offense?

51. Moreover, if defense counsel had requested manslaughter in the second degree, by law of Appellate Division, Second Department, the trial court would have committed reversible error had it denied the request. In People v.

16

Vasquez, the court ruled that the defendant was entitled to manslaughter in the second degree as a lesser-included offense of an intentional crime. It was proved that Vasquez drunk two six-packs of beer shortly before the incident. That was enough for the Second Department to hold that there was a reasonable view of the evidence that Vasquez acted recklessly (and was guilty of the lesser-included offense of manslaughter in the second degree), and not intentionally. See People v. Vazquez, 104 A.D. 2d 429, 478 N.Y.S. 2d 947 (AD 2 Dept. 1984).

52. Manslaughter in the second degree is a reckless crime and the appropriate lesser-included offense to support the defense counsel's argument that his client was extremely intoxicated. Being that the "court must give the Petitioner the benefit of the most favorable view of the record," (People v. Collins, 86 A.D. 2d. 616, 446 N.Y.S. 2d. 93 (2 Dept. 1982), People v. Steele, 26 N.Y. 2d. 526, 311 N.Y.S. 2d. 889 (1970)), it is reasonable to assume that the trial judge would have accepted the request of this lesser included offense in light of the overwhelming evidence of Mr. Waiters' intoxication. That reasonable assumption can be elevated to an appropriate conclusion if the defense counsel called an expert witness to explain Mr. Waiters' level of intoxication. As a result, the jury was left to deliberate on an intentional murder charge or alternatively an "intentional" manslaughter charge.

53. In sum, if Mr. Waiters had adequate representation two very important things would have happened at his trial. One, the jury would have been properly educated on "intoxication" and the effects of it on a person cognitive abilities. Two, a lesser-included offense of manslaughter in the second degree would have been requested. Because of the defense counsel's ineffective assistance, Mr. Waiters is incarcerated with a substantially longer sentence than he should have. The disparity between Mr. Waiters' current 50-to-life sentence and the 15 years he could have received should accentuate his counsel's ineffectiveness.

54. For the forgoing reason, Mr. Waiters was deprived of his Constitutional Rights to the Effective Assistance of Counsel.

## ADDITIONAL PLEADINGS AND INFORMATION

55. Mr. Waiters pleads that the legal standard for his ineffective assistance of counsel claim must be the pre-AEDPA standard because the State Court did not "adjudicate" his claims "on the merits." Cotto v. Herbert, 331 F.3d 217, 230 (2nd Cir. 2003); Parilla v. Berle, 679 F.Supp.2d 441, 446 (SDNY 2010). Instead, the trial court denied the claim on the ground that "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issued raised upon the motion...." CPL 440.10(2)(c). Mr. Waiters then raised the identically claim on

direct appeal and the Appellate Division, Second Department, held: "Since the defendant's claim of ineffective assistance cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety."

56. Mr. Waiters pleads that it would be useless to go back to the state trial court in attempts to exhaust the claim, and that for the sake of circumventing a process of "judicial ping-pong," this Court must hold the claim exhausted.

57. All the grounds stated above were previously presented in state court.

58. Mr. Waiters does not have any petition or appeal pending in any court.

59. The name and address of the attorney who represented petitioner in the state trial court was Calvin J. Simons, 616 Eastern Parkway, Brooklyn, New York 11225, Tel # 718-467-1526.

60. The name and address of the attorney who represented Mr. Waiters in the state appellate court was Jonathan M. Kratter, 2 Rector St, 10th Fl, NY, NY 10006.

61. The name and address of the District Attorney was Charles J. Hynes, Renaissance Plaza, 350 Jay Street, Brooklyn, New York 11201.

62. Mr. Waiters represented himself in every other proceeding.

63. Mr. Waiters does not have any further sentence to serve after the completion of the current one.

64.     Mr. Waiters respectful request that an evidentiary hearing be held.

**WHEREFORE**, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Dated: June 19, 2013

I declare under penalty of perjury that the foregoing is true and correct. Executed on the above date.

*[signature: General Waiters]*

General Waiters
Din Number 08A3571
Green Haven CF
Post Office Box 4000
Stormville, NY 12582