UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

GENERAL WAITERS,

                                   Petitioner,         MEMORANDUM
                                                       AND ORDER
                  - versus -                           13-CV-3636 (JG)

WILLIAM LEE,

                                   Respondent.

A P P E A R A N C E S

        GENERAL WAITERS
                08A3571
                Green Haven Correctional Facility
                P.O. Box 4000
                Stormville, New York 12582
                *Petitioner* Pro Se

        CHARLES J. HYNES
                Kings County District Attorney's Office
                350 Jay Street
                Brooklyn, New York 11201
        By:     Rhea Ann Grob
                *Attorney for Respondent*


JOHN GLEESON, United States District Judge:

                General Waiters brings this *pro se* habeas petition, seeking relief from a state

court judgment convicting him of murder in the second degree, attempted murder in the second

degree and assault in the first degree.  Waiters claims that he was deprived of his Sixth

Amendment right to the effective assistance of counsel at trial.  Oral argument was held on

November 4, 2013, at which Waiters appeared by videoconference from the facility in which he

is serving his sentence.  For the reasons set forth below, I hereby appoint Gary Farrell under the

Criminal Justice Act, 18 U.S.C. § 3006A, to represent Waiters.  In addition, on consent of the

parties, I will hold the petition in abeyance to permit Waiters, with the assistance of his

appointed counsel, to exhaust his claims of ineffective assistance of counsel in state court.

BACKGROUND

A.    *The Offense Conduct*

At trial, the state presented evidence that on May 7, 2006, at approximately 11:30

a.m., during an argument at his girlfriend Jacqueline Warren's East New York apartment,

Waiters fired a gun several times, killing three-year-old Tajmere Clark and injuring Mary Lee

Clark, Lorenzo Warren, and Shatashia Lewis.  *See* Trial Tr. ("Tr.") [1] 53-56 (Corleto Test.); 80-

81, 97 (Anderson Test.), 104 (Boston Test.); 274-79, 283-86 (Slone Test.). [2]  Jacqueline testified

that she was in the apartment's living room with Waiters and Mary Lee Clark, her aunt, on the

morning of May 7.  Tr. 398.  The three drank rum and, according to Jacqueline, Waiters "drank

too much" and began cursing at her.  Tr. 398-99.  When he asked her for the bottle of liquor, she

replied, "You had too much to drink."  Tr. 399.  He responded loudly, saying, "Fuck you, bitch."

Tr. 400.  Jacqueline "told him fuck him" and Mary Lee told Waiters to calm down.  *Id.*  Waiters

left the apartment, came back in and entered one of the bedrooms, where he remained for fifteen

to twenty minutes.  Tr. 402.  He then rejoined Jacqueline and Mary Lee in the living room

wearing a jacket he did not have on earlier.  Tr. 401-03.

Waiters approached Jacqueline, "and he was screaming and he was yelling and he

was calling [her] names."  Tr. 403 (J. Warren Test.).  Mary Lee again told him to calm down.  *Id.*

At this point, Lorenzo Warren, Jacqueline's son, heard Mary Lee's raised voice and entered the

---

[1]        I will use "Tr." to denote the trial transcript, "H. Tr." to denote the transcript of the *Huntley*
hearing, "H.D. Tr." to denote the transcript of the state trial court's decision on the *Huntley* hearing, and "S. Tr." to
denote the sentencing transcript.  All of the above-referenced transcripts are filed under Exhibit A to the Response to
the Order to Show Cause, ECF No. 6.
[2]        The parenthetical identifies the individual whose testimony is being cited.  I omit the parenthetical
where it is clear from the context whose testimony is being cited.

living room.  Tr. 162-63 (L. Warren Test.).  He observed Waiters standing over Jacqueline, who was seated.  Tr. 164 (L. Warren Test.).  Jacqueline was "telling [Waiters] to get out of [her] face and to leave."  Tr. 405 (J. Warren Test.).  Lorenzo interjected, telling Waiters to "step away" from Jacqueline and "get out of her face."  Tr. 168, 219 (L. Warren Test.).   After being told by Waiters that the matter did not concern him, Lorenzo objected and took two or three steps towards Waiters.  Tr. 169, 222 (L. Warren Test.).

Waiters and Lorenzo "argu[ed] back and forth."  Tr. 411 (J. Warren Test.).  Mary Lee held Lorenzo back, pushing him toward the back rooms of the apartment.  Tr. 169 (L. Warren Test.).  Jacqueline "got up and . . . told Mr. Waiters to leave."  Tr. 411 (J. Warren Test.).  When Waiters refused, she "grabbed him by the arm to walk him to the door."  *Id.*  The two men continued to "exchange . . . words"; Lorenzo later testified on cross-examination that Waiters was intoxicated during the argument, as evidenced by his slurred speech.  Tr. 170, 223 (L. Warren Test.).  At some point during the argument, Jacqueline's other son, Derrick Warren, her daughter, Shatashia Lewis, and Mary Lee's granddaughter, Tajmere Clark, entered the living room.  Tr. 170-71, 224 (L. Warren Test.); 307 (Lewis Test.); 413 (J. Warren Test.).  Derrick also argued with Waiters briefly before Derrick was pushed back towards one of the apartment's bedrooms by Mary Lee.  Tr. 231-32 (L. Warren Test.).

As he argued with Jacqueline's sons, Waiters initially walked with Jacqueline towards the apartment door but then stopped.  *See* Tr. 412 (J. Warren Test.).  Waiters put his hand inside his jacket and said, "You don't want me to pull what I got out of my jacket."  Tr. 414 (J. Warren Test.); 309 (Lewis Test.).  Lorenzo said to him, "You don't have a gun in your pocket."  Tr. 172 (L. Warren Test.).  Waiters pulled out a gun and pointed it at Lorenzo.  *Id.*

Lorenzo then said, "That gun isn't loaded.  You don't have any bullets in that gun."  Tr. 234 (L. Warren Test.).  Waiters fired the gun.  Tr. 236 (L. Warren Test.).

Lorenzo felt a sharp pain in his right thigh.  Tr. 176 (L. Warren Test.).  He heard screaming and more gunshots.  *Id.*  Shatashia saw the gunfire and then felt pain in her leg.  Tr. 310 (Lewis Test.).  After Waiters started shooting, Jacqueline observed him walk towards Lorenzo before she ran out of the apartment to seek help.  Tr. 414 (J. Warren Test.).  When she reentered the apartment, she saw that Lorenzo had Waiters, who still had the gun in his hand, pinned to the floor and was punching him.  Tr. 417 (J. Warren Test.); *see* Tr. 180-82.  She heard clicking as Waiters continued to pull the trigger.  *Id.*  Waiters called out to her for help and Jacqueline took the gun from his hand.  *Id.*

Police officers responding to the scene observed Waiters and Lorenzo engaged in a physical altercation.  Tr. 60-64. (Corleto Test.), 88 (Anderson Test.).  Officers separated the two men and handcuffed them both.  *Id* .  Waiters was taken away from the scene on a stretcher.  Tr. 96 (Anderson Test.); 188 (L. Warren Test.).  Four people had suffered gunshot wounds and were also transferred to the hospital.  Tr. 69 (Corleto Test.).  Lorenzo and Shatashia had been shot in the leg.  Mary Lee had been shot in the head, abdomen and leg.  Tr. 284 (Slone Test.).  Tajmere had been shot in the head and torso and ultimately died of her injuries.  Tr. 275, 283 (Slone Test.).

B.     *The Trial Court Proceedings and Sentencing*

Waiters was charged in the Supreme Court of the State of New York, Kings County, with one count of murder in the second degree, N.Y. Penal Law § 125.25(1), one count of attempted murder in the second degree, N.Y. Penal Law §§ 110.00 and 125.25(1), three counts of assault in the first degree, N.Y. Penal Law § 120.10(1), one count of criminal

possession of a weapon in the second degree, N.Y. Penal Law § 265.03(2), and one count of criminal possession of a weapon in the fourth degree, N.Y. Penal Law § 265.01(1).  Resp. Order to Show Cause, Ex. H (App. to § 440 Mot., King's Cnty. Indictment No. 3464/2006).

The state trial court held a *Huntley* hearing[3] on November 16, 2007 to address the admissibility of a statement Waiters made to the police on May 8, 2006 while in the hospital after being placed under arrest.  H. Tr. 9; 12-13, 20 (Duffy Test.).  The detective who took Waiters's statement testified that Waiters had "a difficult time speaking," and, although Waiters "seemed to understand the conversation," he "was in pretty bad shape" and said that he "was in quite a bit of pain."  H. Tr. 18, 21-22 (Duffy Test.).  When asked to elaborate on Waiters's condition, the detective testified that Waiters had suffered "a pretty good beating" and that "his face was severely swollen."  H. Tr. 19 (Duffy Test.).  When presented with a *Miranda* card to sign, Waiters again stated that he "was in a lot of pain" and had physical difficulty signing the card.  H. Tr. 23 (Duffy Test.).  The court suppressed the statement, finding that the state had not met its burden of showing that Waiters had knowingly and intelligently waived his rights.  H.D. Tr. 2.

Waiters was tried before a jury in May 2008.  After the state rested and outside the presence of the jury, defense counsel informed the court that he no longer wished to call an anticipated witness, a doctor who would have served as a defense expert.  Tr. 526-27.  In a direct exchange with Waiters, the court repeatedly confirmed that Waiters had made this decision of his own free will.  Tr. 527-28.  However, though the defense chose not to call the doctor, defense counsel sought to introduce into evidence Waiters's certified medical records from Kings County Hospital, which, counsel argued, proved both the injuries Waiters sustained as well as his level

---

[3]    *See People v. Huntley*, 15 N.Y.2d 72, 77 (1965) (providing for preliminary hearing upon request by defense counsel at which state has burden to prove beyond reasonable doubt that defendant's statement was voluntary).

of intoxication on the day of the incident.  Tr. 531-32.  The prosecutor both challenged the

relevance of the records and objected to them coming into evidence without explanation.  Tr.

532.

In coming to its decision on the issue, the trial court noted its concerns about

providing medical records containing technical language and data to the jury without the

assistance of expert testimony to explain the meaning of the information contained in the

records.  In response to the state's argument that one particular medical abbreviation was

undefined and would be unknown to judge and jury alike, the judge said: "Certainly, one of the

things that we can do, which probably should have been done, was either to have someone

brought in or to call to find out what the definition of that is."  Tr. 543-44.  Outside the presence

of the jury, the court elaborated on its concerns at some length:

> [T]he best way would have been to get someone from the hospital
> to certainly interpret the records . . . . Quite frankly, I don't know
> why, you know, someone wasn't called or at the very least to get
> an assessment by the doctor who appeared, even if it was by the
> People, something that would assist. . . . [T]here's some portions of
> the record that the Court is inclined to allow to get introduced that
> need to have an explanation . . . . There should be some assistance
> to the jury.  Again, I'm inclined to allow you to do it.  The only
> thing that I'm saying is that there should have been someone to at
> least, certainly for the jury's edification, be able to explain what
> that means so that they should have some kind of understanding as
> to those numbers.

Tr. 547, 549.

Defense counsel remained firm, arguing that the records demonstrated Waiters's

intoxication in line with the evidence already presented by the State's witnesses and further that

the interpretation of those records – in particular, the basic determination as to whether Waiters's

ethanol alcohol level was marked  "normal, abnormal, or a critical stage" – would be "a common

sense type of issue not beyond the realm of the jury."  Tr. 550-51.  When the court stated that

"clearly there should be someone to explain" the significance of the level of ethanol alcohol in

Waiters's blood, counsel responded as follows: "Your Honor, the defense at this point is not

introducing any additional witnesses . . . . We would request that the Court permit all the

information in, and we're prepared for the Court to make its ruling based on the defense not

presenting any additional witnesses at this time."   Tr. 552.  As a result, the court required

defense counsel to redact all but two lines of the medical records – those not containing

numerical information, which the court found would require interpretation. Tr. 552-53.  The two

lines stated, in essence, that Waiters was brought to the hospital in an intoxicated state and was

intoxicated at the time of his evaluation there.  *Id.*

   The jury convicted Waiters of murder in the second degree as to Tajmere Clark,

attempted murder in the second degree as to Lorenzo Warren, and assault in the first degree as to

Mary Lee Clark and Shatashia Lewis.  Tr. 700-01.  On June 2, 2008, Waiters was sentenced to

twenty-five years to life on the second-degree murder count, ten years on the second-degree

attempted murder count, twenty-five years on the first-degree assault count as to Mary Lee

Clark, and five years on the first-degree assault count as to Shatashia Lewis.  S. Tr. 12-13.  The

sentences were ordered to run consecutively.  S. Tr. 13.

  C.  *The Direct Appeal and the Motion to Vacate Judgment of Conviction*

   Waiters, represented by new counsel, filed a counseled brief on direct appeal to

the Appellate Division of the Supreme Court of New York, Second Department.  Resp. Order to

Show Cause, Ex. B (Def.'s Br.).  The counseled brief, filed on April 7, 2010, argued that: (1) the

verdict was against the weight of the evidence because the state, proceeding under a theory of

transferred intent, failed to prove that Waiters intended to shoot Lorenzo, the person specified in

the indictment; (2) Waiters was denied his right to a fair trial because the prosecutor in his

summation made factually misleading statements and misstated the law related to the elements of the charged counts; and (3) Waiters's sentences, imposed consecutively, were illegal.

On October 5, 2010 – nearly six months after filing his counseled brief on direct appeal – Waiters moved *pro se* to vacate his judgment of conviction pursuant to § 440.10 of the New York Criminal Procedure Law.  Resp. Order to Show Cause, Ex. H (§ 440 Mot.).  In his motion, Waiters contended that his trial counsel was ineffective in failing to call an expert to establish Waiters's intoxication defense and in his strategy regarding lesser-offense charges.

In a decision and order dated January 24, 2011, the Supreme Court, Kings County, summarily denied Waiters's motion, citing New York Criminal Procedure Law § 440.10(2)(c).  Resp. Order to Show Cause, Ex. K (Den. of § 440 Mot.).  That section provides:

> [T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period . . . .

N.Y. Crim. Proc. Law § 440.10(2)(c).  The court was aware of Waiters's pending direct appeal, noting that he had submitted his appeal in June 2010 and been granted an extension to file a supplemental brief until February 2011 by the Appellate Division, Second Department, and concluded as follows: "It is clear that the [ineffective assistance] claims raised by the defendant are readily ascertainable from the record . . . [and] the defendant still has sufficient time to raise those claims in his supplemental brief."  Based on that assessment, the court denied Waiters's motion as procedurally barred under § 440.10(2)(c).

On February 17, 2011, Waiters sought leave to appeal the denial of his § 440 motion to the Appellate Division, Second Department.  *See* Pet. ¶ 12; Resp. Order to Show

8

Cause ¶ 12.  In a decision and order dated September 8, 2011, the Appellate Division denied

Waiters's application.  *Id.*

> After the § 440 court told him to name his ineffective assistance claims on direct
appeal, Waiters did so in his *pro se* supplemental brief, dated February 4, 2011.  He argued that
his trial counsel failed to call an expert witness to interpret his medical records and establish his
intoxicated state, and requested an inappropriate lesser-included offense (first-degree
manslaughter rather than second-degree manslaughter), which led to Waiters's conviction on the
more serious charge.

> On May 8, 2012, the Appellate Division, Second Department, affirmed Waiters's
convictions but modified the judgment on the law, finding that it was improper for the sentencing
judge to impose consecutive sentences for the crimes against Lorenzo Warren and Shatashia
Lewis.  *People v. Waiters*, 943 N.Y.S.2d 589, 591 (App. Div. 2012).  Those crimes, the court
found, were not shown to be "separate and distinct from each other and from the crimes
committed against Tajmere Clark and Mary Lee Clark."  *Id.*  Thus, the Appellate Division
directed that Waiters's sentences for attempted murder in the second degree as to Lorenzo
Warren and assault in the first degree as to Shatashia Lewis run concurrently with each other and
concurrently with Waiters's other sentences.  *Id.* at 590.  The resulting total sentence is 50 years
to life in prison.

> The Appellate Division rejected Waiters's other claims.  First, it found that the
guilty verdicts on each count were not against the weight of the evidence.  *Id.*  Second, it
determined that Waiters had not preserved for appellate review his arguments related to the
prosecutor's summation, *see* N.Y. Crim. Proc. Law § 470.05(2); *People v. Robinson*, 88 N.Y.2d
1001, 1002 (1996) ("[T]o frame and preserve a question of law reviewable by this Court, an

objection or exception must be made with sufficient specificity at the trial, when the *nisi prius* court has an opportunity to consider and deal with the asserted error."), and further that in any event, "the remarks that the defendant now claims to have been improper did not deprive him of his right to a fair trial." *Id.*

Finally, the Appellate Division concluded that Waiters's allegations of ineffective assistance of counsel presented a "mixed claim," that is, they were "based, in part, on matter appearing on the record and, in part, on matter outside the record." *Id.* at 590-91.  The Appellate Division was unable to determine whether Waiters's trial counsel was deficient based on the matter contained in the record.  Thus, whereas the § 440 court had told Waiters to raise his claim on direct appeal, the appellate court told him to raise it in a § 440 action: "Since the defendant's claim of ineffective assistance cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." *Id.* at 591.

Waiters sought leave to appeal to the New York State Court of Appeals in a letter application filed on June 1, 2012.  Resp. Order to Show Cause, Ex. F (Def.'s Ltr.).  His application raised all the same grounds he had raised before the Appellate Division.  His application was denied on August 7, 2012.  *People v. Waiters*, 19 N.Y.3d 1002 (2012) (Ciparick, J.).

D.    *The Instant Petition*

Following the decision in his direct appeal, Waiters did not submit an application to the Supreme Court requesting reconsideration of its decision to deny his § 440 motion or file a new § 440 motion.  Instead, he filed the instant *pro se* petition for a writ of habeas corpus in this

10

court on June 26, 2013.  Pet.  In his petition, he presents only the ineffective assistance claims

raised in both his *pro se* supplemental brief on direct appeal and in his § 440 motion.  *Id.*

DISCUSSION

A.   *Legal Standards for Habeas Relief*

Under the Antiterrorism and Effective Death Penalty Act of 1996, federal habeas

relief is available when a "person in custody pursuant to the judgment of a State court . . . is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  A federal court may grant habeas relief "with respect to a[] claim that was

adjudicated on the merits in State court proceedings" only if the state decision was "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

28 U.S.C. § 2254(b) prevents a federal court from granting a petition for a writ of

habeas corpus unless the petitioner has first exhausted all available state judicial remedies.  The

Supreme Court has commented on the exhaustion requirement as follows in relation to

ineffective assistance claims:

> The principle of comity that underlies our longstanding exhaustion
> doctrine would be ill served by a rule that allowed a federal district
> court to upset a state court conviction without an opportunity to the
> state courts to correct a constitutional violation, and that holds true
> whether an ineffective assistance claim is asserted as cause for
> procedural default or denominated as independent ground for
> habeas relief.

*Murray v. Carrier*, 477 U.S. 478, 489 (1986) (citation and internal quotation marks omitted).

Regardless of the particular nature of a petitioner's claims, in order to have exhausted available

state remedies, a petitioner must have "fairly presented" her federal constitutional claims to the

highest state court by apprising it of "both the factual and the legal premises of the claim he

11

asserts in federal court." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*).

The statute prohibits the grant of a petition on a ground that has not been exhausted. *See* 28 U.S.C. § 2254(b)(1)(A). Such claims may be denied on the merits, *see* 28 U.S.C. § 2254(b)(2), or dismissed. A third option, the "stay and abeyance" procedure created by *Zarvela v. Artuz,* 254 F.3d 374, 380-82 (2d Cir. 2001), and endorsed (with some modifications) by *Rhines v. Weber,* 544 U.S. 269, 277-78 (2005), stays the federal petition to allow a petitioner to return to state court to exhaust the unexhausted claim.

B.     *Ineffective Assistance*

To establish a claim of ineffective assistance of counsel under the federal constitution, a petitioner must show (1) that counsel supplied deficient representation, and (2) that the petitioner suffered prejudice as a result of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

C.     *Analysis*

At the oral argument, both sides agreed that Waiters's claims of ineffective assistance are unexhausted. At bottom, when Waiters asserted the claims in his § 440 motion,

the Supreme Court told him to raise them on his then-pending direct appeal; when he followed that instruction, the appellate court told him to raise them in a § 440 motion.  Waiters, understandably, then came here to federal court instead of going back to state court.  As he put it at oral argument, he was afraid the § 440 court would reject his claims on the ground that he'd already filed a § 440 motion.

To his credit, respondent has (1) agreed that Waiters is entitled to a merits-based resolution of his ineffective assistance claims in state court; and (2) further agreed that I should stay the pending petition in the meantime to protect Waiters from any expiration of the one-year statute of limitations.[4]

Accordingly, within 30 days Waiters shall renew his § 440 motion in state court. He is advised that to complete the exhaustion of his claims, he must seek leave to appeal any decision denying those claims.

In the meantime, this federal petition will be stayed.  Within 30 days of the complete exhaustion of the claims in state court, Waiters shall contact this court if he wishes to lift the stay of these proceedings.

Finally, Waiters's claims of ineffective assistance of trial counsel may require the development of a more complete evidentiary record than is now before me.  In particular, the record is bare as to whether trial counsel could have established with medical certainty that Waiters was intoxicated at the time of the shooting via expert testimony interpreting Waiters's medical records.  I have therefore, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, appointed Gary Farrell as counsel for Waiters.  Mr. Farrell is authorized to perform all work

---

[4]       That limitations period is on the verge of expiring.  On August 7, 2012, the New York Court of Appeals denied leave to appeal from the Appellate Division's affirmance of Waiters's convictions.  The convictions therefore became final 90 days later, when the period to seek certiorari review in the United States Supreme Court expired.  *See Pratt v. Greiner*, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002).  Accordingly, the one-year period, which is not tolled by the instant petition, *see Duncan v. Walker*, 533 U.S. 167, 181 (2001), expires today, November 5, 2013.

reasonably necessary – including exhausting his client's claims in state court – to the prosecution of his federal habeas petition.  However, before engaging any experts or other resources, Mr. Farrell is instructed to first consult with case budgeting specialist Jerry Tritz in the Circuit Executive's office and to obtain approval of this court.

CONCLUSION

For the reasons set forth herein, Waiters's petition for a writ of habeas corpus is stayed pending further order of the court and Gary Farrell is appointed to represent Waiters.

So ordered.

John Gleeson, U.S.D.J.

Dated:  November 5, 2013
         Brooklyn, New York