*appeals*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: PART 1
-------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,                    :

                                                         :          **NOTICE OF MOTION**

                                                         :

            ---against---                          :          Indictment # 3464/06

                                                           :

GENERAL WAITERS,                                        :

                         Defendant.          :
-------------------------------------------------------------------X

      PLEASE TAKE NOTICE that upon the annexed affidavit of Gary Farrell, Esq., dated

December 5, 2013 the exhibits attached hereto, and upon all proceedings heretofore had herein,

the defendant will move this Court on January 17, 2014, or any date set by the Court, at the

Supreme Court, Kings County, Part1, pursuant to CPL Section 440.10(1)(h) for an order vacating

the judgment against the above named defendant rendered on June 2, 2008, and ordering a new

trial, and granting such other and further relief as may be deemed just and proper.

Dated:      New York, New York
             December 5, 2013

                                      Yours, etc.

                                      Gary A. Farrell, Esq.
                                      305 Broadway, Suite 1400
                                      New York, New York 10007
                                      (212) 822-1434

To:     Hon. Charles J. Hynes
       Kings County District Attorney

       Hon. Deborah Dowling (Courtesy Copy)
       Motion Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: PART 1
-----------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,                    :

                                                        :        **AFFIRMATION**

                    ---against---                       :        Indictment #3464/06

GENERAL WAITERS,

                              Defendant.                :
-----------------------------------------------------------------X

STATE OF NEW YORK      )
                       )        ss:
COUNTY OF NEW YORK     )


       GARY FARRELL, Esq. does hereby affirm to be true under the penalties of

perjury the following:

1. I am an attorney duly licensed and practicing in the State of New York.  I am representing the

defendant, General Lee Waiters, in the captioned proceedings pursuant to an order issued by

Hon. John Gleeson on November 5, 2013 (Exhibit A).  I am fully familiar with the facts of this

case and make this affirmation in support of the instant application for an order pursuant to CPL

§ 440.10 vacating defendant's conviction for Murder in the Second Degree, Attempted Murder

in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon  in the

Fourth Degree and granting a new trial.

2. All allegations contained herein, unless otherwise indicated, are based on facts known to be

true and upon information and belief.  The sources of such facts and information are the official

trial transcript, medical records, police reports, and conversations with the defendant, and various

exhibits attached hereto.

3. The defendant had a problem with alcohol.  He and his girlfriend, Jacqueline, drank every day, finishing a fifth bottle of rum in a day or two.  Defendant became verbally abusive when he drank. Defendant and Jacqueline drank with Jacqueline's aunt, Mary Lee Clark, every other weekend. (TR. 286, 390, 436-437).[1]

4. On May 6, 2006, Jacqueline held a birthday party for Defendant.  Defendant began drinking "Bacardi Light" rum mixed with soda before 2 p.m., until well after 11 p.m. (TR. 434, 438). The next morning, before 11 a.m., Jacqueline, Mary Lee Clark, and defendant began drinking rum again.  Approximately a half hour into their "drinking session" Jacqueline tried to prevent defendant from consuming any more alcohol, as she felt that he was drinking too much, by taking the bottle from him. (TR. 398-99, 443, 445).  Defendant responded by saying "fuck you bitch," and she told him "fuck you" back (TR. 399-400).

5. Mary Lee told defendant to calm down. (TR. 400). Defendant left the apartment, came back in and entered one of the bedrooms, where he remained for fifteen to twenty minutes. (Tr. 402).  He then rejoined Jacqueline and Mary Lee in the living room wearing a jacket he did not have on earlier. (TR. 401-03).

6. Defendant then approached Jacqueline, "and he was screaming and he was yelling and he was calling [her] names." (Tr. 403).  Lorenzo Warren, Jacqueline's son, heard Mary Lee's raised voice and entered the room. (TR. 162-63).  Jacqueline was "telling [defendant] to get out of [her] face and to leave." (TR. 405).  Lorenzo interjected, telling defendant to "step away" from Jacqueline and "get out of her face." (TR. 168, 219).  After being told by defendant that the matter did not concern him, Lorenzo objected and took two or three steps towards defendant. (TR. 169, 222). Defendant and Lorenzo then began to argue. (TR. 168-170).   According to Lorenzo, defendant was intoxicated during this argument. (TR. 170, 223).

---

[1] "TR" parenthetical references are to the trial transcripts.

7. During the argument, Jacqueline's other son, Derrick Warren, her daughter, Shatashia Lewis, and Mary Lee's granddaughter, Tajmere Clark, entered the living room. (TR. 170-71, 224).

8. As he argued with Lorenzo, defendant initially walked with Jacqueline towards the apartment door but then stopped. (TR. 412).  Defendant put his hand inside his jacket and said, "You don't want me to pull what I got out of my jacket." (TR. 414). Lorenzo said to him, "You don't have a gun in your pocket." (TR. 172).  Defendant pulled out a gun and pointed it at Lorenzo. Id. Lorenzo then said, "That gun isn't loaded. You don't have any bullets in that gun." (TR. 234). Defendant fired the gun. (TR. 236).

9. Defendant fired multiple shots in the direction of Lorenzo.  In the ensuing chaos, defendant shot Lorenzo Warren, Tajmere Clark, Mary Lee Clark, and Shatashia Lewis.   Tragically, young Tajmere Clark succumbed to her injuries. (TR. 176, 275, 283-84, 310).  Lorenzo, after being shot, physically beat defendant to the point that when police officers arrived on the scene, defendant needed to be hospitalized. (TR. 60-64, 88, 96, 188).

10. Below is a summary of the medical records and lab results from Kings County Hospital where defendant was taken after his arrest  and where he remained  for six weeks (Exhibit B). These documents show that defendant was extremely intoxicated at the time of his arrival at the hospital.

- Pg. 2 of documents, dated May 7, 2006 states that defendant had an Ethyl Alcohol Level of 386.24 (mg/dl) (crit).

- Pg. 20 of documents, dated May 8, 2006 states that defendant had an Ethyl Alcohol Level of 28.09 (mg/dl) (abn).

- Pg. 38 of the documents, dated June 27, 2006 states that the defendant had 3 instances of abn/crit Ethyl Alcohol level during his stay, 2 instances of an "abnormal" Ethyl Alcohol level during his stay, and 1 instance of a "critical" Ethyl Alcohol level during his stay at the hospital.

- Pg. 42 of the documents, dated May 7, 2006,  is a "Patient's

Progress/Communication Record" which states that the defendant's Central Nervous System ("CNS") is unable to be assessed due to the defendant's "intoxicated state."

- Pg. 43 of the documents, dated May 14, 2006, is a "Patient's Progress/Communication Record" which states that the defendant has suffered hallucinations while in the hospital and is undergoing "ETOH withdrawal," for which medications were administered.

- Pg. 44 of the documents, dated May 21, 2006 is a Psychiatry Inpatient Consult in which it is stated that defendant has alcohol abuse and dependence. Report also states that defendant's girlfriend reported that defendant has alcohol dependence. The Report further stated that defendant believed he was in Atlanta, Georgia (he was in Brooklyn, NY) and that his wife was with him the night before (she was not) at the time of assessment on May 14, 2006. Defendant is described as having alcohol delirium and alcohol dependence. The recommendation given is to continue "alcohol detox management."

- Pg. 46 of the documents, dated May 15, 2006, state that the defendant was disoriented as to where he was, did not know what year it was, and was suffering delirium due to either medical etiology and/or Etoh withdrawal.

- Pg. 51 of the documents, dated June 27, 2006 and titled "Adult Med/Surg/Rehab Discharge Summary" states that defendant was intoxicated when admitted. Also states that defendant is no longer hallucinating, and is being "discharged in stable condition on a detox regimen . . . ."

11. The defendant was indicted on May 11, 2006 and charged with Murder in the Second Degree, N.Y. Penal Law § 125.25(1),  Attempted Murder in the Second Degree, N.Y. Penal Law §§ 110.00 and 125.25(1), three counts of Assault in the First Degree, N.Y. Penal Law § 120.10(1), Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03(2), and Criminal Possession of a Weapon in the Fourth Degree, N.Y. Penal Law § 265.01(1).

12.  The trial was conducted by the Honorable Deborah Dowling, J.S.C.  After the People rested, and before resting his case, defense counsel sought to introduce defendant's medical records to support an intoxication defense (TR. 531).  The court was inclined to let the medical records in that were relevant to defendant's intoxication level only if a medical expert was called to explain the meanings of the records to the jury. (TR. 543-44, 547, 549-550, 556).

13. The court, prosecutor and defense counsel were confused as to the meanings of the medical terminology in the records. (TR. 535, 543).   For example, the court speculated that "C.N.S." could mean certified nurse. (TR. 551).[2]

14. The prosecutor expressed a willingness to wait for an expert to be called because they were not under any "time crunch." (TR. 548). However, defense counsel stated that he did not intend to call any more witnesses and was willing to let the court rule on whether to admit the medical records (TR. 552).  According to the record, defense counsel felt that trial testimony that defendant was intoxicated was sufficient to allow the records into evidence. (TR. 535).

15. The prosecutor argued, and the court agreed, that the issue was not the existence of intoxication, but the level of intoxication, and its ability to negate the intent element of the crimes charged. (TR. 546-47).  As a result of defense counsel's refusal to call a medical expert as a witness, the court only allowed into evidence two documents which simply stated that defendant was intoxicated. (TR. 552).[3]

16. There are 53 pages of medical records.  There was evidence within those records that demonstrate exactly how intoxicated defendant was; however, without the benefit of an expert it would be unclear what the medical terminology means.

17. The documents clearly do show that defendant's ethyl/alcohol level was 386.24 mg/dl shortly after admittance to the hospital. See Exhibit B, page 2.

18. In summation, defense counsel argued that defendant was intoxicated without referring to any direct evidence that would clarify how that intoxication could negate intent for the crimes he was being charged with.  Counsel argued that defendant acted recklessly rather than intentionally.

---

[2] "CNS" is an abbreviation for "central nervous system." See Stedman's Medical Dictionary. 28th Ed.
[3] The entire colloquy with respect to the defense counsel attempting to introduce the medical records and neglecting to call an expert witness is attached hereto as Exhibit C.

19. The prosecutor in summation highlighted the fact that although defendant was intoxicated, defense counsel had failed to offer evidence that would show what the level of that intoxication was. He even alluded to the two medical records, which simply stated that defendant was intoxicated, as not being sufficient since they failed to explain the all-important issue of "how" intoxicated defendant was. (TR. 640-41).

20. Despite arguing that defendant was too intoxicated to form the intent to be found guilty, defense counsel only requested a lesser charge of Manslaughter in the First Degree, which also has a specific intent element. Defense counsel never requested a lesser charge of Manslaughter in the Second Degree which would have supported the theory that the defendant acted recklessly, due to him being intoxicated, and not intentionally. Furthermore, defense counsel did not request lesser offenses relative to all the other specific intent crimes for which defendant was charged.

21. The jury convicted the defendant of Murder in the Second Degree, P.L. §125.25(1), Attempted Murder in the Second Degree, P.L. §§110.00/125.25(1), and two counts of Assault in the First Degree, P.L. § 120.10(1). On June 2, 2008, the defendant was sentenced to an aggregate prison term of 50 years to life in prison. (S.TR. 12-13).[4]

22. On June 8, 2010, the defendant filed an appeal of his conviction.

23. On October 5, 2010 the defendant, acting *pro se*, filed a Motion to Vacate Judgment, CPL §440.10(1)(h). In this motion defendant contended that his trial counsel was ineffective in failing to call an expert to establish defendant's intoxication level and in his strategy regarding lesser-offense charges.

24. On January 24, 2011, the court denied the defendant's CPL §440.10(1)(h) Motion to Vacate Judgment on the grounds that the defendant could raise his arguments in his appellate brief.

---

[4] "S. TR." refers to the sentencing transcript.

25. On May 8, 2012, the Appellate Division, Second Department affirmed the judgment of conviction. People v. Waiters, 95 A.D.3d 1043 (2d Dept.. 2012). The Court noted that defendant's ineffective assistance of counsel claim (which was included in the defendant's appeal) "is based, in part, on matter appearing on the record and, in part, on matter outside the record, and thus constitutes a 'mixed claim' of ineffective assistance . . . a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." (Exhibit D at 1045).

26. The Appellate Division concluded that defendant's allegations of ineffective assistance of counsel presented a "mixed claim," that is, they were "based, in part, on matter appearing on the record and, in part, on matter outside the record." *Id.* at 590-91. The Appellate Division was unable to determine whether defendant's trial counsel was deficient based on the matter contained in the record. The court therefore held that "[s]ince the defendant's claim of ineffective assistance cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." Id. at 591.

27. Defendant then sought leave to appeal to the New York State Court of Appeals in a letter application filed on June 1, 2012. His application raised all the same grounds he had raised before the Appellate Division. His application was denied on August 7, 2012. *People v. Waiters*, 19 N.Y.3d 1002 (2012) (Ciparick, J.).

28. On June 26, 2013, defendant filed a *pro se* petition for a Writ of Habeas Corpus in U.S. District Court, Eastern District of New York.

29. On November 5, 2013, Judge John Gleeson of the Eastern District ruled that the defendant's habeas petition would be stayed "in order to give the petitioner an opportunity to file and exhaust his ineffective assistance of counsel 440 claim back in the State Court."(Exhibit A).

30. As explained in detail in the accompanying memorandum of law, the failure by trial counsel

to obtain a toxicology expert to determine whether the defendant's intoxicated state on the day of the death of Ms. Tajmere Clark prevented him from forming the requisite intent needed to be convicted of Murder in the Second Degree, Attempted Murder in the Second Degree, and Assault in the First Degree violated defendant's constitutionally guaranteed 6th Amendment right to effective assistance of counsel. U.S. Const. 6th. Amdt., C.P.L. § 440.10(1)(e) and (h).

31. The defendant's trial attorney did not have the defendant's medical records evaluated or examined by a forensic toxicologist.  Furthermore, he never even discussed their significance with the defendant according to what the defendant stated to me in a recent interview.

32. Having an expert involved in the case undoubtedly would have prompted the defendant to request a lesser included charge that did not include a specific intent element, such as manslaughter in the second degree.  It would also have allowed for submission to the jury of certain medical records that demonstrated the extreme level of defendant's intoxication at the time of the incident without the heavy redaction that the trial court ordered of such records upon submission to the jury (redacted because there was no expert to explain the meaning of the records to the jury).  These records, in the hands of an expert, could have shown not only just how intoxicated defendant was on the day in question, but what that meant for the defendant's mental state and his ability to form an intent at the time of the shooting.  Such information, if explained by an expert, would have illustrated for the jurors that there is a likelihood that defendant was unable to form the requisite intent for the crimes that he was convicted of, and it would have very likely prevented defendant from being convicted for a specific intent crime. Furthermore, it would have prevented the People's line of argument on summation that although we know the defendant was drunk on the day in question - there is no way to know *how* drunk he actually was.

8

33. Dr. Richard Stripp, a renowned forensic toxicologist has reviewed the defendant's medical records (Dr. Stripp's Curriculum Vitae is attached as Exhibit E).   Dr. Stripp has opined in an attached affidavit that had he been called to testify in this case he would have testified as an expert in the field of forensic toxicology that based upon his review of the records that the defendant's blood alcohol level just hours after the shooting was consistent with someone being intoxicated to the point of delirium (see attached Affidavit as Exhibit F).   Dr. Stripp described the  expected pharmacological effects that someone as intoxicated as Waiters would likely have experienced.   They included loss of critical judgment, impairment of perception, disorientation, confusion, blackouts, delirium and noted that this high level of intoxication could have been fatal.

WHEREFORE, for the reasons set forth above, and in the accompanying memorandum of law, deponent asks for an order vacating the conviction and ordering a new trial.

GARY A. FARRELL, ESQ.
Attorney for the Defendant

Dated: December 5, 2013
           New York, N.Y.

9

## MEMORANDUM OF LAW

## ARGUMENT

### POINT I

**THE DEFENDANT WAS DEPRIVED OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL (1) FAILED TO CALL AN EXPERT WITNESS TO EXPLAIN AND INTERPRET MEDICAL RECORDS THAT WOULD HAVE ESTABLISHED HOW INTOXICATED DEFENDANT WAS, AND (2) COUNSEL REQUESTED AN INAPPROPRIATE LESSER-INCLUDED OFFENSE THAT FORCED THE JURY TO CONVICT ON THE TOP COUNT.** *U.S. Const. 6th. Amdt.; N.Y. Const. art. 1, sec. 6*

Counsel has a duty to prepare for trial.  In all criminal matters, a criminal defendant is entitled to the effective assistance of counsel. See People v. Benevento, 91 N.Y.2d 708, 709-10, 711 (1998); People v. Benn, 68 N.Y.2d 941 (1986); People v. Baldi, 54 N.Y.2d 137, 146 (1981). See also Strickland v. Washington, 466 U.S. 668, 668 (1984). Such duty requires counsel to investigate and prepare the witnesses that testify.  See People v. Butler, 94 A.D.2d 726 (2d Dept. 1983); People v. Hauser, 158 A.D.2d 1005 (4th Dept. 1990); Chandler v. United States, 193 F.3d 1297, 1300-01, 1304 (11th Cir. 1999); Nave v. Delo, 62 F.3d 1024, 1037 (8th Cir. 1995).  The standard under New York law for "effective" counsel is whether a defendant has received "meaningful" representation, People v. Benevento, 91 N.Y.2d at 712; Baldi, 54 N.Y.2d at 146 (discussing People v. Droz, 39 N.Y.2d 457 (1976)); People v. Aiken, 45 N.Y.2d 394 (1978). The question is whether counsel's conduct so prejudiced a defendant's case, or was so egregious, as to deny the accused a fair trial. People v. Caban, 5 N.Y.3d 143, 155-56 (2005); Benevento, 91 N.Y.2d at 713-14. Cumulative errors may require a finding of ineffective assistance even if any one of those errors, considered in isolation, would not, Droz, 39 N.Y.2d at 462.

In this case, trial counsel's performance fell woefully short of the standard for effective

10

assistance of counsel under both the N.Y. State and Federal constitutions. Here, defense counsel, with absolutely no legitimate strategic reason declined to call an expert witness at trial to interpret and explain the defendant's medical records. This was so even though the records established that defendant had an internal ethyl/alcohol level of 384.26 mg/dl[5] upon his arrival at the hospital hours after his arrest for the shootings. A widely used legal definition of alcohol intoxication is .08%, or 080.00 mg/dl. Defendant arrived at the hospital with a level of intoxication over .38%. This is more than four times the commonly thought of level of determining when an individual is legally impaired by alcohol. It is also a level that is close to the "level at which coma and death can occur." Miller v. Terhune, 510 F. Supp. 2d 486, 490 (E.D. Cal. 2007) (internal citation omitted).

From the very beginning of defendant's trial it was obvious that whether or not defendant had the requisite intent required for these crimes was going to be the central issue. The Assistant District Attorney, during his opening statement, told the jury that "[Defendant] was acting with the intent to end Lorenzo Warren's life . . . . This whole thing is going to be about [Defendant] trying to kill Lorenzo Warren." (TR. 39-40).

The jury convicted defendant of: Murder in the Second Degree, Attempted Murder in the Second Degree, and two counts of Assault in the First Degree. All four of these crimes require that the perpetrator, in order to be guilty of violating the law, had to have intended to cause a particular type of harm to another.

During trial there was copious testimony that defendant drank both the day before, and the morning of, the day of the crimes. (TR. 299-300, 319, 398-99, 434, 438, 444-45). The day in question was the day after defendant's birthday, and the events occurred at the location of his

---

[5] For medical and forensic purposes, the level of ethanol in the blood is measured as the weight of ethanol per volume of blood and then expressed as a percentage.

party. (TR. 299-300, 319).

Throughout opening statements and examination of witnesses, defendant's attorney never sought to communicate to the jury the level of the defendant's inebriation on the day in question. Nor did he seek to explain the effect such intoxication could have on a person's ability to form the necessary intent to be convicted of the crimes in question. It wasn't until right before summation that defendant's attorney finally tried to communicate this information to the jury, however by then it was too little, too late.

Just before resting, the defendant's attorney finally sought to introduce the defendant's medical records. (Exhibit C, TR. 531-556). This introduction was so late in the trial, and so inconsistent with the presentation that the defendant's attorney had made at trial, that the prosecutor questioned what relevance, if any, these records had. (TR. 532).

The relevance of the documents is readily apparent. The documents clearly showed not only that defendant was intoxicated upon his arrival to the hospital shortly after the events in question, but also an expert witness could have testified to just how intoxicated defendant was at the time of the shooting and how that level of intoxication could have affected his cognition (see Dr. Stripp's affidavit, Exhibit F). The defendant's alcohol level was so high he could have died. The medical records clearly show the defendant was experiencing delirium and hallucinations for days after the shooting.   This was not a case where he "slept it off" and was released the next morning but rather one where the doctors did not see fit to release him for six weeks.

When defense counsel sought admission of the medical records, the prosecutor felt that it would be improper to submit these records to the jury "without any explanation." (TR 532).  He argued, "[t]here's nothing [in the records] that allows [the jury], without explanation, to evaluate at what level his intoxication is." (TR 536).  Nor had anything been said about the records at any

point before their introduction just before summation.  The court, recognizing the potential importance of these documents, decided to allow the records in, but only if they were submitted in a heavily redacted form, blocking out virtually everything except for a notation that defendant was "intoxicated."  This was unhelpful to defendant as it had already been brought up at trial that defendant had been drinking for two days and was drunk at the time of the crimes.  (TR. 170, 223, 398-99, 434, 438, 443, 445).

The court was well aware that an expert should have been brought in to explain the significance of the records to the jury.  In a discussion outside the presence of the jury, the court stated, "[c]ertainly, one of the things that we can do, *which probably should have been done*, was either to have someone brought in or to call to find out what the definition of that is [referring to 'CNS']." (TR. 543-44) (emphasis added). The prosecutor agreed, and felt that the jury, on their own, would not be able to decipher the medical records and their import:

> I don't know that this jury is going to known [*sic*] that ethyl alcohol is the by-product of drinking alcohol. They're also not going to know on those parts of the lab reports where they have the little parenthesis and it says what level and whether it's CRIT or ABN or NOR.[6] They're not going to be able to quantify that whatsoever, your Honor. So, how are they going to determine at what level the intoxication is? (TR. 544).

The prosecutor, however, also had a solution for this problem - the defendant's attorney should have called a witness to explain the records to the jury:

> Now, we are not talking about unavailable witnesses who have made these observations. Those are available witnesses, according to the hospital records. Therefore, if you want somebody to testify or if you want to put in evidence of his intoxication and to make sure that the jury understands the levels of intoxication . . . then they would be able to assess at what level." (T.R. 546).

The Court agreed:

> Quite frankly . . . I would agree . . . that the best way would have been to

---

[6] Critical, Abnormal, or Normal.

get someone from the hospital to certainly interpret the records as to those limited issues. Quite frankly, *I don't know why, you know, someone wasn't called or at the very least to get an assessment by the doctor who appeared . . . .*" (TR. 547) (emphasis added).

The defense attorney pressed for the immediate admission of the records, without having to call any witness to interpret the records, despite the fact that the prosecutor was consenting to allow the defense to obtain such a witness, noting that there was no "time crunch" and that it "can be done." (TR. 548). The court stated that it was "inclined" to allow for the admission, but "there should have been someone to at least, certainly for the jury's edification, be able to explain what that means so that they should have some kind of understanding as to those numbers." (TR. 549). The defense attorney incorrectly responded: "this is a common sense type of issue not beyond the realm of the jury." (TR. 551). The Court disagreed, stating that while there was "common-law indicia of intoxication" in the records, there was also plenty of intoxication information that "would go beyond the common-law indicia of intoxication." (TR. 551). According to the court, if the defense was "seeking to have blood levels, the amount of ethanol alcohol in [the defendant's] blood stream [admitted to the jury], then clearly there should be someone to explain it . . . as to what . . . that would mean." The defense attorney averred that he would not be "introducing any additional witnesses," and was "prepared for the Court to make its ruling based on the defense not presenting any additional witnesses . . . ." (TR. 552).[7]

Defense counsel's application was granted as the trial court did admit two records, but only one that stated "CNS unable to assess due to intoxicated state," and one that stated: "36-year-old male intoxicated, or BIB EMS, brought in by E.M.S. intoxicated." (TR. 552). No

---

[7] In hindsight, it is apparent that the defendant's attorney was going to be satisfied if the judge simply admitted a record that the defendant was intoxicated at the time that he was brought to the hospital, even though such a submission would in no way show the all-too-important information of just *how* intoxicated the defendant was when he fired those fateful shots.

documentation of the defendant's level of intoxication was allowed to be shown to the jury.[8]

After the submission of the records to the jury, the defense rested. The defense then moved to have the charges dismissed because "the People have failed to establish that [the defendant] at any point intended to cause the death of Mr. Lorenzo Warren." (TR. 558-60). This is curious when one considers that it was defendant's counsel who easily could have, but failed to, show the jury that defendant *could not* form the requisite mens rea due to his intoxication. Instead, the defense attorney clearly withheld the best evidence he had—the entire medical records-- to prove this important point.  The court denied his motion to have the charges dismissed. (TR. 561).

At closing argument, the defense attorney, finally and at long last, delved into the significance of the fact that the defendant was intoxicated at the time of the events in question. But even then he did not explain to the jury how the defendant's level of intoxication could negate any specific intent requirement.  He mentioned that the defendant became "a different person when he drank," that the defendant was "drinking early in the morning [on the date of the incident] and . . . drank all day." (TR. 579, 584).  At the tail end of his closing argument he broached the "intent" issue, telling the jury that the reason he went through his entire closing was because they, the jury, are "going to have to evaluate and determine did [the defendant] really intend to kill Lorenzo [Warren]?" (TR. 604). The defendant's attorney asserted that the defendant acted  recklessly and  not intentionally, and that this was, perhaps, a result of him being intoxicated. (TR. 605-06).

The prosecutor then gave his closing argument, and he proceeded to use the defense attorney's gaffe against the defendant.  Freely admitting that the defendant was drunk on the date

---

[8] The medical records stated that defendant had an internal ethyl/alcohol level of 384.26 mg/dl upon his arrival at the hospital hours *after* his arrest, or ".38" in common parlance. (Exhibit B).

in question, the prosecutor disingenuously emphasized the lack of evidence the jury had heard on

the level of the defendant's intoxication as follows:

> Was he [(defendant)] so intoxicated, so drunk, voluntarily, on Bacardis
> and sodas that he couldn't intend to kill? Think about that for a minute.
> Exactly how drunk would somebody have to be that their thought
> processes could have been to the point where they couldn't intend to do
> something? Was he that drunk? The evidence says no. None of the
> witnesses say that. None of the witnesses say that he was in such a state.
> You didn't have somebody there who was falling down, rolling down,
> slobbering drunk. You had somebody who was loud, who was difficult,
> and who slurred his words a little bit. You didn't have that other thing . .
> . . Again, it doesn't matter what the opinion was from somebody from a
> medical record, because it doesn't tell you what you need to know. What
> you need to know is not whether he was intoxicated or not, but how
> intoxicated he was. (TR 636).

The prosecutor then added that "[t]he medical records are saying he was intoxicated. What does

that mean? *I don't know ladies and gentlemen.* It's something you don't know, and you can't

guess." (TR. 636, 641). This was 100% a disingenuous argument by the prosecutor as he was one

of the few people in the courtroom who certainly knew that there was available information

detailing the defendant's astronomically high blood alcohol level.

    The constitutional standard for effective assistance of counsel was established in the

seminal case of Strickland v. Washington:

> A convicted defendant's claim that counsel's assistance was so defective
> as to require reversal of a conviction or death sentence has two
> components. First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must show
> that the deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction or death sentence
> resulted from a breakdown in the adversary process that renders the
> result unreliable. Strickland, 466 U.S. at 687; see also Thomas v.
> Kuhlman, 255 F.Supp.2d 99, 106-08 (E.D. N.Y. 2003) ("Counsel 'has a
> duty to make reasonable investigations or to make a reasonable decision

that makes particular investigations unnecessary.'") (internal citations omitted).

Defense counsel was clearly ineffective under this test.  He had no legitimate or strategic reason for failing to call an expert witness to explain the records, and his failure was a deathblow to defendant's case.  An expert would have explained that once a person reaches the level of intoxication that defendant had reached then they are subject to blackouts, among other things, negating defendant's ability to act with specific intent.  New York courts have held that the failure of counsel to call an expert who can demonstrate that defendant was unable to form the requisite intent for a crime that he was convicted of can satisfy the N.Y. Crim. Proc. Law § 440.10 standard.  See People v. Nau, 21 A.D.3d 568 (2d Dep't 2005).[9]

In a strikingly similar case, Miller v. Terhune, 510 F. Supp. 2d 486 (E.D. Cal. 2007), the Eastern District of California granted a habeas corpus petition after finding that counsel failed to investigate and/or present evidence of intoxication that cast doubt on a jury's verdict and prejudiced the defendant.  In that case, defendant was convicted of Second Degree Murder after he shot and killed his longtime friend at his (the defendant's) house.  Id. at 488. The defendant, his friend, and his friend's girlfriend, had all been drinking on the night in question in celebration of the victim's release from prison.  Id. at 489.  The victim's girlfriend attempted to break-up with the victim, at which point the victim became physically abusive with her.  Id.   The

_____

[9] In Nau, the defendant was convicted of arson, as well as falsely reporting an incident. After conviction, the defendant appealed, arguing that he was denied effective assistance of counsel under N.Y. Crim. Proc. Law § 440.10 because his trial counsel failed to provide an expert witness to testify on his behalf regarding a mental disorder that defendant claimed to have. Specifically, the defendant argued that such an expert could have testified about this disorder and how it would act to prevent defendant from formulating the requisite intent necessary to commit the crimes charged. The trial court denied the motion without a hearing. On appeal the Appellate Division reversed, and ordered the trial court to hold a hearing on the matter, noting that the failure to investigate or call such potentially exculpatory witnesses can amount to ineffective assistance of counsel. People v. Nau, 21 A.D.3d 568, 568-69 (2d Dep't 2005).

defendant intervened, and the victim punched him, and then left the premises. Id.  Believing that the girlfriend was outside the house hiding, the defendant picked up a rifle and followed the victim outside, whereupon he ordered the victim off of his property. Id.  The victim yelled back at the defendant and started advancing towards him. Id.  The defendant then fired the shotgun at the victim's shoulder, but missed, and the victim continued to advance on him and began to threaten him. Id.  The defendant then aimed at the victim's chest, attempting to disable the victim, but mortally wounding him instead. Id.  The defendant was charged with murder and voluntary manslaughter.

In Miller, it was undisputed that the defendant's blood alcohol level was .30% three hours after the shooting. Id.  The jury was given instructions on Second Degree Murder and Voluntary manslaughter, but not the lessor included offense of Involuntary Manslaughter. Id.  The defendant was convicted of Second Degree Murder. Id.  The defendant then filed a habeas corpus petition, arguing that his trial counsel gave ineffective assistance in "unreasonably and prejudicially" failing to investigate or develop the defendant's level of intoxication in order to persuade the jury that the defendant did not have the requisite intent to murder his friend.  Id. at 489-90.  An evidentiary hearing was held and a doctor testified as an expert on the effect that alcohol has on the brain and related mental states. Id. at 490.  The doctor testified that a blood alcohol level of .33 and .34, the level of the defendant's blood at the time of the shooting of his friend, and the level of Mr. Waiters' blood at the time he was tested at the hospital, qualifies as "extreme alcohol intoxication" coming close to the "level at which coma and death can occur." Id. (internal citation omitted).  The doctor also testified that "there is not always a correlation between the degree of physical impairment and the degree of mental impairment," especially in a person who is highly alcohol tolerant, because "[i]n a person who is highly alcohol tolerant,

there may be a disconnect between the degree of visible physical impairments and the degree of mental impairment." Id. As the Miller court explained "just because petitioner was able to physically function does not also mean that petitioner was able to cognitively function. As petitioner suggests, these inconsistencies are exactly why expert testimony would have been helpful." Id. at 496. The doctor in Miller testified in detail how the effects of alcohol on the defendant could have resulted in circumstances that would suggest to a juror that an intoxicated person intended to act, when in fact in an intoxicated person acts "without actually intending anything more than to 'stop' a situation out of control." Id. at 491 (internal citations omitted). According to the medical expert, the defendant's blood alcohol level of between .33 and .34 "significantly affected his . . . ability to accurately understand what was going on around him," and significantly impaired the defendant's ability to "weigh choices and anticipate the consequences of his actions . . . . " Id. at 490.

In light of defense counsels' failure to obtain such a witness at trial, the Miller court held:

> [I]t is apparent that trial counsel never investigated the effects of alcohol on petitioner's perception, cognition, or ability to form the requisite intent. Nor did counsel consult any expert who could have educated the jury as to the effects of alcohol. Instead, counsel acted on their own assumptions about intoxication evidence. Accordingly, their choice of strategy was not based on any investigation and was unreasonable under Strickland. Id. at 501.

The Miller court granted the petitioner's writ of habeas corpus petition and ordered a new trial. Id. at 506.

The defendant's case is even more compelling than that of the defendant in Miller, as here defendant had a *higher* blood alcohol level then did the defendant in Miller. More to the point though is that the issue is not whether defendant was intoxicated or not, but how intoxicated he was, and whether that level of intoxication negated the specific intent element of

19

the crimes that the defendant was charged with, and how defense counsel could think that was not pertinent information to communicate to the jury. Unfortunately, because of the deficient effort by the defendant's attorney, such exculpatory information was never properly put before the jury, and they were unable to reach a proper conclusion on that issue.

In Miller the defendant's attorneys elected to abandon the intoxication defense in favor of a self-defense trial strategy, believing that the two conflicted with one another. Id. at 502. Those attorneys at least they had *some* reason, albeit a weak one, for not procuring an expert. No such reason was offered in this case. Finally, putting aside trial strategy, counsel apparently failed to investigate the meaning of the medical terms in the records before trial as demonstrated by his failure to explain to the court the meaning of different terms contained therein.

"The Counsel Clause of the Sixth Amendment provides that a criminal defendant 'shall enjoy the right ... to have the Assistance of Counsel for his defense.'" Gersten v. Senkowski, 299 F. Supp. 2d 84, 99 (E.D.N.Y. 2004) (citing U.S. Const. amend. VI). This provision guarantees a criminal defendant "the right to *effective* assistance of counsel." Id. (internal citations omitted) (emphasis in original). As demonstrated above, defendant was denied effective assistance of counsel. The first prong of the Strickland standard is that "defendant must show that counsel's performance was deficient." Strickland,466 U.S. at 687. Counsel in this case clearly should have obtained an expert to review these medical records that provided unequivocal evidence of profound intoxication. To not do so was inexcusable. Defendant's attorney was not functioning as "effective" counsel guaranteed to all citizens by the Sixth Amendment.

The second prong of the Strickland standard is demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Such was

clearly the case here. A jury convicted defendant of specific intent crimes without the all-important knowledge that at the time of the crimes the defendant was approaching a level of intoxication that could result in death. If the jury had heard such information the result of the trial would likely have been different.

A single error by counsel can constitute ineffective assistance if the error was of such magnitude that there exists a reasonable likelihood that the outcome of the trial would have been different. See People v. Georgiou, 38 A.D.3d 155, (2d Dept. 2007). The defendant must demonstrate "the absence of strategic or other legitimate explanations" for counsel's actions. People v. Rivera, 71 NT.2d 705, 709 (1988). There are no strategic or legitimate explanations for not getting an expert to explain the available medical records to a jury when those records would so likely affect the jury's determination.

## POINT II

**THE JUDGMENT OF CONVICTION SHOULD BE VACATED BECAUSE THE DEFENDANT WAS DENIED DUE PROCESS OF LAW THRU THE FAILURE OF HIS APPOINTED ATTORNEY TO REQUEST LESSER-INCLUDED OFFENSES THAT DID NOT INCLUDE A SPECIFIC INTENT ELEMENT, ASKING THE COURT ONLY FOR A LESSER INCLUDED OFFENSE THAT STILL CONTAINED A SPECIFIC INTENT ELEMENT. CPL §440.10(1)(H).**

Compounding the mistakes discussed above, defense counsel also provided ineffective assistance by not requesting a lesser included offense that did not have a specific intent element. A lesser-included offense should be charged, "if there is a reasonable view of the evidence which would support a finding that the Petitioner committed such lesser offense but did not commit the greater," and such a charge must be given if it is requested and falls within the stated standard. See CPL 300.50(1) and (2); People v Colville, 20 N.Y.3d 20, 31 (2012); People v. Vasquez, 104

A.D.2d 429 (2d Dept. 1984); People v. Scarborough, 49 N.Y.2d 364 (1980); People v. Brockett,

74 A.D.3d 1218 (2d Dept. 2010).

There is no doubt that the testimony at trial demonstrated that the defendant was

intoxicated both the night before and the day of the incident.  Amongst the crimes that defendant

was charged with was Murder in the Second Degree.  A lesser included offense to that is

Manslaughter in the Second Degree.   Manslaughter in the Second Degree does not possess a

specific intent element. P.L. 125.15.  Under the definition of Manslaughter in the Second Degree

a person is guilty if he "recklessly causes the death of another person." Id.  Despite the fact that

counsel must have known this information, he still failed to request Manslaughter in the Second

Degree as a lesser-included offense of Murder in the Second Degree.

Indeed, counsel even told the jury at summation that defendant probably *had* acted

recklessly, making his lapse in asking for Manslaughter in the Second Degree as a lesser-

included offense even more egregious:

> You will see evidence on the medical record for Mr. Waiters that, yes, he
> was intoxicated. And you say what does that have to do with anything?
> Well, the issue here is not whether the People prove all this happened
> was an accident. Because if you believe it was an accident, then they
> have not – they fail to prove he intended to kill or injury [*sic*] anybody.
> It's also not an issue of whether he was reckless. Whether that being
> intoxicated made him reckless. Because I submit to you if you believe
> his actions, based on what you know about him, his interaction with the
> family was reckless, meaning he had no business having that gun, he had
> no business taking out that gun, but in his alcohol that made him not
> think right and he was reckless, then you would have to find him not
> guilty of these intent crime. He's not being charged with being reckless.
> (Tr. 605-06).

So what reason could counsel have had for not requesting a charge of Manslaughter in

the Second Degree when he had already convinced the court to charge on intoxication?  If

defense counsel had requested Manslaughter in the Second Degree charge, the trial court would

have committed reversible error had it denied the request. See People v Colville, 20 N.Y.3d 20,31 (2012); People v. Vasquez, 104 A.D.2d 429 (2d Dept. 1984).  In Vasquez the defendant testified that he drank twelve beers shortly before the incident for which he was convicted of Manslaughter in the First Degree and Criminal Possession of a Weapon in the Fourth Degree. The Appellate Division reversed the conviction noting:

> [I]f requested, a lesser included offense must be charged "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater." In determining this issue, the "court must give the defendant the benefit of the most favorable view of the record." Here, Vasquez testified that he had drunk two six-packs of beer shortly before the incident, and another witness testified that Vazquez was drunk. Under these circumstances, there was a reasonable view of the evidence that Vasquez acted recklessly (and was guilty of the lesser included offense of manslaughter in the second degree) and not intentionally. Id. at 949 (internal citations omitted).

Manslaughter in the second degree is a reckless crime and given the defense counsel's position on the defendant's actions it was clear error not to request Manslaughter in the Second Degree.  In light of the overwhelming evidence of defendant's intoxication brought out during trial, and the fact that the "court must give the defendant the benefit of the most favorable view of the record" on this issue, it is reasonable to assume that the trial court would have accepted such a request to charge. Id. at 949 (internal citations omitted).

Instead, counsel requested Manslaughter in the First Degree as a lesser-included charge and the jury was left to choose between an "intentional" Murder in the Second Degree conviction, an "intentional" Manslaughter in the First Degree conviction, or nothing at all. Because of the ineffective assistance rendered to defendant by counsel, defendant is now incarcerated with a substantially longer sentence then he otherwise would have been had the jury convicted of Manslaughter in the Second Degree.  Where defendant might have been sentenced

23

up to fifteen years in prison for Manslaughter in the Second Degree, he is instead serving essentially a life sentence.

## CONCLUSION

In sum, if defendant had been provided with adequate representation by counsel then two very important and likely trial-changing things would have happened.  First, the jury would have been educated on the defendant's intoxicated state; not just that it existed, but *how* intoxicated defendant really was.  They also would have knowledge of the effects that intoxication, especially when it is at as high a level as the defendant's, can have on a person's ability to act with "intent."  Second, a lesser-included Manslaughter in the Second Degree charge would have been requested and given, and defendant would likely be serving a much shorter sentence then the one that he is currently serving.

For the foregoing reasons, defendant was provided with ineffective assistance of counsel, was denied his Constitutional rights of due process, and requests that his conviction be vacated and a new trial be ordered.

Respectfully submitted,

Gary Farrell
305 Broadway, Suite 1400
New York, New York 10007
212-822-1434

24

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL WAITERS, | |
| Petitioner, | MEMORANDUM AND ORDER 13-CV-3636 (JG) |
| - versus - | |
| WILLIAM LEE, | |
| Respondent. | |

APPEARANCES

> GENERAL WAITERS
> 08A3571
> Green Haven Correctional Facility
> P.O. Box 4000
> Stormville, New York 12582
> *Petitioner* Pro Se

> CHARLES J. HYNES
> Kings County District Attorney's Office
> 350 Jay Street
> Brooklyn, New York 11201
> By:  Rhea Ann Grob
> *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

General Waiters brings this *pro se* habeas petition, seeking relief from a state court judgment convicting him of murder in the second degree, attempted murder in the second degree and assault in the first degree. Waiters claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel at trial. Oral argument was held on November 4, 2013, at which Waiters appeared by videoconference from the facility in which he is serving his sentence. For the reasons set forth below, I hereby appoint Gary Farrell under the Criminal Justice Act, 18 U.S.C. § 3006A, to represent Waiters. In addition, on consent of the

parties, I will hold the petition in abeyance to permit Waiters, with the assistance of his appointed counsel, to exhaust his claims of ineffective assistance of counsel in state court.

## BACKGROUND

A.    *The Offense Conduct*

At trial, the state presented evidence that on May 7, 2006, at approximately 11:30 a.m., during an argument at his girlfriend Jacqueline Warren's East New York apartment, Waiters fired a gun several times, killing three-year-old Tajmere Clark and injuring Mary Lee Clark, Lorenzo Warren, and Shatashia Lewis. *See* Trial Tr. ("Tr.")[1] 53-56 (Corleto Test.); 80-81, 97 (Anderson Test.), 104 (Boston Test.); 274-79, 283-86 (Slone Test.).[2] Jacqueline testified that she was in the apartment's living room with Waiters and Mary Lee Clark, her aunt, on the morning of May 7. Tr. 398. The three drank rum and, according to Jacqueline, Waiters "drank too much" and began cursing at her. Tr. 398-99. When he asked her for the bottle of liquor, she replied, "You had too much to drink." Tr. 399. He responded loudly, saying, "Fuck you, bitch." Tr. 400. Jacqueline "told him fuck him" and Mary Lee told Waiters to calm down. *Id.* Waiters left the apartment, came back in and entered one of the bedrooms, where he remained for fifteen to twenty minutes. Tr. 402. He then rejoined Jacqueline and Mary Lee in the living room wearing a jacket he did not have on earlier. Tr. 401-03.

Waiters approached Jacqueline, "and he was screaming and he was yelling and he was calling [her] names." Tr. 403 (J. Warren Test.). Mary Lee again told him to calm down. *Id.* At this point, Lorenzo Warren, Jacqueline's son, heard Mary Lee's raised voice and entered the

---

[1]    I will use "Tr." to denote the trial transcript, "H. Tr." to denote the transcript of the *Huntley* hearing, "H.D. Tr." to denote the transcript of the state trial court's decision on the *Huntley* hearing, and "S. Tr." to denote the sentencing transcript. All of the above-referenced transcripts are filed under Exhibit A to the Response to the Order to Show Cause, ECF No. 6.

[2]    The parenthetical identifies the individual whose testimony is being cited. I omit the parenthetical where it is clear from the context whose testimony is being cited.

2

living room. Tr. 162-63 (L. Warren Test.). He observed Waiters standing over Jacqueline, who

was seated. Tr. 164 (L. Warren Test.). Jacqueline was "telling [Waiters] to get out of [her] face

and to leave." Tr. 405 (J. Warren Test.). Lorenzo interjected, telling Waiters to "step away"

from Jacqueline and "get out of her face." Tr. 168, 219 (L. Warren Test.). After being told by

Waiters that the matter did not concern him, Lorenzo objected and took two or three steps

towards Waiters. Tr. 169, 222 (L. Warren Test.).

        Waiters and Lorenzo "argu[ed] back and forth." Tr. 411 (J. Warren Test.). Mary

Lee held Lorenzo back, pushing him toward the back rooms of the apartment. Tr. 169 (L.

Warren Test.). Jacqueline "got up and . . . told Mr. Waiters to leave." Tr. 411 (J. Warren Test.).

When Waiters refused, she "grabbed him by the arm to walk him to the door." *Id.* The two men

continued to "exchange . . . words"; Lorenzo later testified on cross-examination that Waiters

was intoxicated during the argument, as evidenced by his slurred speech. Tr. 170, 223 (L.

Warren Test.). At some point during the argument, Jacqueline's other son, Derrick Warren, her

daughter, Shatashia Lewis, and Mary Lee's granddaughter, Tajmere Clark, entered the living

room. Tr. 170-71, 224 (L. Warren Test.); 307 (Lewis Test.); 413 (J. Warren Test.). Derrick also

argued with Waiters briefly before Derrick was pushed back towards one of the apartment's

bedrooms by Mary Lee. Tr. 231-32 (L. Warren Test.).

        As he argued with Jacqueline's sons, Waiters initially walked with Jacqueline

towards the apartment door but then stopped. *See* Tr. 412 (J. Warren Test.). Waiters put his

hand inside his jacket and said, "You don't want me to pull what I got out of my jacket." Tr. 414

(J. Warren Test.); 309 (Lewis Test.). Lorenzo said to him, "You don't have a gun in your

pocket." Tr. 172 (L. Warren Test.). Waiters pulled out a gun and pointed it at Lorenzo. *Id.*

3

Lorenzo then said, "That gun isn't loaded. You don't have any bullets in that gun." Tr. 234 (L. Warren Test.). Waiters fired the gun. Tr. 236 (L. Warren Test.).

Lorenzo felt a sharp pain in his right thigh. Tr. 176 (L. Warren Test.). He heard screaming and more gunshots. *Id.* Shatashia saw the gunfire and then felt pain in her leg. Tr. 310 (Lewis Test.). After Waiters started shooting, Jacqueline observed him walk towards Lorenzo before she ran out of the apartment to seek help. Tr. 414 (J. Warren Test.). When she reentered the apartment, she saw that Lorenzo had Waiters, who still had the gun in his hand, pinned to the floor and was punching him. Tr. 417 (J. Warren Test.); *see* Tr. 180-82. She heard clicking as Waiters continued to pull the trigger. *Id.* Waiters called out to her for help and Jacqueline took the gun from his hand. *Id.*

Police officers responding to the scene observed Waiters and Lorenzo engaged in a physical altercation. Tr. 60-64. (Corleto Test.), 88 (Anderson Test.). Officers separated the two men and handcuffed them both. *Id* . Waiters was taken away from the scene on a stretcher. Tr. 96 (Anderson Test.); 188 (L. Warren Test.). Four people had suffered gunshot wounds and were also transferred to the hospital. Tr. 69 (Corleto Test.). Lorenzo and Shatashia had been shot in the leg. Mary Lee had been shot in the head, abdomen and leg. Tr. 284 (Slone Test.). Tajmere had been shot in the head and torso and ultimately died of her injuries. Tr. 275, 283 (Slone Test.).

B.      *The Trial Court Proceedings and Sentencing*

Waiters was charged in the Supreme Court of the State of New York, Kings County, with one count of murder in the second degree, N.Y. Penal Law § 125.25(1), one count of attempted murder in the second degree, N.Y. Penal Law §§ 110.00 and 125.25(1), three counts of assault in the first degree, N.Y. Penal Law § 120.10(1), one count of criminal

4

possession of a weapon in the second degree, N.Y. Penal Law § 265.03(2), and one count of criminal possession of a weapon in the fourth degree, N.Y. Penal Law § 265.01(1).  Resp. Order to Show Cause, Ex. H (App. to § 440 Mot., King's Cnty. Indictment No. 3464/2006).

The state trial court held a *Huntley* hearing[3] on November 16, 2007 to address the admissibility of a statement Waiters made to the police on May 8, 2006 while in the hospital after being placed under arrest.  H. Tr. 9; 12-13, 20 (Duffy Test.).  The detective who took Waiters's statement testified that Waiters had "a difficult time speaking," and, although Waiters "seemed to understand the conversation," he "was in pretty bad shape" and said that he "was in quite a bit of pain."  H. Tr. 18, 21-22 (Duffy Test.).  When asked to elaborate on Waiters's condition, the detective testified that Waiters had suffered "a pretty good beating" and that "his face was severely swollen."  H. Tr. 19 (Duffy Test.).  When presented with a *Miranda* card to sign, Waiters again stated that he "was in a lot of pain" and had physical difficulty signing the card.  H. Tr. 23 (Duffy Test.).  The court suppressed the statement, finding that the state had not met its burden of showing that Waiters had knowingly and intelligently waived his rights.  H.D. Tr. 2.

Waiters was tried before a jury in May 2008.  After the state rested and outside the presence of the jury, defense counsel informed the court that he no longer wished to call an anticipated witness, a doctor who would have served as a defense expert.  Tr. 526-27.  In a direct exchange with Waiters, the court repeatedly confirmed that Waiters had made this decision of his own free will.  Tr. 527-28.  However, though the defense chose not to call the doctor, defense counsel sought to introduce into evidence Waiters's certified medical records from Kings County Hospital, which, counsel argued, proved both the injuries Waiters sustained as well as his level

---

[3]       *See People v. Huntley*, 15 N.Y.2d 72, 77 (1965) (providing for preliminary hearing upon request by defense counsel at which state has burden to prove beyond reasonable doubt that defendant's statement was voluntary).

5

of intoxication on the day of the incident. Tr. 531-32. The prosecutor both challenged the

relevance of the records and objected to them coming into evidence without explanation. Tr.

532.

In coming to its decision on the issue, the trial court noted its concerns about

providing medical records containing technical language and data to the jury without the

assistance of expert testimony to explain the meaning of the information contained in the

records. In response to the state's argument that one particular medical abbreviation was

undefined and would be unknown to judge and jury alike, the judge said: "Certainly, one of the

things that we can do, which probably should have been done, was either to have someone

brought in or to call to find out what the definition of that is." Tr. 543-44. Outside the presence

of the jury, the court elaborated on its concerns at some length:

> [T]he best way would have been to get someone from the hospital
> to certainly interpret the records . . . . Quite frankly, I don't know
> why, you know, someone wasn't called or at the very least to get
> an assessment by the doctor who appeared, even if it was by the
> People, something that would assist. . . . [T]here's some portions of
> the record that the Court is inclined to allow to get introduced that
> need to have an explanation . . . . There should be some assistance
> to the jury. Again, I'm inclined to allow you to do it. The only
> thing that I'm saying is that there should have been someone to at
> least, certainly for the jury's edification, be able to explain what
> that means so that they should have some kind of understanding as
> to those numbers.

Tr. 547, 549.

Defense counsel remained firm, arguing that the records demonstrated Waiters's

intoxication in line with the evidence already presented by the State's witnesses and further that

the interpretation of those records – in particular, the basic determination as to whether Waiters's

ethanol alcohol level was marked "normal, abnormal, or a critical stage" – would be "a common

sense type of issue not beyond the realm of the jury." Tr. 550-51. When the court stated that

6

"clearly there should be someone to explain" the significance of the level of ethanol alcohol in Waiters's blood, counsel responded as follows: "Your Honor, the defense at this point is not introducing any additional witnesses . . . . We would request that the Court permit all the information in, and we're prepared for the Court to make its ruling based on the defense not presenting any additional witnesses at this time." Tr. 552. As a result, the court required defense counsel to redact all but two lines of the medical records – those not containing numerical information, which the court found would require interpretation. Tr. 552-53. The two lines stated, in essence, that Waiters was brought to the hospital in an intoxicated state and was intoxicated at the time of his evaluation there. *Id.*

The jury convicted Waiters of murder in the second degree as to Tajmere Clark, attempted murder in the second degree as to Lorenzo Warren, and assault in the first degree as to Mary Lee Clark and Shatashia Lewis. Tr. 700-01. On June 2, 2008, Waiters was sentenced to twenty-five years to life on the second-degree murder count, ten years on the second-degree attempted murder count, twenty-five years on the first-degree assault count as to Mary Lee Clark, and five years on the first-degree assault count as to Shatashia Lewis. S. Tr. 12-13. The sentences were ordered to run consecutively. S. Tr. 13.

C.    *The Direct Appeal and the Motion to Vacate Judgment of Conviction*

Waiters, represented by new counsel, filed a counseled brief on direct appeal to the Appellate Division of the Supreme Court of New York, Second Department. Resp. Order to Show Cause, Ex. B (Def.'s Br.). The counseled brief, filed on April 7, 2010, argued that: (1) the verdict was against the weight of the evidence because the state, proceeding under a theory of transferred intent, failed to prove that Waiters intended to shoot Lorenzo, the person specified in the indictment; (2) Waiters was denied his right to a fair trial because the prosecutor in his

7

summation made factually misleading statements and misstated the law related to the elements of the charged counts; and (3) Waiters's sentences, imposed consecutively, were illegal.

On October 5, 2010 – nearly six months after filing his counseled brief on direct appeal – Waiters moved *pro se* to vacate his judgment of conviction pursuant to § 440.10 of the New York Criminal Procedure Law. Resp. Order to Show Cause, Ex. H (§ 440 Mot.). In his motion, Waiters contended that his trial counsel was ineffective in failing to call an expert to establish Waiters's intoxication defense and in his strategy regarding lesser-offense charges.

In a decision and order dated January 24, 2011, the Supreme Court, Kings County, summarily denied Waiters's motion, citing New York Criminal Procedure Law § 440.10(2)(c). Resp. Order to Show Cause, Ex. K (Den. of § 440 Mot.). That section provides:

> [T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period . . . .

N.Y. Crim. Proc. Law § 440.10(2)(c). The court was aware of Waiters's pending direct appeal, noting that he had submitted his appeal in June 2010 and been granted an extension to file a supplemental brief until February 2011 by the Appellate Division, Second Department, and concluded as follows: "It is clear that the [ineffective assistance] claims raised by the defendant are readily ascertainable from the record . . . [and] the defendant still has sufficient time to raise those claims in his supplemental brief." Based on that assessment, the court denied Waiters's motion as procedurally barred under § 440.10(2)(c).

On February 17, 2011, Waiters sought leave to appeal the denial of his § 440 motion to the Appellate Division, Second Department. *See* Pet. ¶ 12; Resp. Order to Show

Cause ¶ 12.  In a decision and order dated September 8, 2011, the Appellate Division denied

Waiters's application.  *Id.*

 After the § 440 court told him to name his ineffective assistance claims on direct

appeal, Waiters did so in his *pro se* supplemental brief, dated February 4, 2011.  He argued that

his trial counsel failed to call an expert witness to interpret his medical records and establish his

intoxicated state, and requested an inappropriate lesser-included offense (first-degree

manslaughter rather than second-degree manslaughter), which led to Waiters's conviction on the

more serious charge.

 On May 8, 2012, the Appellate Division, Second Department, affirmed Waiters's

convictions but modified the judgment on the law, finding that it was improper for the sentencing

judge to impose consecutive sentences for the crimes against Lorenzo Warren and Shatashia

Lewis.  *People v. Waiters*, 943 N.Y.S.2d 589, 591 (App. Div. 2012).  Those crimes, the court

found, were not shown to be "separate and distinct from each other and from the crimes

committed against Tajmere Clark and Mary Lee Clark."  *Id.*  Thus, the Appellate Division

directed that Waiters's sentences for attempted murder in the second degree as to Lorenzo

Warren and assault in the first degree as to Shatashia Lewis run concurrently with each other and

concurrently with Waiters's other sentences.  *Id.* at 590.  The resulting total sentence is 50 years

to life in prison.

 The Appellate Division rejected Waiters's other claims.  First, it found that the

guilty verdicts on each count were not against the weight of the evidence.  *Id.*  Second, it

determined that Waiters had not preserved for appellate review his arguments related to the

prosecutor's summation, *see* N.Y. Crim. Proc. Law § 470.05(2); *People v. Robinson*, 88 N.Y.2d

1001, 1002 (1996) ("[T]o frame and preserve a question of law reviewable by this Court, an

9

objection or exception must be made with sufficient specificity at the trial, when the *nisi prius* court has an opportunity to consider and deal with the asserted error."), and further that in any event, "the remarks that the defendant now claims to have been improper did not deprive him of his right to a fair trial." *Id.*

Finally, the Appellate Division concluded that Waiters's allegations of ineffective assistance of counsel presented a "mixed claim," that is, they were "based, in part, on matter appearing on the record and, in part, on matter outside the record." *Id.* at 590-91. The Appellate Division was unable to determine whether Waiters's trial counsel was deficient based on the matter contained in the record. Thus, whereas the § 440 court had told Waiters to raise his claim on direct appeal, the appellate court told him to raise it in a § 440 action: "Since the defendant's claim of ineffective assistance cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." *Id.* at 591.

Waiters sought leave to appeal to the New York State Court of Appeals in a letter application filed on June 1, 2012. Resp. Order to Show Cause, Ex. F (Def.'s Ltr.). His application raised all the same grounds he had raised before the Appellate Division. His application was denied on August 7, 2012. *People v. Waiters*, 19 N.Y.3d 1002 (2012) (Ciparick, J.).

D.    *The Instant Petition*

Following the decision in his direct appeal, Waiters did not submit an application to the Supreme Court requesting reconsideration of its decision to deny his § 440 motion or file a new § 440 motion. Instead, he filed the instant *pro se* petition for a writ of habeas corpus in this

court on June 26, 2013. Pet. In his petition, he presents only the ineffective assistance claims

raised in both his *pro se* supplemental brief on direct appeal and in his § 440 motion. *Id.*

## DISCUSSION

A.    *Legal Standards for Habeas Relief*

Under the Antiterrorism and Effective Death Penalty Act of 1996, federal habeas

relief is available when a "person in custody pursuant to the judgment of a State court . . . is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). A federal court may grant habeas relief "with respect to a[] claim that was

adjudicated on the merits in State court proceedings" only if the state decision was "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

28 U.S.C. § 2254(b) prevents a federal court from granting a petition for a writ of

habeas corpus unless the petitioner has first exhausted all available state judicial remedies. The

Supreme Court has commented on the exhaustion requirement as follows in relation to

ineffective assistance claims:

> The principle of comity that underlies our longstanding exhaustion
> doctrine would be ill served by a rule that allowed a federal district
> court to upset a state court conviction without an opportunity to the
> state courts to correct a constitutional violation, and that holds true
> whether an ineffective assistance claim is asserted as cause for
> procedural default or denominated as independent ground for
> habeas relief.

*Murray v. Carrier*, 477 U.S. 478, 489 (1986) (citation and internal quotation marks omitted).

Regardless of the particular nature of a petitioner's claims, in order to have exhausted available

state remedies, a petitioner must have "fairly presented" her federal constitutional claims to the

highest state court by apprising it of "both the factual and the legal premises of the claim he

11

asserts in federal court." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*).

The statute prohibits the grant of a petition on a ground that has not been exhausted. *See* 28 U.S.C. § 2254(b)(1)(A). Such claims may be denied on the merits, *see* 28 U.S.C. § 2254(b)(2), or dismissed. A third option, the "stay and abeyance" procedure created by *Zarvela v. Artuz*, 254 F.3d 374, 380-82 (2d Cir. 2001), and endorsed (with some modifications) by *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005), stays the federal petition to allow a petitioner to return to state court to exhaust the unexhausted claim.

B. *Ineffective Assistance*

To establish a claim of ineffective assistance of counsel under the federal constitution, a petitioner must show (1) that counsel supplied deficient representation, and (2) that the petitioner suffered prejudice as a result of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

C. *Analysis*

At the oral argument, both sides agreed that Waiters's claims of ineffective assistance are unexhausted. At bottom, when Waiters asserted the claims in his § 440 motion,

12

the Supreme Court told him to raise them on his then-pending direct appeal; when he followed that instruction, the appellate court told him to raise them in a § 440 motion. Waiters, understandably, then came here to federal court instead of going back to state court. As he put it at oral argument, he was afraid the § 440 court would reject his claims on the ground that he'd already filed a § 440 motion.

To his credit, respondent has (1) agreed that Waiters is entitled to a merits-based resolution of his ineffective assistance claims in state court; and (2) further agreed that I should stay the pending petition in the meantime to protect Waiters from any expiration of the one-year statute of limitations.[4]

Accordingly, within 30 days Waiters shall renew his § 440 motion in state court. He is advised that to complete the exhaustion of his claims, he must seek leave to appeal any decision denying those claims.

In the meantime, this federal petition will be stayed. Within 30 days of the complete exhaustion of the claims in state court, Waiters shall contact this court if he wishes to lift the stay of these proceedings.

Finally, Waiters's claims of ineffective assistance of trial counsel may require the development of a more complete evidentiary record than is now before me. In particular, the record is bare as to whether trial counsel could have established with medical certainty that Waiters was intoxicated at the time of the shooting via expert testimony interpreting Waiters's medical records. I have therefore, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, appointed Gary Farrell as counsel for Waiters. Mr. Farrell is authorized to perform all work

---

[4]      That limitations period is on the verge of expiring. On August 7, 2012, the New York Court of Appeals denied leave to appeal from the Appellate Division's affirmance of Waiters's convictions. The convictions therefore became final 90 days later, when the period to seek certiorari review in the United States Supreme Court expired. *See Pratt v. Greiner*, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002). Accordingly, the one-year period, which is not tolled by the instant petition, *see Duncan v. Walker*, 533 U.S. 167, 181 (2001), expires today, November 5, 2013.

13

reasonably necessary – including exhausting his client's claims in state court – to the prosecution of his federal habeas petition.  However, before engaging any experts or other resources, Mr. Farrell is instructed to first consult with case budgeting specialist Jerry Tritz in the Circuit Executive's office and to obtain approval of this court.

## CONCLUSION

For the reasons set forth herein, Waiters's petition for a writ of habeas corpus is stayed pending further order of the court and Gary Farrell is appointed to represent Waiters.

So ordered.

John Gleeson, U.S.D.J.

Dated: November 5, 2013
        Brooklyn, New York

# EXHIBIT B

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|--------------------|-----------------------|------------------------------|----------|---------|
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Activated Partial Thromb 7 May 06  1233 Zheng,Yinggang, MD | 10927210 | Result D/T: 05/07/06 by: Owate,Angelina, MT Anticoagulant: none (norm) Diagnosis: Muscle Pain Myalgia (norm) Remark: Spec #10927210: 7 May 06  1233 (norm) aPTT (sec) : 24.4 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Amylase Level 7 May 06  1233 Zheng,Yinggang, MD | 10927210 | Result D/T: 05/07/06 by: Young,Lee Jeanne, MT Amylase (U/L): 79 (norm) Comment: K REPEATED,DR TSAI NOTIFIED AT 1417,X4601 (norm) Diagnosis: Muscle Pain Myalgia (norm) Remark: Spec #10927210: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | CO-Oximetry 7 May 06  1233 Zheng,Yinggang, MD | 10927210 | Result D/T: 05/07/06 by: Woods,Fannie, MT BE        (mmol/L): -9.6 (norm) COHb          (%): 2.3 (norm) Comment: D. Zheng notified at window (critical repeat ) (norm) Corr pCO2 (mmHg): 37.4 (norm) Corr pH: 7.257 (norm) Corr pO2  (mmHg): 73.6 (norm) FIO2: 21% (norm) HCO3     (mmol/L): 16.5 (norm) MetHb         (%): 0.6 (norm) O2Hb          (%): 86.8 (norm) PCO2      (mmHg): 37.4 (norm) Remark: Spec #10927210: 7 May 06  1233 (norm) p50           (mmHg): 35.28 (norm) pH: 7.257 (norm) pO2       (mmHg): 73.6 (norm) sO2           (%): 89.4 (norm) tHb       (g/dL): 17.7 (norm) tO2       (vol%): 21.5 (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 43 of 136 PageID #: 1658

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006   0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Comprehensive Metabolic 7 May 06   1233  10927210 Zheng,Yinggang, MD | Result D/T: 05/07/06 by: Young,Lee Jeanne, MT ALT     (U/L): 94 (abn) AST     (U/L): 190 (abn) Albumin  (g/dL): 4.6 (norm) Alk Phos (U/L): 85 (norm) Anion Gap: 32 (abn) BUN     (mg/dL): 9 (norm) BUN/Creat Ratio: 7 (abn) CO2     (mmol/L): 15 (abn) Ca      (mg/dL): 9.5 (norm) Cl      (mmol/L): 98 (abn) Comment: K REPEATED,DR TSAI NOTIFIED AT 1417,X4601 (norm) Creat   (mg/dL): 1.3 (abn) D1: ALB,ALT,AST,CO2,TBIL,BUN,CA,GLU,CREA,TP,ALP (norm) Diagnosis: Muscle Pain Myalgia (norm) Gluc    (mg/dL): 126 (abn) K       (mmol/L): 2.9 (crit) Na      (mmol/L): 145 (norm) P1: Na,K,Cl (norm) Remark: Dept #CC6437: 7 May 06   1233 (norm) T Prot  (g/dL): 7.9 (norm) T. Bili  (mg/dL): 1.1 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Ethyl Alcohol Level 7 May 06   1233  10927210 Zheng,Yinggang, MD | Result D/T: 05/07/06 by: Small,Imelda, MLT Diagnosis: Muscle Pain Myalgia (norm) Ethyl Alcohol (mg/dL): 386.24 (crit) Remark: Spec #10927210: 7 May 06   1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 | 05/07/06 1227 Adult | Hemogram Auto Diff w/rfl 7 May 06   1233  10927210 | Result D/T: 05/07/06 by: Rashcovan,Alexander, MT Atyp Flag: + (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 44 of 136 PageID #: 1659

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| | 36Y | Emergency - 000 | Zheng,Yinggang, MD | Baso  (%): 1.3 (abn) |
| | | | | Baso(K/uL): 0.06 (norm) |
| | | | | Comment: results confirmed by repeat analysis (norm) |
| | | | | Eos   (%): 1.2 (norm) |
| | | | | Eos  (K/uL): 0.05 (norm) |
| | | | | HDW   (%): 2.39 (norm) |
| | | | | Hct   (%): 42.9 (norm) |
| | | | | Hgb (g/dL): 14.5 (norm) |
| | | | | LI: 2.17 (norm) |
| | | | | LUC   (%): 7.2 (abn) |
| | | | | LUC  (K/uL): 0.32 (norm) |
| | | | | Lym  (K/uL): 2.21 (norm) |
| | | | | Lymph (%): 49.2 (abn) |
| | | | | MCH   (pg): 33.9 (abn) |
| | | | | MCHC(g/dL): 33.9 (norm) |
| | | | | MCV   (fL): 100.0 (abn) |
| | | | | MPV   (fL): 9.1 (norm) |
| | | | | MPXI: 7.9 (norm) |
| | | | | Macro Flag: ++ (norm) |
| | | | | Mono  (%): 4.4 (norm) |
| | | | | Mono(K/uL): 0.20 (norm) |
| | | | | NRBC Flag: + (norm) |
| | | | | Neut  (%): 36.7 (abn) |
| | | | | Neut(K/uL): 1.65 (norm) |
| | | | | Plt  (K/uL): 142 (norm) |
| | | | | RBC (M/uL): 4.29 (norm) |
| | | | | RDW   (%): 14.4 (norm) |
| | | | | Remark: Spec #10927210: 7 May 06  1233 (norm) |
| | | | | WBC (K/uL): 4.50 (norm) |
| Waiters,General | 2308102-1 05/06/1970 | 05/07/06 1227 Adult | Prothrombin Time 7 May 06  1233  10927210 | Result D/T: 05/07/06 by: Owate,Angelina, MT Anticoagulant: none (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | 36Y | Emergency -<br>000 | Zheng,Yinggang, MD | | D Fibrngn: 360.1 (norm)<br>Diagnosis: Muscle Pain Myalgia (norm)<br>PT   (sec): 13.6 (norm)<br>Remark: Spec #10927210: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1<br>05/06/1970<br>36Y | 05/07/06 1227<br>Adult<br>Emergency -<br>000 | Urinalysis Auto w/rflx t<br>7 May 06  1233<br>Zheng,Yinggang, MD | 10927209 | Result D/T: 05/07/06 by: Owate,Angelina, MT<br>Amorph material: moderate (abn)<br>Bacteria(UF)/hpf: rare (norm)<br>Bilirubin: negative (norm)<br>Cast(UF)/lpf: 0-2 (norm)<br>Casts   (/lpf): none (norm)<br>Clarity: CLEAR (norm)<br>Color: YELLOW (norm)<br>Crystals: none seen (norm)<br>Diagnosis: Muscle Pain Myalgia (norm)<br>Epith Cell(UF)/hpf: 5-10 (norm)<br>Flagging (UF): SRC (norm)<br>Glucose: negative (norm)<br>Hemoglobin: moderate (2+) (abn)<br>Ketones: 5 mg/dl (trace) (abn)<br>Leuk Esterase: negative (norm)<br>Manual Micro Exam: manual micro required (norm)<br>Micro Exam: complete (norm)<br>Mucous threads: mod (abn)<br>Nitrite: negative (norm)<br>Prot Confirm: 3+ (abn)<br>Protein: >=300 mg/dl (3+) (abn)<br>RBC   (/hpf): 5-10 (abn)<br>RBC(UF)/hpf: 0-2 (norm)<br>Remark: Spec #10927209: 7 May 06  1233 (norm)<br>Spec Grav: 1.015 (norm)<br>Urobilinogen: 1.0 E.U./dl (norm)<br>WBC(UF)/hpf: 5-10 (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 46 of 136 PageID #: 1661

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|--------------------|-----------------------|------------------------------|----------|---------|
| | | | | | pH: 6.0 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Calcium, Ion 7 May 06  1233  10927210 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Calcium Ionized (mg/dL): 4.24 (abn) Comment: D. Zheng notified at window (critical repeat ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Remark: Dept #CC6437: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Chloride 7 May 06  1233  10927210 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Cl (mmol/L): 107 (norm) Comment: D. Zheng notified at window (critical repeat ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Remark: Dept #CC6437: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Glucose 7 May 06  1233  10927210 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: D. Zheng notified at window (critical repeat ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Gluc (mg/dL): 128 (abn) Remark: Dept #CC6437: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Lactate 7 May 06  1233  10927210 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: D. Zheng notified at window (critical repeat ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Lactate (mmol/L): 15 (crit) Remark: Dept #CC6437: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - | Whole Blood Potassium 7 May 06  1233  10927210 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: D. Zheng notified at window (critical repeat ) (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | 000 | | | Diagnosis: Muscle Pain Myalgia (norm) |
| | | | | | K (mmol/L): 3.3 (abn) |
| | | | | | Remark: Dept #CC6437: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Sodium 7 May 06  1233 Zheng,Yinggang, MD | 10927210 | Result D/T: 05/07/06 by: Woods,Fannie, MT |
| | | | | | Comment: D. Zheng notified at window (critical repeat ) (norm) |
| | | | | | Diagnosis: Muscle Pain Myalgia (norm) |
| | | | | | Na (mmol/L): 147 (abn) |
| | | | | | Remark: Dept #CC6437: 7 May 06  1233 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | CO-Oximetry 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Result D/T: 05/07/06 by: Woods,Fannie, MT |
| | | | | | BE      (mmol/L): -7.9 (abn) |
| | | | | | COHb      (%): 2.5 (abn) |
| | | | | | Comment: dr.zheng notified at window ( critical repeated ) (norm) |
| | | | | | Corr pCO2 (mmHg): 37.1 (abn) |
| | | | | | Corr pH: 7.293 (abn) |
| | | | | | Corr pO2  (mmHg): 120 (abn) |
| | | | | | Diagnosis: Muscle Pain Myalgia (norm) |
| | | | | | FIO2: 21% (norm) |
| | | | | | HCO3    (mmol/L): 18.0 (abn) |
| | | | | | MetHb      (%): 0.9 (abn) |
| | | | | | O2Hb       (%): 94.2 (norm) |
| | | | | | PCO2     (mmHg): 37.1 (abn) |
| | | | | | Remark: Spec #10927221: 7 May 06  1239 (norm) |
| | | | | | p50      (mmHg): 28.55 (norm) |
| | | | | | pH: 7.293 (abn) |
| | | | | | pO2      (mmHg): 120 (abn) |
| | | | | | sO2        (%): 97.5 (norm) |
| | | | | | tHb     (g/dL): 13.1 (norm) |
| | | | | | tO2     (vol%): 17.6 (abn) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 48 of 136 PageID #: 1663

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006   0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|-------------------|----------------------|----------------------------|----------|---------|
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Calcium, Ion 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Result D/T: 05/07/06 by: Woods,Fannie, MT Calcium Ionized (mg/dL): 4.09 (abn) Comment: dr.zheng notified at window ( critical repeated ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Remark: Spec #10927221: 7 May 06  1239 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Chloride 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Result D/T: 05/07/06 by: Woods,Fannie, MT Cl (mmol/L): 109 (norm) Comment: dr.zheng notified at window ( critical repeated ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Remark: Spec #10927221: 7 May 06  1239 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Glucose 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: dr.zheng notified at window ( critical repeated ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Gluc (mg/dL): 114 (abn) Remark: Spec #10927221: 7 May 06  1239 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Lactate 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: dr.zheng notified at window ( critical repeated ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Lactate (mmol/L): 10.8 (crit) Remark: Spec #10927221: 7 May 06  1239 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Potassium 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: dr.zheng notified at window ( critical repeated ) (norm) Diagnosis: Muscle Pain Myalgia (norm) K (mmol/L): 2.8 (crit) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006 2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|--------------------|-----------------------|------------------------------|----------|---------|
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Sodium 7 May 06  1239 Zheng,Yinggang, MD | 10927221 | Remark: Spec #10927221: 7 May 06  1239 (norm) Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: dr.zheng notified at window ( critical repeated ) (norm) Diagnosis: Muscle Pain Myalgia (norm) Na (mmol/L): 147 (abn) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Urine Toxicology 5 7 May 06  1243 Zheng,Yinggang, MD | 10927225 | Remark: Spec #10927221: 7 May 06  1239 (norm) Result D/T: 05/07/06 by: Young,Lee Jeanne, MT Barbit    (mAbs): -342 (norm) Barbiturates: none detected (norm) Benzodiaz (mAbs): -629 (norm) Benzodiazepines: none detected (norm) Cocaine   (mAbs): -375 (norm) Cocaine/Metab: none detected (norm) Diagnosis: Muscle Pain Myalgia (norm) Methadone (mAbs): -671 (norm) Methadone: none detected (norm) Opiates   (mAbs): -507 (norm) Opiates: none detected (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | CO-Oximetry 7 May 06  1410 Zheng,Yinggang, MD | 10927288 | Remark: Spec #10927225: 7 May 06  1243 (norm) Result D/T: 05/07/06 by: Woods,Fannie, MT BE     (mmol/L): -4.0 (abn) COHb    (%): 3.0 (abn) Comment: D.Zheng notified at window ( critical repeated ) (norm) Corr pCO2 (mmHg): 24.3 (abn) Corr pH: 7.498 (abn) Corr pO2 (mmHg): 135 (abn) Diagnosis: Trauma (norm) FIO2: 21% (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,                                        Page   9      of  41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|--------------------|-----------------------|------------------------------|----------|---------|

```
                                                          HCO3    (mmol/L): 21.0 (abn)
                                                          MetHb      (%): 1.2 (abn)
                                                          O2Hb       (%): 95.6 (norm)
                                                          PCO2    (mmHg): 24.3 (abn)
                                                          Remark: Spec #10927288: 7 May 06  1410 (norm)
                                                          p50     (mmHg): 22.57 (abn)
                                                          pH: 7.498 (abn)
                                                          pO2     (mmHg): 135 (abn)
                                                          sO2        (%): 99.8 (abn)
                                                          tHb     (g/dL): 4.7 (abn)
                                                          tO2    (vol%): 6.7 (abn)


                        CO-Oximetry                       Result D/T: 05/07/06 by: Woods,Fannie, MT
                        7 May 06  1410  10927288 BE       (mmol/L): -4.0 (abn)
                        Zheng,Yinggang, MD               COHb       (%): 3.0 (abn)
                                                          Comment: D.Zheng notified at window ( critical
                                                          repeated ) (norm)
                                                          Corr pCO2 (mmHg): 24.3 (abn)
                                                          Corr pH: 7.498 (abn)
                                                          Corr pO2 (mmHg): 135 (abn)
                                                          Diagnosis: Trauma (norm)
                                                          FIO2: 21% (norm)
                                                          HCO3    (mmol/L): 21.0 (abn)
                                                          MetHb      (%): 1.2 (abn)
                                                          O2Hb       (%): 95.6 (norm)
                                                          PCO2    (mmHg): 24.3 (abn)
                                                          Remark: Spec #10927288: 7 May 06  1410 (norm)
                                                          p50     (mmHg): 22.57 (abn)
                                                          pH: 7.498 (abn)
                                                          pO2     (mmHg): 135 (abn)
                                                          sO2        (%): 99.8 (abn)
                                                          tHb     (g/dL): 4.7 (abn)
                                                          tO2    (vol%): 6.7 (abn)
```

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 51 of 136 PageID #: 1666

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|

Waiters,General

2308102-1
05/06/1970
36Y

05/07/06 1227
Adult
Emergency -
000

Hemogram Auto Diff w/rfl
7 May 06  1410  10927288
Zheng,Yinggang, MD

Result D/T: 05/07/06 by: Brignolle,Marie F., MT
Baso (%): 0.3 (norm)
Baso(K/uL): 0.03 (norm)
Comment: automated differential confirmed on
smear (norm)
Eos   (%): 0.9 (norm)
Eos (K/uL): 0.07 (norm)
HDW   (%): 2.43 (norm)
Hct   (%): 35.6 (abn)
Hgb (g/dL): 12.0 (abn)
LI: 2.44 (norm)
LUC   (%): 1.9 (norm)
LUC (K/uL): 0.16 (norm)
Lym (K/uL): 0.40 (abn)
Lymph (%): 4.8 (abn)
MCH   (pg): 33.1 (abn)
MCHC(g/dL): 33.8 (norm)
MCV   (fL): 98.0 (abn)
MPV   (fL): 9.6 (norm)
MPXI: 10.9 (abn)
Macro Flag: + (norm)
Mono  (%): 5.4 (norm)
Mono(K/uL): 0.44 (norm)
Neut  (%): 86.7 (abn)
Neut(K/uL): 7.18 (norm)
PLT CLMP: + (norm)
Plt (K/uL): 139 (norm)
Plt Est: adequate (norm)
RBC (M/uL): 3.64 (abn)
RDW   (%): 14.3 (norm)
Remark: Spec #10927288: 7 May 06  1410 (norm)
Scan: reviewed (norm)

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 52 of 136 PageID #: 1667

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|--------------------|-----------------------|------------------------------|----------|---------|
| | | | | | WBC (K/uL): 8.28 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Calcium, Ion 7 May 06  1410  10927288 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Calcium Ionized (mg/dL): 3.26 (crit) Comment: D.Zheng notified at window ( critical repeated ) (norm) Diagnosis: Trauma (norm) Remark: Spec #10927288: 7 May 06  1410 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Chloride 7 May 06  1410  10927288 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Cl (mmol/L): 109 (norm) Comment: D.Zheng notified at window ( critical repeated ) (norm) Diagnosis: Trauma (norm) Remark: Spec #10927288: 7 May 06  1410 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Glucose 7 May 06  1410  10927288 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: D.Zheng notified at window ( critical repeated ) (norm) Diagnosis: Trauma (norm) Gluc (mg/dL): 87 (norm) Remark: Spec #10927288: 7 May 06  1410 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - 000 | Whole Blood Lactate 7 May 06  1410  10927288 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: D.Zheng notified at window ( critical repeated ) (norm) Diagnosis: Trauma (norm) Lactate (mmol/L): 6.6 (crit) Remark: Spec #10927288: 7 May 06  1410 (norm) |
| Waiters,General | 2308102-1 05/06/1970 36Y | 05/07/06 1227 Adult Emergency - | Whole Blood Potassium 7 May 06  1410  10927288 Zheng,Yinggang, MD | | Result D/T: 05/07/06 by: Woods,Fannie, MT Comment: D.Zheng notified at window ( critical repeated ) (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 53 of 136 PageID #: 1668

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006   0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No   for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | 000 | | | Diagnosis: Trauma (norm)<br>K (mmol/L): 3.7 (norm)<br>Remark: Spec #10927288: 7 May 06  1410 (norm) |
| Waiters,General | 2308102-1<br>05/06/1970<br>36Y | 05/07/06 1227<br>Adult<br>Emergency -<br>000 | Whole Blood Sodium<br>7 May 06  1410<br>Zheng,Yinggang, MD | 10927288 | Result D/T: 05/07/06 by: Woods,Fannie, MT<br>Comment: D.Zheng notified at window ( critical<br>repeated ) (norm)<br>Diagnosis: Trauma (norm)<br>Na (mmol/L): 146 (abn)<br>Remark: Spec #10927288: 7 May 06  1410 (norm) |
| Waiters,General | 3046806-11<br>05/06/1970<br>36Y | 05/07/06 1327<br>Surgical<br>Emergency -<br>004 | CO-Oximetry<br>7 May 06  1621<br>Chi,Thomas, MD | 10927401 | Result D/T: 05/07/06 by: Warner,Errol,<br>BE     (mmol/L): 1.0 (norm)<br>COHb       (%): 2.5 (abn)<br>Comment: spec repeated kolli notified. (norm)<br>Corr pCO2 (mmHg): 40.4 (norm)<br>Corr pH: 7.410 (norm)<br>Corr pO2 (mmHg): 84.9 (abn)<br>Diagnosis: Trauma (norm)<br>FIO2: 21% (norm)<br>HCO3   (mmol/L): 25.2 (norm)<br>MetHb       (%): 0.9 (abn)<br>O2Hb       (%): 92.9 (abn)<br>PCO2    (mmHg): 40.4 (norm)<br>Remark: Spec #10927401: 7 May 06  1621 (norm)<br>p50     (mmHg): 26.60 (norm)<br>pH: 7.410 (norm)<br>pO2     (mmHg): 84.9 (abn)<br>sO2        (%): 96.2 (norm)<br>tHb     (g/dL): 12.3 (norm)<br>tO2     (vol%): 16.2 (abn) |
| Waiters,General | 3046806-11 | 05/07/06 1327 | Hemogram Auto Diff w/rfl | | Result D/T: 05/07/06 by: Khan,Allah, MT |

27 Jun 2006  1228  Generated by Matthews,Melissa,                                    Page  13    of  41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | 05/06/1970<br>36Y | Surgical<br>Emergency -<br>004 | 7 May 06  1621<br>Chi,Thomas, MD | 10927401 | Baso  (%): 0.4 (norm)<br>Baso(K/uL): 0.04 (norm)<br>Comment: automated differential confirmed on smear (norm)<br>Eos   (%): 1.0 (norm)<br>Eos (K/uL): 0.10 (norm)<br>HDW   (%): 2.45 (norm)<br>Hct   (%): 38.1 (abn)<br>Hgb (g/dL): 13.1 (abn)<br>LI: 2.05 (norm)<br>LUC   (%): 1.1 (norm)<br>LUC (K/uL): 0.11 (norm)<br>Lym (K/uL): 0.28 (abn)<br>Lymph (%): 2.9 (abn)<br>MCH   (pg): 33.5 (abn)<br>MCHC(g/dL): 34.5 (norm)<br>MCV   (fL): 97.0 (abn)<br>MPV   (fL): 8.4 (norm)<br>MPXI: 11.0 (abn)<br>Macro Flag: + (norm)<br>Mono  (%): 5.4 (norm)<br>Mono(K/uL): 0.53 (norm)<br>Neut  (%): 89.2 (abn)<br>Neut(K/uL): 8.79 (abn)<br>Plt (K/uL): 113 (abn)<br>Plt Est: slightly decreased (abn)<br>RBC (M/uL): 3.93 (abn)<br>RDW   (%): 14.4 (norm)<br>Remark: Spec #10927401: 7 May 06  1621 (norm)<br>Scan: reviewed (norm)<br>WBC (K/uL): 9.85 (norm) |

Waiters,General          3046806-11   05/07/06 1327  Whole Blood Calcium, Ion Result D/T: 05/07/06 by: Warner,Errol,

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 55 of 136 PageID #: 1670

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | 05/06/1970 36Y | Surgical Emergency - 004 | 7 May 06  1621 Chi,Thomas, MD | 10927401 | Calcium Ionized (mg/dL): 3.94 (abn) Comment: spec repeated kolli notified. (norm) Diagnosis: Trauma (norm) Remark: Spec #10927401: 7 May 06  1621 (norm) |
| Waiters,General | 3046806-11 05/06/1970 36Y | 05/07/06 1327 Surgical Emergency - 004 | Whole Blood Chloride 7 May 06  1621 Chi,Thomas, MD | 10927401 | Result D/T: 05/07/06 by: Warner,Errol, Cl (mmol/L): 111 (norm) Comment: spec repeated kolli notified. (norm) Diagnosis: Trauma (norm) Remark: Spec #10927401: 7 May 06  1621 (norm) |
| Waiters,General | 3046806-11 05/06/1970 36Y | 05/07/06 1327 Surgical Emergency - 004 | Whole Blood Glucose 7 May 06  1621 Chi,Thomas, MD | 10927401 | Result D/T: 05/07/06 by: Warner,Errol, Comment: spec repeated kolli notified. (norm) Diagnosis: Trauma (norm) Gluc (mg/dL): 106 (abn) Remark: Spec #10927401: 7 May 06  1621 (norm) |
| Waiters,General | 3046806-11 05/06/1970 36Y | 05/07/06 1327 Surgical Emergency - 004 | Whole Blood Lactate 7 May 06  1621 Chi,Thomas, MD | 10927401 | Result D/T: 05/07/06 by: Warner,Errol, Comment: spec repeated kolli notified. (norm) Diagnosis: Trauma (norm) Lactate (mmol/L): 3.8 (crit) Remark: Spec #10927401: 7 May 06  1621 (norm) |
| Waiters,General | 3046806-11 05/06/1970 36Y | 05/07/06 1327 Surgical Emergency - 004 | Whole Blood Potassium 7 May 06  1621 Chi,Thomas, MD | 10927401 | Result D/T: 05/07/06 by: Warner,Errol, Comment: spec repeated kolli notified. (norm) Diagnosis: Trauma (norm) K (mmol/L): 3.1 (abn) Remark: Spec #10927401: 7 May 06  1621 (norm) |
| Waiters,General | 3046806-11 05/06/1970 36Y | 05/07/06 1327 Surgical Emergency - 004 | Whole Blood Sodium 7 May 06  1621 Chi,Thomas, MD | 10927401 | Result D/T: 05/07/06 by: Warner,Errol, Comment: spec repeated kolli notified. (norm) Diagnosis: Trauma (norm) Na (mmol/L): 140 (norm) |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | Remark: Spec #10927401: 7 May 06  1621 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Activated Partial Thromb 7 May 06  1949 Azer,Emil, MD Angus,Lambros, MD | 10927614 | Result D/T: 05/07/06 by: Owate,Angelina, MT Anticoagulant: none (norm) Diagnosis: Fracture Orbit, Closed (norm) Remark: Spec #10927614: 7 May 06  1949 (norm) aPTT (sec) : 25.2 |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | CO-Oximetry 7 May 06  1949 Azer,Emil, MD Angus,Lambros, MD | 10927614 | Result D/T: 05/07/06 by: Warner,Errol, BE      (mmol/L): 2.3 (norm) COHb      (%): 2.2 (abn) Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Corr pCO2 (mmHg): 39.6 (norm) Corr pH: 7.435 (abn) Corr pO2  (mmHg): 99.3 (norm) Diagnosis: Fracture Orbit, Closed (norm) FIO2: 21% (norm) HCO3     (mmol/L): 26.5 (abn) MetHb       (%): 1.0 (abn) O2Hb        (%): 95.0 (norm) PCO2      (mmHg): 39.6 (norm) Remark: Spec #10927614: 7 May 06  1949 (norm) p50       (mmHg): 24.97 (norm) pH: 7.435 (abn) pO2       (mmHg): 99.3 (norm) sO2         (%): 98.1 (norm) tHb       (g/dL): 12.0 (norm) tO2       (vol%): 16.1 (abn) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Comprehensive Metabolic 7 May 06  1949 Azer,Emil, MD | 10927614 | Result D/T: 05/07/06 by: Young,Lee Jeanne, MT ALT      (U/L): 214 (abn) AST      (U/L): 523 (abn) |

27 Jun 2006  1228  Generated by Matthews,Melissa,                                    Page  16     of 41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0


| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | Angus,Lambros, MD | | Albumin  (g/dL): 3.9 (norm)<br>Alk Phos (U/L): 75 (norm)<br>Anion Gap: 18 (abn)<br>BUN      (mg/dL): 6 (abn)<br>BUN/Creat Ratio: 8 (norm)<br>CO2      (mmol/L): 22 (abn)<br>Ca       (mg/dL): 8.7 (norm)<br>Cl       (mmol/L): 104 (norm)<br>Creat    (mg/dL): 0.8 (norm)<br>Diagnosis: Fracture Orbit, Closed (norm)<br>Gluc     (mg/dL): 103 (abn)<br>Indices  (H): 17 (norm)<br>Indices  (I): 1 (norm)<br>Indices  (L): 5 (norm)<br>K        (mmol/L): 3.1 (abn)<br>Na       (mmol/L): 144 (norm)<br>P2: MG,PHOS (norm)<br>Remark: Dept #CC6530: 7 May 06  1949 (norm)<br>T Prot   (g/dL): 7.0 (norm)<br>T. Bili  (mg/dL): 1.3 (abn) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D3N35-A | Hemogram Auto Diff w/rfl<br>7 May 06  1949  10927614<br>Azer,Emil, MD<br>Angus,Lambros, MD | | Result D/T: 05/07/06 by: Owate,Angelina, MT<br>Baso  (%): 0.2 (norm)<br>Baso(K/uL): 0.02 (norm)<br>Eos   (%): 0.8 (norm)<br>Eos  (K/uL): 0.08 (norm)<br>HDW   (%): 2.42 (norm)<br>Hct   (%): 37.1 (abn)<br>Hgb (g/dL): 12.6 (abn)<br>LI: 2.44 (norm)<br>LUC   (%): 1.6 (norm)<br>LUC (K/uL): 0.16 (norm)<br>Lym (K/uL): 0.40 (abn) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 58 of 136 PageID #: 1673

**Kings County Hospital Center**
**Lab Results Listed for Patient**
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | Lymph (%): 14.1 (abn) |
| | | | | | MCH  (pg): 33.0 (abn) |
| | | | | | MCHC(g/dL): 34.1 (norm) |
| | | | | | MCV  (fL): 96.7 (abn) |
| | | | | | MPV  (fL): 8.5 (norm) |
| | | | | | MPXI: 10.7 (abn) |
| | | | | | Macro Flag: + (norm) |
| | | | | | Mono  (%): 5.9 (norm) |
| | | | | | Mono(K/uL): 0.58 (norm) |
| | | | | | Neut  (%): 77.4 (abn) |
| | | | | | Neut(K/uL): 8.60 (abn) |
| | | | | | Plt (K/uL): 113 (abn) |
| | | | | | RBC (M/uL): 3.84 (abn) |
| | | | | | RDW   (%): 14.2 (norm) |
| | | | | | Remark: Spec #10927614: 7 May 06  1949 (norm) |
| | | | | | WBC (K/uL): 9.84 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Magnesium Level 7 May 06  1949 Azer,Emil, MD Angus,Lambros, MD | 10927614 | Result D/T: 05/07/06 by: Young,Lee Jeanne, MT Diagnosis: Fracture Orbit, Closed (norm) Mg (mg/dL): 1.4 (abn) Remark: Spec #10927614: 7 May 06  1949 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Phosphate Level 7 May 06  1949 Azer,Emil, MD Angus,Lambros, MD | 10927614 | Result D/T: 05/07/06 by: Young,Lee Jeanne, MT Diagnosis: Fracture Orbit, Closed (norm) Phos (mg/dL): 3.4 (norm) Remark: Spec #10927614: 7 May 06  1949 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Prothrombin Time 7 May 06  1949 Azer,Emil, MD Angus,Lambros, MD | 10927614 | Result D/T: 05/07/06 by: Owate,Angelina, MT Anticoagulant: none (norm) D Fibrngn: 314.5 (norm) Diagnosis: Fracture Orbit, Closed (norm) PT  (sec): 14.4 (abn) Remark: Spec #10927614: 7 May 06  1949 (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD    Spec No. | Results |
|---|---|---|---|---|
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Whole Blood Calcium, Ion 7 May 06  1949  10927614 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Warner,Errol, Calcium Ionized (mg/dL): 4.13 (abn) Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Diagnosis: Fracture Orbit, Closed (norm) Remark: Dept #CC6530: 7 May 06  1949 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Whole Blood Chloride 7 May 06  1949  10927614 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Warner,Errol, Cl (mmol/L): 110 (norm) Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Diagnosis: Fracture Orbit, Closed (norm) Remark: Dept #CC6530: 7 May 06  1949 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Whole Blood Glucose 7 May 06  1949  10927614 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Warner,Errol, Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Diagnosis: Fracture Orbit, Closed (norm) Gluc (mg/dL): 106 (abn) Remark: Dept #CC6530: 7 May 06  1949 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Whole Blood Lactate 7 May 06  1949  10927614 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Warner,Errol, Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Diagnosis: Fracture Orbit, Closed (norm) Lactate (mmol/L): 3.0 (crit) Remark: Dept #CC6530: 7 May 06  1949 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Whole Blood Potassium 7 May 06  1949  10927614 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Warner,Errol, Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Diagnosis: Fracture Orbit, Closed (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| | | | | K (mmol/L): 3.0 (crit) Remark: Dept #CC6530: 7 May 06  1949 (norm) |
| Jaiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Whole Blood Sodium 7 May 06  1949  10927614 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Warner,Errol, Comment: MS BOOKER NOTIFIED @X7588-CONFIRMED (norm) Diagnosis: Fracture Orbit, Closed (norm) Na (mmol/L): 140 (norm) Remark: Dept #CC6530: 7 May 06  1949 (norm) |
| Jaiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Ethyl Alcohol Level 7 May 06  1952  10927620 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/07/06 by: Small,Imelda, MLT Diagnosis: Fracture Orbit, Closed (norm) Ethyl Alcohol (mg/dL): 158.55 (abn) Remark: Spec #10927620: 7 May 06  1952 (norm) |
| Jaiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Activated Partial Thromb 8 May 06  0119  10927863 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/08/06 by: Stuart,Verna N, MT Anticoagulant: none (norm) Diagnosis: Fracture Orbit, Closed (norm) Remark: Spec #10927863: 8 May 06  0119 (norm) aPTT (sec) : 24.0 (norm) |
| Jaiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Comprehensive Metabolic 8 May 06  0119  10927863 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/08/06 by: Han,Ming C, MT ALT     (U/L): 239 (abn) AST     (U/L): 626 (abn) Albumin (g/dL): 3.9 (norm) Alk Phos (U/L): 72 (norm) Anion Gap: 18 (abn) BUN     (mg/dL): 6 (abn) BUN/Creat Ratio: 9 (norm) CO2     (mmol/L): 21 (abn) Ca      (mg/dL): 9.6 (norm) Cl      (mmol/L): 102 (norm) Creat   (mg/dL): 0.7 (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| | | | | Diagnosis: Fracture Orbit, Closed (norm) |
| | | | | Gluc     (mg/dL): 85 (norm) |
| | | | | Indices  (H): 7 (norm) |
| | | | | Indices  (I): 1 (norm) |
| | | | | Indices  (L): 6 (norm) |
| | | | | K        (mmol/L): 3.4 (abn) |
| | | | | Na       (mmol/L): 141 (norm) |
| | | | | P2: MG,PHOS (norm) |
| | | | | Remark: Dept #CC6632: 8 May 06  0119 (norm) |
| | | | | T Prot   (g/dL): 7.3 (norm) |
| | | | | T. Bili  (mg/dL): 1.5 (abn) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Ethyl Alcohol Level 8 May 06  0119  10927863 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/08/06 by: Clarke,Sylvia, MT Diagnosis: Fracture Orbit, Closed (norm) Ethyl Alcohol (mg/dL): 28.09 (abn) Remark: Spec #10927863: 8 May 06  0119 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Hemogram Auto Diff w/rfl 8 May 06  0119  10927863 Azer,Emil, MD Angus,Lambros, MD | Result D/T: 05/08/06 by: Stuart,Verna N, MT Baso (%): 0.2 (norm) Baso(K/uL): 0.02 (norm) Comment: automated differential confirmed on smear (norm) Eos    (%): 1.0 (norm) Eos (K/uL): 0.07 (norm) HDW    (%): 2.39 (norm) Hct    (%): 33.3 (abn) Hgb (g/dL): 11.7 (abn) LI: 2.12 (norm) LUC    (%): 1.5 (norm) LUC (K/uL): 0.10 (norm) Lym (K/uL): 0.39 (abn) Lymph (%): 5.6 (abn) MCH  (pg): 32.6 (abn) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| tient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | MCHC(g/dL): 35.1 (norm) |
| | | | | | MCV   (fL): 92.8 (norm) |
| | | | | | MPV   (fL): 9.0 (norm) |
| | | | | | MPXI: 4.7 (norm) |
| | | | | | Mono  (%): 5.3 (norm) |
| | | | | | Mono(K/uL): 0.37 (norm) |
| | | | | | Neut  (%): 86.3 (abn) |
| | | | | | Neut(K/uL): 6.00 (norm) |
| | | | | | Plt (K/uL): 108 (abn) |
| | | | | | Plt Est: slightly decreased (abn) |
| | | | | | RBC (M/uL): 3.58 (abn) |
| | | | | | RBC Morph: teardrops (abn) |
| | | | | | RDW   (%): 14.4 (norm) |
| | | | | | Remark: Spec #10927863: 8 May 06  0119 (norm) |
| | | | | | Scan: reviewed (norm) |
| | | | | | WBC (K/uL): 6.95 (norm) |
| iters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Magnesium Level 8 May 06  0119 Azer,Emil, MD Angus,Lambros, MD | 10927863 | Result D/T: 05/08/06 by: Han,Ming C, MT Diagnosis: Fracture Orbit, Closed (norm) Mg (mg/dL): 1.7 (norm) Remark: Spec #10927863: 8 May 06  0119 (norm) |
| iters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Phosphate Level 8 May 06  0119 Azer,Emil, MD Angus,Lambros, MD | 10927863 | Result D/T: 05/08/06 by: Han,Ming C, MT Diagnosis: Fracture Orbit, Closed (norm) Phos (mg/dL): 2.7 (norm) Remark: Spec #10927863: 8 May 06  0119 (norm) |
| iters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D3N35-A | Prothrombin Time 8 May 06  0119 Azer,Emil, MD Angus,Lambros, MD | 10927863 | Result D/T: 05/08/06 by: Stuart,Verna N, MT Anticoagulant: none (norm) D Fibrngn: 402.8 (norm) Diagnosis: Fracture Orbit, Closed (norm) PT   (sec): 12.9 (norm) Remark: Spec #10927863: 8 May 06  0119 (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 63 of 136 PageID #: 1678

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 9 May 06  0851  10933188 Miller,Andrew, MD Angus,Lambros, MD | Result D/T: 05/09/06 by: Belizaire,Carmelle, MLT Anion Gap: 21 (abn) BUN    (mg/dL): 11 (norm) BUN/Creat Ratio : 14 (norm) CO2    (mmol/L): 20 (abn) Ca     (mg/dL): 9.8 (norm) Cl     (mmol/L): 101 (norm) Creat  (mg/dL): 0.8 (norm) D2: CO2,BUN,CA,GLU,CREA,Na,K,Cl,L,H,I (norm) Diagnosis: Trauma (norm) Glucose (mg/dL): 93 (norm) Indices(H): 13 (norm) Indices(I): 3 (norm) Indices(L): 6 (norm) K      (mmol/L): 3.6 (norm) Na     (mmol/L): 142 (norm) P2: MG,PHOS (norm) Remark: Spec #10933188: 9 May 06  0851 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Hemogram No Diff 9 May 06  0851  10933188 Miller,Andrew, MD Angus,Lambros, MD | Result D/T: 05/09/06 by: Baum,Rita, MLT CBC only: 452180734909 (norm) Comment: results confirmed by repeat analysis (norm) Diagnosis: Trauma (norm) HDW    (%): 2.29 (norm) Hct    (%): 34.6 (abn) Hgb (g/dL): 11.9 (abn) LI: 2.20 (norm) MCH    (pg): 34.0 (abn) MCHC(g/dL): 34.2 (norm) MCV    (fL): 99.3 (abn) MPV    (fL): 10.5 (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 64 of 136 PageID #: 1679

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | Plt (K/uL): 88 (abn) |
| | | | | | RBC (M/uL): 3.49 (abn) |
| | | | | | RDW   (%): 14.1 (norm) |
| | | | | | Remark: Spec #10933188: 9 May 06  0851 (norm) |
| | | | | | WBC (K/uL): 8.01 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Magnesium Level 9 May 06  0851 Miller,Andrew, MD Angus,Lambros, MD | 10933188 | Result D/T: 05/09/06 by: Belizaire,Carmelle, MLT Diagnosis: Trauma (norm) Mg (mg/dL): 1.8 (norm) Remark: Spec #10933188: 9 May 06  0851 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Phosphate Level 9 May 06  0851 Miller,Andrew, MD Angus,Lambros, MD | 10933188 | Result D/T: 05/09/06 by: Belizaire,Carmelle, MLT Diagnosis: Trauma (norm) Phos (mg/dL): 2.2 (abn) Remark: Spec #10933188: 9 May 06  0851 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 10 May 06  0855 Fonji,Bertrand, MD Angus,Lambros, MD | 10938206 | Result D/T: 05/10/06 by: Lee,Harvey D, MT Anion Gap: 19 (abn) BUN    (mg/dL): 14 (norm) BUN/Creat Ratio : 20 (norm) CO2    (mmol/L): 22 (abn) Ca     (mg/dL): 9.9 (norm) Cl     (mmol/L): 105 (norm) Creat  (mg/dL): 0.7 (norm) D2: CO2,BUN,CA,GLU,CREA,L,H,I (norm) Diagnosis: Trauma (norm) Glucose (mg/dL): 85 (norm) Indices(H): 1 (norm) Indices(I): 2 (norm) Indices(L): 6 (norm) K      (mmol/L): 2.9 (crit) Na     (mmol/L): 146 (abn) P2: MG,PHOS,Na,K,Cl (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,                    Page  24    of  41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0


| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|

Remark: Spec #10938206: 10 May 06  0855 (norm)

Waiters,General    3046806-12    05/07/06 1601    Hemogram Auto Diff w/rfl    Result D/T: 05/10/06 by: Gadsden,Lyndia, MT
                   05/06/1970     D2S21-A         10 May 06  0855 10938206   Baso  (%): 0.1 (norm)
                   36Y                            Fonji,Bertrand, MD          Baso(K/uL): 0.01 (norm)
                                                  Angus,Lambros, MD           CBC/Diff: #52180734909 (norm)
                                                                              Eos   (%): 0.4 (norm)
                                                                              Eos  (K/uL): 0.03 (norm)
                                                                              HDW   (%): 2.16 (abn)
                                                                              Hct   (%): 34.2 (abn)
                                                                              Hgb (g/dL): 11.7 (abn)
                                                                              LI: 2.29 (norm)
                                                                              LUC   (%): 2.8 (norm)
                                                                              LUC (K/uL): 0.19 (norm)
                                                                              Lg PLT Flag: + (norm)
                                                                              Lym (K/uL): 0.89 (norm)
                                                                              Lymph (%): 13.1 (abn)
                                                                              MCH   (pg): 33.4 (abn)
                                                                              MCHC(g/dL): 34.3 (norm)
                                                                              MCV   (fL): 97.6 (abn)
                                                                              MPV   (fL): 11.7 (norm)
                                                                              MPXI: 8.6 (norm)
                                                                              Macro Flag: + (norm)
                                                                              Mono  (%): 7.9 (norm)
                                                                              Mono(K/uL): 0.54 (norm)
                                                                              NRBC Flag: + (norm)
                                                                              Neut  (%): 75.6 (abn)
                                                                              Neut(K/uL): 5.14 (norm)
                                                                              Plt (K/uL): 76 (abn)
                                                                              RBC (M/uL): 3.51 (abn)
                                                                              RDW   (%): 13.4 (norm)
                                                                              Remark: Spec #10938206: 10 May 06  0855 (norm)
                                                                              WBC (K/uL): 6.80 (norm)

27 Jun 2006  1228  Generated by Matthews,Melissa,

## Kings County Hospital Center
## Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Magnesium Level 10 May 06  0855 10938206 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/10/06 by: Lee,Harvey D, MT Diagnosis: Trauma (norm) Mg (mg/dL): 2.3 (norm) Remark: Spec #10938206: 10 May 06  0855 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Phosphate Level 10 May 06  0855 10938206 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/10/06 by: Lee,Harvey D, MT Diagnosis: Trauma (norm) Phos (mg/dL): 3.5 (norm) Remark: Spec #10938206: 10 May 06  0855 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Comprehensive Metabolic 11 May 06  0909 10942883 Miller,Andrew, MD Angus,Lambros, MD | Result D/T: 05/11/06 by: Saint-Germain,Lola, MLT ALT    (U/L): 115 (abn) AST    (U/L): 127 (abn) Albumin (g/dL): 3.8 (norm) Alk Phos (U/L): 57 (norm) Anion Gap: 16 (abn) BUN     (mg/dL): 6 (abn) BUN/Creat Ratio: 9 (norm) CO2     (mmol/L): 23 (abn) Ca      (mg/dL): 9.3 (norm) Cl      (mmol/L): 102 (norm) Creat   (mg/dL): 0.7 (norm) D2: ALB,ALT,AST,CO2,TBIL,BUN,CA,GLU,CK,CREA,TP,ALP (norm) Diagnosis: Trauma (norm) Gluc    (mg/dL): 107 (abn) Indices (H): 0 (norm) Indices (I): 2 (norm) Indices (L): 7 (norm) K       (mmol/L): 2.8 (crit) Na      (mmol/L): 141 (norm) |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---------|--------------------|-----------------------|------------------------------|----------|---------|
| | | | | | P2: MG,PHOS,Na,K,Cl (norm) |
| | | | | | Remark: Dept #CC1218: 11 May 06  0909 (norm) |
| | | | | | T Prot   (g/dL): 6.7 (norm) |
| | | | | | T. Bili  (mg/dL): 2.0 (abn) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Creatine Kinase Total w/ 11 May 06  0909 10942883 Radianu,Valentina, MD Angus,Lambros, MD | | Result D/T: 05/11/06 by: Saint-Germain,Lola, MLT CK      (U/L): 2501 (crit) CK-MB   (ng/mL): 1.1 (norm) CK-MB Index (%): not calculated (norm) Diagnosis: Trauma (norm) Remark: Spec #10942883: 11 May 06  0909 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Hemogram Auto Diff w/rfl 11 May 06  0909 10942883 Miller,Andrew, MD Angus,Lambros, MD | | Result D/T: 05/11/06 by: Shustova,Sofia, MT Baso   (%): 0.2 (norm) Baso(K/uL): 0.01 (norm) CBC/Diff: 52180734909 (norm) Comment: trend checked (norm) Eos    (%): 0.8 (norm) Eos (K/uL): 0.05 (norm) HDW    (%): 2.18 (abn) Hct    (%): 31.3 (abn) Hgb (g/dL): 10.8 (abn) LI: 2.28 (norm) LUC    (%): 3.8 (norm) LUC (K/uL): 0.23 (norm) Lym (K/uL): 0.94 (norm) Lymph (%): 15.5 (abn) MCH    (pg): 33.5 (abn) MCHC(g/dL): 34.4 (norm) MCV    (fL): 97.5 (abn) MPV    (fL): 11.5 (norm) MPXI: 10.6 (abn) Macro Flag: + (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,                                      Page  27    of  41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | Mono  (%): 11.8 (abn) |
| | | | | | Mono (K/uL): 0.72 (norm) |
| | | | | | Neut  (%): 68.0 (abn) |
| | | | | | Neut (K/uL): 4.15 (norm) |
| | | | | | Plt (K/uL): 90 (abn) |
| | | | | | RBC (M/uL): 3.21 (abn) |
| | | | | | RDW    (%): 13.3 (norm) |
| | | | | | Remark: Spec #10942883: 11 May 06  0909 (norm) |
| | | | | | WBC (K/uL): 6.11 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Magnesium Level 11 May 06  0909 10942883 Miller,Andrew, MD Angus,Lambros, MD | | Result D/T: 05/11/06 by: Saint-Germain,Lola, MLT Diagnosis: Trauma (norm) Mg (mg/dL): 1.7 (norm) Remark: Spec #10942883: 11 May 06  0909 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Phosphate Level 11 May 06  0909 10942883 Miller,Andrew, MD Angus,Lambros, MD | | Result D/T: 05/11/06 by: Saint-Germain,Lola, MLT Diagnosis: Trauma (norm) Phos (mg/dL): 4.0 (norm) Remark: Spec #10942883: 11 May 06  0909 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Troponin I Level 11 May 06  0909 10942883 Radianu,Valentina, MD Angus,Lambros, MD | | Result D/T: 05/11/06 by: Donofrio,W J, MT Diagnosis: Trauma (norm) Remark: Spec #10942883: 11 May 06  0909 (norm) Troponin I (ng/mL): <0.02 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 12 May 06  0843 10947169 Sajed,Dana, MD Angus,Lambros, MD | | Result D/T: 05/12/06 by: Holder,Lynnette N, MT Anion Gap: 14 (norm) BUN    (mg/dL): 6 (abn) BUN/Creat Ratio : 10 (norm) CO2    (mmol/L): 25 (norm) Ca     (mg/dL): 9.3 (norm) Cl     (mmol/L): 100 (abn) Comment: K repeated,Ms.Thomas notified at |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 69 of 136 PageID #: 1684

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | ext.7156 (norm) |
| | | | | | Creat   (mg/dL): 0.6 (norm) |
| | | | | | D2: CO2,BUN,CA,GLU,CREA,L,H,I (norm) |
| | | | | | Diagnosis: Trauma (norm) |
| | | | | | Glucose (mg/dL): 93 (norm) |
| | | | | | Indices(H): 0 (norm) |
| | | | | | Indices(I): 2 (norm) |
| | | | | | Indices(L): 9 (norm) |
| | | | | | K        (mmol/L): 2.9 (crit) |
| | | | | | Na       (mmol/L): 139 (norm) |
| | | | | | P2: MG,PHOS,Na,K,Cl (norm) |
| | | | | | Remark: Spec #10947169: 12 May 06  0843 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Hemogram Auto Diff w/rfl 12 May 06  0843 10947169 Sajed,Dana, MD Angus,Lambros, MD | | Result D/T: 05/12/06 by: Caridad,Cecilio, MT Atyp Flag: + (norm) Baso (%): 0.2 (norm) Baso(K/uL): 0.01 (norm) CBC/Diff: #52180734909 (norm) Comment: trend checked (norm) Eos    (%): 0.7 (norm) Eos (K/uL): 0.04 (norm) HDW    (%): 2.28 (norm) Hct    (%): 30.8 (abn) Hgb (g/dL): 11.1 (abn) LI: 2.19 (norm) LUC    (%): 5.3 (abn) LUC (K/uL): 0.29 (norm) Lym (K/uL): 1.07 (norm) Lymph (%): 19.6 (abn) MCH    (pg): 34.8 (abn) MCHC(g/dL): 36.1 (abn) MCV    (fL): 96.4 (abn) MPV    (fL): 10.7 (norm) |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | MPXI: 10.9 (abn) |
| | | | | | Macro Flag: + (norm) |
| | | | | | Mono  (%): 15.0 (abn) |
| | | | | | Mono(K/uL): 0.81 (norm) |
| | | | | | Neut  (%): 59.3 (norm) |
| | | | | | Neut(K/uL): 3.22 (norm) |
| | | | | | Plt (K/uL): 108 (abn) |
| | | | | | RBC (M/uL): 3.19 (abn) |
| | | | | | RDW   (%): 13.3 (norm) |
| | | | | | Remark: Spec #10947169: 12 May 06  0843 (norm) |
| | | | | | WBC (K/uL): 5.43 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Magnesium Level 12 May 06  0843 Sajed,Dana, MD Angus,Lambros, MD | 10947169 | Result D/T: 05/12/06 by: Holder,Lynnette N, MT Comment: K repeated,Ms.Thomas notified at ext.7156 (norm) Diagnosis: Trauma (norm) Mg (mg/dL): 1.5 (norm) Remark: Spec #10947169: 12 May 06  0843 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Phosphate Level 12 May 06  0843 Sajed,Dana, MD Angus,Lambros, MD | 10947169 | Result D/T: 05/12/06 by: Holder,Lynnette N, MT Comment: K repeated,Ms.Thomas notified at ext.7156 (norm) Diagnosis: Trauma (norm) Phos (mg/dL): 3.3 (norm) Remark: Spec #10947169: 12 May 06  0843 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 13 May 06  0926 Sajed,Dana, MD Angus,Lambros, MD | 10951279 | Result D/T: 05/13/06 by: Young,Lee Jeanne, MT Anion Gap: 13 (norm) BUN    (mg/dL): 10 (norm) BUN/Creat Ratio : 14 (norm) CO2    (mmol/L): 26 (norm) Ca     (mg/dL): 9.5 (norm) Cl     (mmol/L): 104 (norm) |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| | | | | | Comment: icteric (norm) |
| | | | | | Creat    (mg/dL): 0.7 (norm) |
| | | | | | D1: CO2,BUN,CA,GLU,CREA,Na,K,Cl,L,H,I (norm) |
| | | | | | Diagnosis: Hypokalemia (norm) |
| | | | | | Glucose (mg/dL): 85 (norm) |
| | | | | | Indices(H): 0 (norm) |
| | | | | | Indices(I): 2 (norm) |
| | | | | | Indices(L): 6 (norm) |
| | | | | | K       (mmol/L): 3.2 (abn) |
| | | | | | Na      (mmol/L): 143 (norm) |
| | | | | | P1: MG,PHOS (norm) |
| | | | | | Remark: Spec #10951279: 13 May 06  0926 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Hemogram No Diff<br>13 May 06  0926<br>Sajed,Dana, MD<br>Angus,Lambros, MD | 10951279 | Result D/T: 05/13/06 by: Khan,Allah, MT<br>CBC only: #52184211784 (norm)<br>Diagnosis: Hypokalemia (norm)<br>HDW    (%): 2.38 (norm)<br>Hct    (%): 29.6 (abn)<br>Hgb (g/dL): 10.5 (abn)<br>LI: 2.28 (norm)<br>MCH    (pg): 34.1 (abn)<br>MCHC(g/dL): 35.4 (norm)<br>MCV    (fL): 96.4 (abn)<br>MPV    (fL): 10.2 (norm)<br>Plt (K/uL): 137 (norm)<br>RBC (M/uL): 3.07 (abn)<br>RDW   (%): 13.1 (norm)<br>Remark: Spec #10951279: 13 May 06  0926 (norm)<br>WBC (K/uL): 6.14 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Magnesium Level<br>13 May 06  0926<br>Sajed,Dana, MD | 10951279 | Result D/T: 05/13/06 by: Ly,David, MT<br>Diagnosis: Hypokalemia (norm)<br>Mg (mg/dL): 1.6 (norm) |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD   Spec No. | Results |
|---|---|---|---|---|
| | | | Angus,Lambros, MD | Remark: Spec #10951279: 13 May 06  0926 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Phosphate Level 13 May 06  0926 10951279 Sajed,Dana, MD Angus,Lambros, MD | Result D/T: 05/13/06 by: Ly,David, MT Diagnosis: Hypokalemia (norm) Phos (mg/dL): 3.8 (norm) Remark: Spec #10951279: 13 May 06  0926 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 13 May 06  2207 10952426 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/14/06 by: Chen,Yan, MT Anion Gap: 13 (norm) BUN     (mg/dL): 8 (norm) BUN/Creat Ratio : 11 (norm) CO2     (mmol/L): 25 (norm) Ca      (mg/dL): 9.4 (norm) Cl      (mmol/L): 107 (norm) Creat   (mg/dL): 0.7 (norm) D1: L,H,I (norm) D2: CO2,BUN,CA,GLU,CREA,Na,K,Cl,L,H,I (norm) Diagnosis: Hypokalemia (norm) Glucose (mg/dL): 87 (norm) Indices(H): 4 (norm) Indices(I): 1 (norm) Indices(L): 9 (norm) K       (mmol/L): 3.4 (abn) Na      (mmol/L): 145 (norm) P1: MG,PHOS (norm) Remark: Spec #10952426: 13 May 06  2207 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Magnesium Level 13 May 06  2207 10952426 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/14/06 by: Chen,Yan, MT Diagnosis: Hypokalemia (norm) Mg (mg/dL): 1.7 (norm) Remark: Spec #10952426: 13 May 06  2207 (norm) |
| Waiters,General | 3046806-12 | 05/07/06 1601 | Phosphate Level | Result D/T: 05/14/06 by: Chen,Yan, MT |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 73 of 136 PageID #: 1688

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD   Spec No. | Results |
|---|---|---|---|---|
| | 05/06/1970 36Y | D2S21-A | 13 May 06  2207 10952426 Fonji,Bertrand, MD Angus,Lambros, MD | Diagnosis: Hypokalemia (norm) Phos (mg/dL): 4.5 (norm) Remark: Spec #10952426: 13 May 06  2207 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 14 May 06  0905 10952694 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/14/06 by: Ly,David, MT Anion Gap: 12 (norm) BUN     (mg/dL): 7 (abn) BUN/Creat Ratio : 10 (norm) CO2     (mmol/L): 26 (norm) Ca      (mg/dL): 9.3 (norm) Cl      (mmol/L): 106 (norm) Creat   (mg/dL): 0.7 (norm) D1: CO2,BUN,CA,GLU,CREA,L,H,I (norm) Diagnosis: Hypokalemia (norm) Glucose (mg/dL): 94 (norm) Indices(H): 0 (norm) Indices(I): 1 (norm) Indices(L): 6 (norm) K       (mmol/L): 3.1 (abn) Na      (mmol/L): 144 (norm) P1: MG,PHOS,Na,K,Cl (norm) Remark: Spec #10952694: 14 May 06  0905 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Magnesium Level 14 May 06  0905 10952694 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/14/06 by: Ly,David, MT Diagnosis: Hypokalemia (norm) Mg (mg/dL): 1.7 (norm) Remark: Spec #10952694: 14 May 06  0905 (norm) |
| Waiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Phosphate Level 14 May 06  0905 10952694 Fonji,Bertrand, MD Angus,Lambros, MD | Result D/T: 05/14/06 by: Ly,David, MT Diagnosis: Hypokalemia (norm) Phos (mg/dL): 4.7 (abn) Remark: Spec #10952694: 14 May 06  0905 (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|
| aiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Basic Metabolic Panel 15 May 06  0841 Miller,Andrew, MD Angus,Lambros, MD | 10953805 | Result D/T: 05/15/06 by: Belizaire,Carmelle, MLT Anion Gap: 10 (norm) BUN     (mg/dL): 6 (abn) BUN/Creat Ratio : 9 (norm) CO2     (mmol/L): 26 (norm) Ca      (mg/dL): 9.2 (norm) Cl      (mmol/L): 104 (norm) Creat   (mg/dL): 0.7 (norm) D1: CO2,BUN,CA,GLU,CREA,Na,K,Cl,L,H,I (norm) Diagnosis: Trauma (norm) Glucose (mg/dL): 109 (abn) Indices(H): 1 (norm) Indices(I): 1 (norm) Indices(L): 5 (norm) K       (mmol/L): 3.6 (norm) Na      (mmol/L): 140 (norm) P1: MG,PHOS (norm) Remark: Spec #10953805: 15 May 06  0841 (norm) |
| aiters,General | 3046806-12 05/06/1970 36Y | 05/07/06 1601 D2S21-A | Hemogram No Diff 15 May 06  0841 Miller,Andrew, MD Angus,Lambros, MD | 10953805 | Result D/T: 05/15/06 by: Shustova,Sofia, MT CBC only: 52185912801 (norm) Diagnosis: Trauma (norm) HDW     (%): 2.51 (norm) Hct     (%): 31.9 (abn) Hgb (g/dL): 10.5 (abn) LI: 2.32 (norm) MCH     (pg): 32.3 (abn) MCHC(g/dL): 33.0 (norm) MCV     (fL): 97.7 (abn) MPV     (fL): 8.5 (norm) Plt (K/uL): 266 (norm) RBC (M/uL): 3.27 (abn) RDW     (%): 13.7 (norm) |

27 Jun 2006  1228  Generated by Matthews,Melissa,                          Page  34      of  41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006   0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---------|----------------------|--------------------------|--------------------------------|----------|---------|
| | | | | | Remark: Spec #10953805: 15 May 06  0841 (norm) |
| | | | | | WBC (K/uL): 5.05 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Magnesium Level<br>15 May 06  0841<br>Miller,Andrew, MD<br>Angus,Lambros, MD | 10953805 | Result D/T: 05/15/06 by: Belizaire,Carmelle, MLT<br>Diagnosis: Trauma (norm)<br>Mg (mg/dL) : 1.7 (norm)<br>Remark: Spec #10953805: 15 May 06  0841 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Phosphate Level<br>15 May 06  0841<br>Miller,Andrew, MD<br>Angus,Lambros, MD | 10953805 | Result D/T: 05/15/06 by: Belizaire,Carmelle, MLT<br>Diagnosis: Trauma (norm)<br>Phos (mg/dL) : 3.8 (norm)<br>Remark: Spec #10953805: 15 May 06  0841 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Basic Metabolic Panel<br>16 May 06  0824<br>Sajed,Dana, MD<br>Angus,Lambros, MD | 10958392 | Result D/T: 05/16/06 by: Brits,Margarita, MT<br>Anion Gap: 9 (norm)<br>BUN       (mg/dL): 10 (norm)<br>BUN/Creat Ratio : 13 (norm)<br>CO2       (mmol/L): 25 (norm)<br>Ca        (mg/dL): 8.7 (norm)<br>Cl        (mmol/L): 104 (norm)<br>Creat     (mg/dL): 0.8 (norm)<br>D2: CO2,BUN,CA,GLU,CREA,L,H,I (norm)<br>Diagnosis: Trauma (norm)<br>Glucose (mg/dL): 82 (norm)<br>Indices(H): 0 (norm)<br>Indices(I): 1 (norm)<br>Indices(L): 7 (norm)<br>K         (mmol/L): 4.3 (norm)<br>Na        (mmol/L): 138 (norm)<br>P2: MG,PHOS,Na,K,Cl (norm)<br>Remark: Spec #10958392: 16 May 06  0824 (norm) |
| Waiters,General | 3046806-12 | 05/07/06 1601 | Hemogram Auto Diff w/rfl | | Result D/T: 05/16/06 by: Caridad,Cecilio, MT |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results |
|---|---|---|---|---|---|

|  | 05/06/1970<br>36Y | D2S21-A | 16 May 06  0824<br>Sajed,Dana, MD<br>Angus,Lambros, MD | 10958392 | Atyp Flag: + (norm)<br>Baso  (%): 0.2 (norm)<br>Baso(K/uL): 0.01 (norm)<br>CBC/Diff: 452185912801 (norm)<br>Eos   (%): 1.0 (norm)<br>Eos  (K/uL): 0.04 (norm)<br>HDW   (%): 2.34 (norm)<br>Hct   (%): 30.2 (abn)<br>Hgb (g/dL): 10.0 (abn)<br>LI: 2.24 (norm)<br>LUC   (%): 5.0 (abn)<br>LUC  (K/uL): 0.22 (norm)<br>Lym (K/uL): 1.22 (norm)<br>Lymph (%): 27.4 (norm)<br>MCH   (pg): 32.9 (abn)<br>MCHC(g/dL): 33.1 (norm)<br>MCV   (fL): 99.2 (abn)<br>MPV   (fL): 9.7 (norm)<br>MPXI: 6.3 (norm)<br>Macro Flag: + (norm)<br>Mono  (%): 16.0 (abn)<br>Mono(K/uL): 0.71 (norm)<br>NRBC Flag: + (norm)<br>Neut  (%): 50.4 (norm)<br>Neut(K/uL): 2.24 (norm)<br>Plt (K/uL): 279 (norm)<br>RBC (M/uL): 3.04 (abn)<br>RDW   (%): 13.5 (norm)<br>Remark: Spec #10958392: 16 May 06  0824 (norm)<br>WBC (K/uL): 4.45 (abn) |
| Waiters,General | 3046806-12<br>05/06/1970 | 05/07/06 1601<br>D2S21-A | Magnesium Level<br>16 May 06  0824 | 10958392 | Result D/T: 05/16/06 by: Brits,Margarita, MT<br>Diagnosis: Trauma (norm) |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 77 of 136 PageID #: 1692

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD    Spec No. | Results |
|---|---|---|---|---|
| | 36Y | | Sajed,Dana, MD<br>Angus,Lambros, MD | Mg (mg/dL): 2.0 (norm)<br>Remark: Spec #10958392: 16 May 06  0824 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Phosphate Level<br>16 May 06  0824 10958392<br>Sajed,Dana, MD<br>Angus,Lambros, MD | Result D/T: 05/16/06 by: Brits,Margarita, MT<br>Diagnosis: Trauma (norm)<br>Phos (mg/dL): 4.2 (norm)<br>Remark: Spec #10958392: 16 May 06  0824 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Basic Metabolic Panel<br>17 May 06  0924 10963122<br>Fonji,Bertrand, MD<br>Angus,Lambros, MD | Result D/T: 05/17/06 by: Wong,Keung, MT<br>Anion Gap: 9 (norm)<br>BUN      (mg/dL): 8 (norm)<br>BUN/Creat Ratio : 11 (norm)<br>CO2      (mmol/L): 27 (norm)<br>Ca       (mg/dL): 9.4 (norm)<br>Cl       (mmol/L): 101 (norm)<br>Creat    (mg/dL): 0.7 (norm)<br>D2: CO2,BUN,CA,GLU,CREA,Na,K,Cl,L,H,I (norm)<br>Diagnosis: Trauma (norm)<br>Glucose (mg/dL): 101 (abn)<br>Indices(H): 1 (norm)<br>Indices(I): 1 (norm)<br>Indices(L): 10 (norm)<br>K        (mmol/L): 4.3 (norm)<br>Na       (mmol/L): 137 (norm)<br>P2: MG,PHOS (norm)<br>Remark: Spec #10963122: 17 May 06  0924 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Magnesium Level<br>17 May 06  0924 10963122<br>Fonji,Bertrand, MD<br>Angus,Lambros, MD | Result D/T: 05/17/06 by: Wong,Keung, MT<br>Diagnosis: Trauma (norm)<br>Mg (mg/dL): 1.9 (norm)<br>Remark: Spec #10963122: 17 May 06  0924 (norm) |
| Waiters,General | 3046806-12 | 05/07/06 1601 | Phosphate Level | Result D/T: 05/17/06 by: Wong,Keung, MT |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD    Spec No. | Results |
|---|---|---|---|---|
| | 36Y | | Sajed,Dana, MD<br>Angus,Lambros, MD | Mg (mg/dL): 2.0 (norm)<br>Remark: Spec #10958392: 16 May 06  0824 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Phosphate Level<br>16 May 06  0824 10958392<br>Sajed,Dana, MD<br>Angus,Lambros, MD | Result D/T: 05/16/06 by: Brits,Margarita, MT<br>Diagnosis: Trauma (norm)<br>Phos (mg/dL): 4.2 (norm)<br>Remark: Spec #10958392: 16 May 06  0824 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Basic Metabolic Panel<br>17 May 06  0924 10963122<br>Fonji,Bertrand, MD<br>Angus,Lambros, MD | Result D/T: 05/17/06 by: Wong,Keung, MT<br>Anion Gap: 9 (norm)<br>BUN     (mg/dL): 8 (norm)<br>BUN/Creat Ratio : 11 (norm)<br>CO2     (mmol/L): 27 (norm)<br>Ca      (mg/dL): 9.4 (norm)<br>Cl      (mmol/L): 101 (norm)<br>Creat   (mg/dL): 0.7 (norm)<br>D2: CO2,BUN,CA,GLU,CREA,Na,K,Cl,L,H,I (norm)<br>Diagnosis: Trauma (norm)<br>Glucose (mg/dL): 101 (abn)<br>Indices(H): 1 (norm)<br>Indices(I): 1 (norm)<br>Indices(L): 10 (norm)<br>K       (mmol/L): 4.3 (norm)<br>Na      (mmol/L): 137 (norm)<br>P2: MG,PHOS (norm)<br>Remark: Spec #10963122: 17 May 06  0924 (norm) |
| Waiters,General | 3046806-12<br>05/06/1970<br>36Y | 05/07/06 1601<br>D2S21-A | Magnesium Level<br>17 May 06  0924 10963122<br>Fonji,Bertrand, MD<br>Angus,Lambros, MD | Result D/T: 05/17/06 by: Wong,Keung, MT<br>Diagnosis: Trauma (norm)<br>Mg (mg/dL): 1.9 (norm)<br>Remark: Spec #10963122: 17 May 06  0924 (norm) |
| Waiters,General | 3046806-12 | 05/07/06 1601 | Phosphate Level | Result D/T: 05/17/06 by: Wong,Keung, MT |

27 Jun 2006  1228  Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. Results |
|---|---|---|---|---|
| | 05/06/1970<br>36Y | D2S21-A | 17 May 06  0924 10963122<br>Fonji,Bertrand, MD<br>Angus,Lambros, MD | Diagnosis: Trauma (norm)<br>Phos (mg/dL): 4.0 (norm)<br>Remark: Spec #10963122: 17 May 06  0924 (norm) |

| | | Result | Normal | Abn/Crit | Abnormal | Critical | Total |
|---|---|---|---|---|---|---|---|
| Total Visits: | 98 | ALT        (U/L) | 0 | 4 | 4 | 0 | 4 |
| Total Events: | 99 | AST        (U/L) | 0 | 4 | 4 | 0 | 4 |
| | | Albumin   (g/dL) | 4 | 0 | 0 | 0 | 4 |
| Total Normal Results: | 714 | Alk Phos (U/L) | 4 | 0 | 0 | 0 | 4 |
| Total Abn/Crit Results: | 238 | Amorph material | 0 | 1 | 1 | 0 | 1 |
| Total Abnormal Results: | 224 | Amylase (U/L) | 1 | 0 | 0 | 0 | 1 |
| Total Critical Results: | 14 | Anion Gap | 7 | 6 | 6 | 0 | 13 |
| | -------- | Anticoagulant | 6 | 0 | 0 | 0 | 6 |
| Total Results: | 952 | Atyp Flag | 3 | 0 | 0 | 0 | 3 |
| | | BE        (mmol/L) | 1 | 0 | 0 | 0 | 1 |
| | | BE        (mmol/L) | 2 | 3 | 3 | 0 | 5 |
| | | BUN        (mg/dL) | 1 | 3 | 3 | 0 | 4 |
| | | BUN        (mg/dL) | 6 | 3 | 3 | 0 | 9 |
| | | BUN/Creat Ratio | 3 | 1 | 1 | 0 | 4 |
| | | BUN/Creat Ratio | 9 | 0 | 0 | 0 | 9 |
| | | Bacteria(UF)/hpf | 1 | 0 | 0 | 0 | 1 |
| | | Barbit    (mAbs) | 1 | 0 | 0 | 0 | 1 |
| | | Barbiturates | 1 | 0 | 0 | 0 | 1 |
| | | Baso  (%) | 8 | 1 | 1 | 0 | 9 |
| | | Baso(K/uL) | 9 | 0 | 0 | 0 | 9 |
| | | Benzodiaz (mAbs) | 1 | 0 | 0 | 0 | 1 |
| | | Benzodiazepines | 1 | 0 | 0 | 0 | 1 |
| | | Bilirubin | 1 | 0 | 0 | 0 | 1 |
| | | CBC only | 3 | 0 | 0 | 0 | 3 |
| | | CBC/Diff | 4 | 0 | 0 | 0 | 4 |
| | | CK          (U/L) | 0 | 1 | 0 | 1 | 1 |
| | | CK-MB    (ng/mL) | 1 | 0 | 0 | 0 | 1 |

27 Jun 2006   1228   Generated by Matthews,Melissa,

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| atient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results | | | |
|---|---|---|---|---|---|---|---|---|
| | | CK-MB Index (%) | | 1 | 0 | 0 | 0 | 1 |
| | | CO2      (mmol/L) | | 0 | 4 | 4 | 0 | 4 |
| | | CO2      (mmol/L) | | 7 | 2 | 2 | 0 | 9 |
| | | COHb       (%) | | 1 | 0 | 0 | 0 | 1 |
| | | COHb       (%) | | 0 | 5 | 5 | 0 | 5 |
| | | Ca        (mg/dL) | | 4 | 0 | 0 | 0 | 4 |
| | | Ca      (mg/dL) | | 9 | 0 | 0 | 0 | 9 |
| | | Calcium Ionized (mg/dL) | | 0 | 5 | 4 | 1 | 5 |
| | | Cast(UF)/lpf | | 1 | 0 | 0 | 0 | 1 |
| | | Casts   (/lpf) | | 1 | 0 | 0 | 0 | 1 |
| | | Cl       (mmol/L) | | 3 | 1 | 1 | 0 | 4 |
| | | Cl      (mmol/L) | | 8 | 1 | 1 | 0 | 9 |
| | | Cl (mmol/L) | | 5 | 0 | 0 | 0 | 5 |
| | | Clarity | | 1 | 0 | 0 | 0 | 1 |
| | | Cocaine    (mAbs) | | 1 | 0 | 0 | 0 | 1 |
| | | Cocaine/Metab | | 1 | 0 | 0 | 0 | 1 |
| | | Color | | 1 | 0 | 0 | 0 | 1 |
| | | Comment | | 49 | 0 | 0 | 0 | 49 |
| | | Corr pCO2 (mmHg) | | 3 | 3 | 3 | 0 | 6 |
| | | Corr pH | | 2 | 4 | 4 | 0 | 6 |
| | | Corr pO2  (mmHg) | | 2 | 4 | 4 | 0 | 6 |
| | | Creat    (mg/dL) | | 3 | 1 | 1 | 0 | 4 |
| | | Creat   (mg/dL) | | 9 | 0 | 0 | 0 | 9 |
| | | Crystals | | 1 | 0 | 0 | 0 | 1 |
| | | D Fibrngn | | 3 | 0 | 0 | 0 | 3 |
| | | D1 | | 5 | 0 | 0 | 0 | 5 |
| | | D2 | | 7 | 0 | 0 | 0 | 7 |
| | | Diagnosis | | 89 | 0 | 0 | 0 | 89 |
| | | Eos   (%) | | 9 | 0 | 0 | 0 | 9 |
| | | Eos (K/uL) | | 9 | 0 | 0 | 0 | 9 |
| | | Epith Cell(UF)/hpf | | 1 | 0 | 0 | 0 | 1 |
| | | Ethyl Alcohol (mg/dL) | | 0 | 3 | 2 | 1 | 3 |
| | | FIO2 | | 6 | 0 | 0 | 0 | 6 |

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. Results | | | |
|---|---|---|---|---|---|---|---|
| | | Flagging (UF) | | 1 | 0 | 0 | 0 | 1 |
| | | Gluc      (mg/dL) | | 1 | 3 | 3 | 0 | 4 |
| | | Gluc (mg/dL) | | 1 | 4 | 4 | 0 | 5 |
| | | Glucose | | 1 | 0 | 0 | 0 | 1 |
| | | Glucose (mg/dL) | | 7 | 2 | 2 | 0 | 9 |
| | | HCO3      (mmol/L) | | 1 | 0 | 0 | 0 | 1 |
| | | HCO3      (mmol/L) | | 1 | 4 | 4 | 0 | 5 |
| | | HDW     (%) | | 10 | 2 | 2 | 0 | 12 |
| | | Hct     (%) | | 1 | 11 | 11 | 0 | 12 |
| | | Hemoglobin | | 0 | 1 | 1 | 0 | 1 |
| | | Hgb (g/dL) | | 1 | 11 | 11 | 0 | 12 |
| | | Indices   (H) | | 3 | 0 | 0 | 0 | 3 |
| | | Indices   (I) | | 3 | 0 | 0 | 0 | 3 |
| | | Indices   (L) | | 3 | 0 | 0 | 0 | 3 |
| | | Indices(H) | | 9 | 0 | 0 | 0 | 9 |
| | | Indices(I) | | 9 | 0 | 0 | 0 | 9 |
| | | Indices(L) | | 9 | 0 | 0 | 0 | 9 |
| | | K          (mmol/L) | | 0 | 4 | 2 | 2 | 4 |
| | | K          (mmol/L) | | 4 | 5 | 3 | 2 | 9 |
| | | K (mmol/L) | | 1 | 4 | 2 | 2 | 5 |
| | | Ketones | | 0 | 1 | 1 | 0 | 1 |
| | | LI | | 12 | 0 | 0 | 0 | 12 |
| | | LUC   (%) | | 6 | 3 | 3 | 0 | 9 |
| | | LUC (K/uL) | | 9 | 0 | 0 | 0 | 9 |
| | | Lactate (mmol/L) | | 0 | 5 | 0 | 5 | 5 |
| | | Leuk Esterase | | 1 | 0 | 0 | 0 | 1 |
| | | Lg PLT Flag | | 1 | 0 | 0 | 0 | 1 |
| | | Lym (K/uL) | | 5 | 4 | 4 | 0 | 9 |
| | | Lymph (%) | | 1 | 8 | 8 | 0 | 9 |
| | | MCH   (pg) | | 0 | 12 | 12 | 0 | 12 |
| | | MCHC(g/dL) | | 11 | 1 | 1 | 0 | 12 |
| | | MCV  (fL) | | 1 | 11 | 11 | 0 | 12 |
| | | MPV  (fL) | | 12 | 0 | 0 | 0 | 12 |

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 82 of 136 PageID #: 1697

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./ DOB/Age | Visit Dt-Tm/ Location | Proc/Evt Time Orderer/Pt MD | Spec No. | Results | | | |
|---|---|---|---|---|---|---|---|---|
| | | MPXI | | 4 | 5 | 5 | 0 | 9 |
| | | Macro Flag | | 8 | 0 | 0 | 0 | 8 |
| | | Manual Micro Exam | | 1 | 0 | 0 | 0 | 1 |
| | | MetHb        (%) | | 1 | 0 | 0 | 0 | 1 |
| | | MetHb        (%) | | 0 | 5 | 5 | 0 | 5 |
| | | Methadone | | 1 | 0 | 0 | 0 | 1 |
| | | Methadone (mAbs) | | 1 | 0 | 0 | 0 | 1 |
| | | Mg (mg/dL) | | 11 | 1 | 1 | 0 | 12 |
| | | Micro Exam | | 1 | 0 | 0 | 0 | 1 |
| | | Mono  (%) | | 6 | 3 | 3 | 0 | 9 |
| | | Mono(K/uL) | | 9 | 0 | 0 | 0 | 9 |
| | | Mucous threads | | 0 | 1 | 1 | 0 | 1 |
| | | NRBC Flag | | 3 | 0 | 0 | 0 | 3 |
| | | Na       (mmol/L) | | 4 | 0 | 0 | 0 | 4 |
| | | Na       (mmol/L) | | 8 | 1 | 1 | 0 | 9 |
| | | Na (mmol/L) | | 2 | 3 | 3 | 0 | 5 |
| | | Neut  (%) | | 2 | 7 | 7 | 0 | 9 |
| | | Neut(K/uL) | | 7 | 2 | 2 | 0 | 9 |
| | | Nitrite | | 1 | 0 | 0 | 0 | 1 |
| | | O2Hb         (%) | | 1 | 0 | 0 | 0 | 1 |
| | | O2Hb         (%) | | 4 | 1 | 1 | 0 | 5 |
| | | Opiates | | 1 | 0 | 0 | 0 | 1 |
| | | Opiates    (mAbs) | | 1 | 0 | 0 | 0 | 1 |
| | | P1 | | 5 | 0 | 0 | 0 | 5 |
| | | P2 | | 8 | 0 | 0 | 0 | 8 |
| | | PCO2        (mmHg) | | 1 | 0 | 0 | 0 | 1 |
| | | PCO2        (mmHg) | | 2 | 3 | 3 | 0 | 5 |
| | | PLT CLMP | | 1 | 0 | 0 | 0 | 1 |
| | | PT   (sec) | | 2 | 1 | 1 | 0 | 3 |
| | | Phos (mg/dL) | | 10 | 2 | 2 | 0 | 12 |
| | | Plt (K/uL) | | 5 | 7 | 7 | 0 | 12 |
| | | Plt Est | | 1 | 2 | 2 | 0 | 3 |
| | | Prot Confirm | | 0 | 1 | 1 | 0 | 1 |

27 Jun 2006  1228  Generated by Matthews,Melissa,                    Page  41      of 41

Kings County Hospital Center
Lab Results Listed for Patient
7 May 2006  0000 to 17 May 2006  2359
for the chart review group(s): L/All Laboratory No  for the earliest/latest event times of 30,0

| Patient | Visit No./<br>DOB/Age | Visit Dt-Tm/<br>Location | Proc/Evt Time<br>Orderer/Pt MD | Spec No. | Results | | | |
|---|---|---|---|---|---|---|---|---|
| | | Protein | | 0 | 1 | 1 | 0 | 1 |
| | | RBC      (/hpf) | | 0 | 1 | 1 | 0 | 1 |
| | | RBC (M/uL) | | 1 | 11 | 11 | 0 | 12 |
| | | RBC Morph | | 0 | 1 | 1 | 0 | 1 |
| | | RBC(UF)/hpf | | 1 | 0 | 0 | 0 | 1 |
| | | RDW      (%) | | 12 | 0 | 0 | 0 | 12 |
| | | Remark | | 99 | 0 | 0 | 0 | 99 |
| | | Scan | | 3 | 0 | 0 | 0 | 3 |
| | | Spec Grav | | 1 | 0 | 0 | 0 | 1 |
| | | T Prot   (g/dL) | | 4 | 0 | 0 | 0 | 4 |
| | | T. Bili  (mg/dL) | | 1 | 3 | 3 | 0 | 4 |
| | | Troponin I (ng/mL) | | 1 | 0 | 0 | 0 | 1 |
| | | Urobilinogen | | 1 | 0 | 0 | 0 | 1 |
| | | WBC (K/uL) | | 11 | 1 | 1 | 0 | 12 |
| | | WBC(UF)/hpf | | 1 | 0 | 0 | 0 | 1 |
| | | aPTT (sec) | | 3 | 0 | 0 | 0 | 3 |
| | | p50      (mmHg) | | 1 | 0 | 0 | 0 | 1 |
| | | p50      (mmHg) | | 3 | 2 | 2 | 0 | 5 |
| | | pH | | 3 | 4 | 4 | 0 | 7 |
| | | pO2      (mmHg) | | 1 | 0 | 0 | 0 | 1 |
| | | pO2      (mmHg) | | 1 | 4 | 4 | 0 | 5 |
| | | sO2      (%) | | 1 | 0 | 0 | 0 | 1 |
| | | sO2      (%) | | 3 | 2 | 2 | 0 | 5 |
| | | tHb      (g/dL) | | 1 | 0 | 0 | 0 | 1 |
| | | tHb      (g/dL) | | 3 | 2 | 2 | 0 | 5 |
| | | tO2      (vol%) | | 1 | 0 | 0 | 0 | 1 |
| | | tO2      (vol%) | | 0 | 5 | 5 | 0 | 5 |

KINGS COUNTY HOSPITAL CENTER
BROOKLYN N.Y. 11203

DATE _____  WARD/LOCATION _____
MR # 230 8102   D.O.B. _____
NAME Waiters, General   SEX: ☐ M  ☐ F
ADMISSION # _____   MEDICARE ☐ YES  ☐ NO

IN LEFT COLUMN, ENTER TITLE, DATE & TIME OF NOTATION.

**PATIENT'S PROGRESS /COMMUNICATION RECORD**

DO NOT USE THESE ABBREVIATIONS:  KCHC prohibits use of the following abbreviations in any form of documentation or orders.

**QD or q.d.   µg   Qn   IU   1.0 mg (trailing zero)   .5 (naked decimal)**
**QOD or q.o.d   Ms, MgSO4 or MSO4   U or u   T.I.W.   A.S., A.D. or A.U.**

Protect Patient Safety: Find an un-approved abbreviation. Immediately contact the author to clarify/correct the abbreviation. Do not assume that you know the meaning.

SICU ADMISSION NOTE

TITLE 5/7/2006  DATE/TIME 5pm

36 year old male s/p assault/fall in. sustaining trauma to right infraorbital region. + LOC, + AOB. Pt oriented X1 and verbally responsive. GCS: 6/4/3

Pt appears to have ruptured globe on admission.

Vitals

PMHx: denies

Allergies: denies

Meds: unk

Meds:   Labs:

| 9.8 | 12.6 / 37.1 \ 113 | 144 | 104 | 6 | 103 | 7.0 | 52s | 75 |
| | | 3.1 | 22 | 0.8 | | 39 | 214 | 1.3 |

1.4

Ca: 8.7  Mg: 3.4  Phos: 3.4  → replaced.

14.4 / 1.4 \ 15.2

ABG (PA) 7.435/35.6 /96.3 /98% / 2c.5 / +23

Vent:

U tox (−)   Etoh: 158.55

Radiology:

CXR: no acute pulm process

Physical Exam:

Gen: alert , oriented x 1

HEENT: massive R periorbital edema, + blood in mouth, nose, massive labial edema

Chest: cta b/l, breath sounds equal

CVS: rrr

Abdo: soft,

Ext: FROM, 2+ pulses x 4

CNS: unable to assess due to intoxicated state

A Final Discharge Note Must Be Entered on This Sheet. Sign and Date Every Entry.

601-013 Rev. 12/92 5/05 10/05
HHC 2478 (Oct 05)

CTD 42

KINGS COUNTY HOSPITAL CENTER
BROOKLYN N.Y. 11203

| DATE | WARD/LOCATION |
| MR # | D.O.B. |
| NAME | SEX: ☐ M ☐ F |
| ADMISSION # | |
| | MEDICARE ☐ YES |
| | ☐ NO |

IN LEFT COLUMN, ENTER TITLE, DATE & TIME OF NOTATION.

PATIENT'S PROGRESS /COMMUNICATION RECORD

DO NOT USE THESE ABBREVIATIONS: KCHC prohibits use of the following abbreviations in any form of documentation or orders.

| QD or q.d. | µg | Qn | IU | 1.0 mg (trailing zero) | .5 (naked decimal) |
| QOD or q.o.d | Ms, MgSO4 or MSO4 | U or u | T.I.W. | A.S., A.D. or A.U. |

*Protect Patient Safety:* Find an un-approved abbreviation. Immediately contact the author to clarify/correct the abbreviation. Do not assume you know the meaning.

| TITLE | DATE/TIME | Observations and Opinions of Visitings, Consultants and House Staff. A Final Discharge Note Must Be Entered on This Sheet. Sign and Date Every Entry. |
|---|---|---|
| MD | 5/14/06 | Trauma |
| | 0925 | Pt reportedly had some hallucinations. Yest to was placed back on Librium & Ativan. Tolerating PO diet. |
| | | c/o pain in ① arm. |
| | | 98  150-163/87-90   88-98 |
| | | PE: ⊘. facial swelling unchanged   S.S, RR ⊘⊘ |
| | | CTA ②   Abd: S/NT, ND @ BS   Arm Ecchymosis |
| | | c̄ Puncture Wounds. |
| | | A/P: 36 y.o.♂ s/p Attacked Family Members, s/p being beaten & thrown through Aquarium. |
| | | ① ETOH Withdrawal: D/C Librium ↑ Ativan to 2mg Q6h. Cont. Thiamin & Folate. |
| | | ② Diet: Regular Pt needs Assistance c̄ eating as he is Hand cuffed ®. Cont. IVF. |
| | | ③ Psych Consult (P) |
| | | ④ Social/legal: Yet to be assigned. Post-Arraignment Consider transfer to Bellvue Prison Ward. |
| | | ⑤ Renal: OMFS & ENT evaluating Pt. |
| | | Miller, Andrew, MD 914291 |
| LPN | 3/14/06 | ... |
| | 1:30 | ... |

601-013 Rev. 12/92 5/05 10/05
HHC 2478 (Oct 05)

43

Sun, 3 Jan 10   0901
User ID: 5559
                        Kings County Hospital Center
                           Chart Review Print

Location            Patient Name              Patient Number    Visit Number      Age    Sex
DIS-D2S21-A         Waiters,General           3046806           3046806-12        39Y    M

                                              Attending Physician
                                              Angus,Lambros

--------------------------------------------------------------------------------
Psychiatry Inpatient Consult
Event Time: Sun, 14 May 06  1837                      Status: complete

Sun, 21 May 06   1328  Documented by Lev Poberesky, MD

Consult Date/Time   : 14May2006 1837
Consultation Report : INITIAL PSYCHIATRIC CONSULT

                     5/14/06

                     WAITERS,GENERAL MR: 3046806

                     Pt is a 36 y.o. BM with alcohol abuse and dependence,
                     who came in after allegedly shooting at his family
                     members who in retaliation beat him up and threw him
                     through an aquarium.  Pt was placed on Librium and
                     Ativan, and was taken off Librium as per schedule,
                     however pt started to hallucinate and was agitated.  He
                     was placed back on Librium and Ativan which controlled
                     the agitation, and no new report of hallucination from
                     staff.  Spoke to consultee who said that they would
                     cancel the consult as there is no psychiatric question
                     to answer, but as yet consult has not been cancelled.
                     According to the girlfriend, the pt does no have any
                     other psychiatric issues outside of the alcohol
                     dependence and occasional marijuana smoking.  No hx of
                     depression, suicidality, homicidality, or psychosis in
                     the past.
                         Attempted to speak to pt.  Pt was only able to
                     mumble and had difficulty opening his eyes because of
                     the swelling.  Pt believes he is in Atlanta, Georgia,
                     and was surprised when he was informed that he was in
                     bRooklyn.  He also thinks his wife was with him last
                     night. Pt is still in delirium.

                     A>         alcohol delirium
                     alcohol dependence

                     REC: continue present alcohol detox management.
                     Recall psychiatry prn
                     D/W Dr. Poberesky
Diagnosis            : Alcoholism
Consultant           : Lev Poberesky, MD
Consultant ext/pager : 9172054735
Verifying Attending  : Lev Poberesky, MD
Attending Comment    : Case discussed. Agree.                    44
--------------------------------------------------------------------------------

Kings County Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|----------|--------------|----------------|--------------|-----|-----|
| DIS-EP | Waiters,General | 3046806 | 2308102-1 | 39Y | M |

Attending Physician

--------------------------------------------------------------------------

Ophthalmology Inpatient Consult -- cont'd

DFE:
MVP: wnl OU
C/D: 0.3 sharp, pink OD, 0.25 sharp, pink OS

CT orbits axial 1mm cuts: limited as head is turned.
(15-16 mm vertically, 7 mm medially displaced, and 14
mm A- P) Large medially displaced lamina papyracea
fracture without muscle entrapment, however MR medially
displaced, Globes OU are spherical, with no retrobulbar
hemorrhage OU, + intraconal air as well as air bubbles
within ethmoid air cells, + mild opacification of both
maxillary sinus right > left.

A/P:     Right orbital medial wall fracture
    Awaiting CT orbits with coronals (reformatted) to
better assess orbit.
    Ice to orbit x 48 hours
    No nose blowing
    Afrin nasal spray tid to nostrils
    Broad spectrum antibiotics (eg, Keflex 500 mg po
qid)
    Pain meds
    Cosopt 1 gtt bid OD (for slightly elevated IOP)
    Once pt more cooperative, will get better history
and re-attempt exam
    Will continue to follow.
    Will discuss with team

Diagnosis        : Fracture Orbit, Closed
Consultant       : Regina Del Rosario, MD
Consultant ext/pager: 917-760-1435
Verifying Attending : John Laudi, MD                        45
--------------------------------------------------------------------------

```
Sun,  3 Jan 10   0901                                    Page   1 of 1
User ID: 5559
                        Kings County Hospital Center
                             Chart Review Print
```

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|---|---|---|---|---|---|
| DIS-D2S21-A | Waiters,General | 3046806 | 3046806-12 | 39Y | M |

Attending Physician
Angus,Lambros

---------------------------------------------------------------------

Unscheduled F/U (Psychiatry Inpatient Consult)
Event Time: Mon, 15 May 06  1155                    Status: complete

Mon, 15 May 06  1209    Documented by Alan L Tusher, MD

Consult Date/Time   : 15May2006 1155
Consultation Report : Psych. Follow-up
                The patient was asleep but easily arousable.  He
        is disoriented to place ("Woodhole Hospital") and did
        not know the year but knew it was the "21st century".
        He also thought it was the ed of Maya and that he had
        been at his sisters house, down South, yesterday.
        Imp: Delirium due to medical etiology and/or Etoh
        withdrawal.
        Plan: 1.  The nurse reports that he has been   agitated
        at times and that is when they increase his sedation.
        Check LFT's since if they are WNL we can start Depakote
        which may help in the resolution of his delirium.
                2. Continue Ativan 2 mg po q 6h.  Hold if
        asleep or id Bp is less than 100/  60.
                3. Pt should be on one to one observation.
                4.  Psych will follow.
Diagnosis           : Delirium, Acute
Consultant          : Alan L Tusher, MD
Consultant ext/pager: (917)433-0863
Verifying Attending : Alan L Tusher, MD
---------------------------------------------------------------------


              * * * End of Report * * *
```

46

Tue, 27 Jun 06   1227                                    Page   1 of 4

Kings County Hospital CenterKings County Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|---|---|---|---|---|---|
| DIS-EP | Waiters,General | 3046806 | 2308102-1 | 36Y | M |

Attending Physician

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Ophthalmology Inpatient Consult
Event Time: Sun, 07 May 06  1632                   Status:  complete

Sun, 07 May 06  1635   Documented by Regina Del Rosario, MD

Consult Date/Time   : 7May2006 1632
Consultation Report : PGY 2 Ophthalmolgy Consult

5/7/06
Unknown Black Male 2308102 = Waiters, General 3046806

36 yo BM + intoxication reportedly started shooting a
gun, and in order to be stopped was punched , kicked,
was hit over head with fish tank, brought by police
with multiple lacerations and swollen right eye. Pt
uncooperative with exam. Seen in C1-trauma, pt in C
collar, hand-cuffed to bed with paper bags over hands
to be analyzed for gun powder residue. Unable to
voluntarily open right eye.

PMH: unknown
POH: unknown
Meds: unknown
All: unknown
FH: unknown

Va: unable to assess, pt uncooperative
P: 4-3 OU, no RAPD OU
EOM: restricted -2 in all directions of gaze OU, full
OS, unable to assess if pain with EOMS or diplopia
Ttono: 26, 27, 25 (with eyelid speculum), 20, 22, 19
(pt squeezing)

PLE (penlight + eyelid speculum OD)
LLA: + 3-4 rul and rll edema with 3.5 to 4 cm superior
temporal upper eyelid  laceration as well as 4-5 cm
laceration infraorbitally, + ecchymoses OU, no
crepitus, no resistance to retropulsion, no obvious
proptosis, no step off palpable, no hypoesthesia OU
SC: dense 4+ chemosis/SCH superior 180 degrees,
inferior 180 - no injection or chemosis, + flat SCH 90
degrees temporally OS
K: grossly clear
AC: formed OU, no gross hyphema OU
IP: brown, intact OU, round, equal, and reactive pupil
OU
Lens: clear OU

47

Tue, 27 Jun 06  1227                                    Page  2 of 4

Kings County Hospital CenterKings County Hospital Center
Chart Review Print

<u>Location</u>          <u>Patient Name</u>              <u>Patient Number</u>   <u>Visit Number</u>   <u>Age</u>   <u>Sex</u>
DIS-EP             Waiters,General              3046806           2308102-1        36Y    M

Attending Physician

--------------------------------------------------------------------------------

Ophthalmology Inpatient Consult -- cont'd

```
                    DFE:
                    MVP: wnl OU
                    C/D: 0.3 sharp, pink OD, 0.25 sharp, pink OS



                    CT orbits axial 1mm cuts: limited as head is turned.
                    (15-16 mm vertically, 7 mm medially displaced, and 14
                    mm A- P) Large medially displaced lamina papyracea
                    fracture without muscle entrapment, however MR medially
                    displaced, Globes OU are spherical, with no retrobulbar
                    hemorrhage OU, + intraconal air as well as air bubbles
                    within ethmoid air cells, + mild opacification of both
                    maxillary sinus right > left.



                    A/P:     Right orbital medial wall fracture
                        Awaiting CT orbits with coronals (reformatted) to
                    better assess orbit.
                        Ice to orbit x 48 hours
                        No nose blowing
                        Afrin nasal spray tid to nostrils
                        Broad spectrum antibiotics (eg, Keflex 500 mg po
                    qid)
                        Pain meds
                        Cosopt 1 gtt bid OD (for slightly elevated IOP)
                        Once pt more cooperative, will get better history
                    and re-attempt exam
                        Will continue to follow.
                        Will discuss with team
```

Diagnosis              : Fracture Orbit, Closed
Consultant             : Regina Del Rosario, MD
Consultant ext/pager: 917-760-1435
Verifying Attending : John Laudi, MD
--------------------------------------------------------------------------------

48

Tue, 27 Jun 06   1227                                    Page   3 of 4

                Kings County Hospital CenterKings County Hospital Center
                              Chart Review Print

Location          Patient Name          Patient Number   Visit Number   Age   Sex
DIS-D2S21-A       Waiters,General        3046806          3046806-12     36Y   M

                                         Attending Physician
                                         Angus,Lambros

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Psychiatry Inpatient Consult
Event Time: Sun, 14 May 06  1837                  Status: complete

Sun, 21 May 06  1328    Documented by Lev Poberesky, MD

Consult Date/Time   : 14May2006 1837
Consultation Report : INITIAL PSYCHIATRIC CONSULT

                    5/14/06

                    WAITERS,GENERAL MR: 3046806

                    Pt is a 36 y.o. BM with alcohol abuse and dependence,
                    who came in after allegedly shooting at his family
                    members who in retaliation beat him up and threw him
                    through an aquarium.  Pt was placed on Librium and
                    Ativan, and was taken off Librium as per schedule,
                    however pt started to hallucinate and was agitated.  He
                    was placed back on Librium and Ativan which controlled
                    the agitation, and no new report of hallucination from
                    staff.  Spoke to consultee who said that they would
                    cancel the consult as there is no psychiatric question
                    to answer, but as yet consult has not been cancelled.
                    According to the girlfriend, the pt does no have any
                    other psychiatric issues outside of the alcohol
                    dependence and occasional marijuana smoking.  No hx of
                    depression, suicidality, homicidality, or psychosis in
                    the past.
                        Attempted to speak to pt.  Pt was only able to
                    mumble and had difficulty opening his eyes because of
                    the swelling.  Pt believes he is in Atlanta, Georgia,
                    and was surprised when he was informed that he was in
                    bRooklyn.  He also thinks his wife was with him last
                    night. Pt is still in delirium.

                    A>          alcohol delirium
                    alcohol dependence

                    REC: continue present alcohol detox management.
                    Recall psychiatry prn
                    D/W Dr. Poberesky
Diagnosis           : Alcoholism
Consultant          : Lev Poberesky, MD
Consultant ext/pager: 9172054735
Verifying Attending : Lev Poberesky, MD
Attending Comment   : Case discussed. Agree.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 92 of 136 PageID #: 1707

Kings County Hospital CenterKings County Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|---|---|---|---|---|---|
| DIS-D2S21-A | Waiters,General | 3046806 | 3046806-12 | 36Y | M |

Attending Physician
Angus,Lambros

------------------------------------------------------------------

Unscheduled F/U (Psychiatry Inpatient Consult)
Event Time: Mon, 15 May 06  1155                    Status: complete

Mon, 15 May 06  1209    Documented by Alan L Tusher, MD

Consult Date/Time    : 15May2006 1155
Consultation Report  : Psych. Follow-up
                           The patient was asleep but easily arousable.  He
                       is disoriented to place ("Woodhole Hospital") and did
                       not know the year but knew it was the "21st century".
                       He also thought it was the ed of Maya and that he had
                       been at his sisters house, down South, yesterday.
                       Imp: Delirium due to medical etiology and/or Etoh
                       withdrawal.
                       Plan: 1.  The nurse reports that he has been   agitated
                       at times and that is when they increase his sedation.
                       Check LFT's since if they are WNL we can start Depakote
                       which may help in the resolution of his delirium.
                           2. Continue Ativan 2 mg po q 6h.  Hold if
                       asleep or id Bp is less than 100/ 60.
                           3. Pt should be on one to one observation.
                           4.  Psych will follow.
Diagnosis            : Delirium, Acute
Consultant           : Alan L Tusher, MD
Consultant ext/pager : (917)433-0863
Verifying Attending  : Alan L Tusher, MD
------------------------------------------------------------------


* * * End of Report * * *

50

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 93 of 136 PageID #: 1708

Kings County Hospital Center
451 Clarkson Avenue
Brooklyn, NY 11203

Adult Med/Surg/Rehab Discharge Summary

**Patient Information:**

Name:Waiters,General          DOB:6 May 70         Pt Tel#:(718) 485-7101
MR#:3046806                   Sex:M               Pt Loc :IP
Visit#:3046806-12             Age:36Y

****PRELIMINARY INSTRUCTIONS****

**General Discharge Information:**

Date of Admission            05/07/06
Preceptor MD                 Angus,Lambros, MD
Date of Discharge            05/17/06
Discharging MD               Fonji,Bertrand, MD
Admitting Diagnosis          Trauma
 rincipal Diagnosis          Trauma

**Clinical Information**

Admitting History            36 y/o male BIBEMS intoxicated s/p punch in right
                             eye and pushed into fish tank face first. CT scan
                             of facial bones and orbit showed multiple
                             fractures of nasal bone and orbit. Pt was started
                             on antibiotics for these fractures. OMSF saw pt
                             and determined no surgical intervention was
                             needed. Ophthalmology also cleared pt. Pt was
                             initially in ICU for management of DT. PT was
                             subsequently transferred to floor where he was
                             continued on ativan for DT and slowly switched to
                             Librium. Pt is no longer hallucinating and he is
                             AAO x 3. Pt also needed potassium levels
                             correction during stay. Pt is being discharged in
                             stable condition on a detox regimen and topical
                             erythromycin as per optho to f/u in ophthalmology
                             clinic in 1 week
Admitting Vitals             HT:N/A, WT:N/A, BP:168/85, Pulse:103bpm,
                             Resp:20BPM, Temp:99.2F
Admitting Physicial
 General                     normal
Hospital Course              See H and P

Labs on Admission            CMP 05/07/06, CBC Dif/rfx 05/07/06, PT 05/07/06,
                             aPTT 05/07/06, CMP 05/08/06, CBC Dif/rfx
                             05/08/06, PT 05/08/06, aPTT 05/08/06

Labs on Discharge            CBC Dif/rfx 05/16/06, BMP 05/16/06

Radiology                    CT and x-rays


Discharge Instructions

51

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 94 of 136 PageID #: 1709

### Kings County Hospital Center
451 Clarkson Avenue
Brooklyn, NY 11203

### Adult Med/Surg/Rehab Discharge Summary

**A copy of the Discharge Summary has been given to the patient on discharge**

**Patient Information:**

| | | |
|---|---|---|
| Name:Waiters,General | DOB:6 May 70 | Pt Tel#:(718) 485-7101 |
| MR#:3046806 | Sex:M | Pt Loc :IP |
| Visit#:3046806-12 | Age:39Y | |

### ****PRELIMINARY INSTRUCTIONS****

**General Discharge Information:**

| | |
|---|---|
| Date of Admission | 05/07/06 |
| Preceptor MD | Angus,Lambros, MD |
| Date of Discharge | 05/17/06 |
| Discharging MD | Fonji,Bertrand, MD |
| Admitting Diagnosis | Trauma |
| Principal Diagnosis | Trauma |

**Clinical Information**

| | |
|---|---|
| Admitting History | 36 y/o male BIBEMS intoxicated s/p punch in right eye and pushed into fish tank face first. CT scan of facial bones and orbit showed multiple fractures of nasal bone and orbit. Pt was started on antibiotics for these fractures. OMSF saw pt and determined no surgical intervention was needed. Ophthalmology also cleared pt. Pt was initially in ICU for management of DT. PT was subsequently transferred to floor where he was continued on ativan for DT and slowly switched to Librium. Pt is no longer hallucinating and he is AAO x 3. Pt also needed potassium levels correction during stay. Pt is being discharged in stable condition on a detox regimen and topical erythromycin as per optho to f/u in ophthalmology clinic in 1 week |
| Admitting Vitals | HT:N/A, WT:N/A, BP:168/85, Pulse:103bpm, Resp:20BPM, Temp:99.2F |
| Admitting Physical General | normal |
| Hospital Course | See H and P |
| **Labs on Admission** | CMP 05/07/06, CBC Dif/rfx 05/07/06, PT 05/07/06, aPTT 05/07/06, CMP 05/08/06, CBC Dif/rfx 05/08/06, PT 05/08/06, aPTT 05/08/06 |
| **Labs on Discharge** | CBC Dif/rfx 05/16/06, BMP 05/16/06 |
| **Radiology** | CT and x-rays |

52

Jan 10   0858:55

## Kings County Hospital Center
### 451 Clarkson Avenue
### Brooklyn, NY 11203

## Adult Med/Surg/Rehab Discharge Summary

**A copy of the Discharge Summary has been given to the patient on discharge**

Patient Information:

Name:Waiters,General           DOB:6 May 70          Pt Tel#:(718) 485-7101
  MR#:3046806                  Sex:M                 Pt Loc :IP
Visit#:3046806-12              Age:39Y

Discharge Instructions

Discharge Disposition      discharged to NYPD
Discharge Prescriptions    Chlordiazepoxide HCL  10 mg Capsule x 5 tab po
                           tid   1000/1400/1800; Chlordiazepoxide HCL  10 mg
                           Capsule x 4 tab po tid   1000/1400/1800 x1;
                           Chlordiazepoxide HCL  10 mg Capsule x 3 tab po
                           tid   1000/1400/1800 x1; Chlordiazepoxide HCL  10
                           mg Capsule x 2 tab po tid   1000/1400/1800 x1;
                           Chlordiazepoxide HCL  10 mg Capsule x 1 tab po
                           tid   1000/1400/1800 x1
Discharge Diet             Regular
Discharge Activities       Activities as tolerated
Condition at Discharge     stable
F/U Appointments

Patient Education          diagnosis this visit discussed, pt/caregiver
                           verbalized understanding

WT Monitoring Education no

Signatures

Res/PA/NP/MW Sign          Fonji,Bertrand, MD

        A complete list of medications was provided to the patient
                upon discharge from facility

53

# EXHIBIT C

PROCEEDINGS                                       531

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Okay.

3          Certainly, the Court has inquired.

4          I do not know whether, in fact, you wish to

5     rest on the record and then go into the pre-charge

6     conference so that we could go into closing arguments?

7          Certainly, if you rest, I'll entertain your

8     motions and then go into the pre-charge conference, so

9     that when the jury comes out we can then move from

10    there.  Or, I can have them brought in, you'll rest, and

11    certainly we'll go into the motions and the pre-charge

12    conference.

13         MR. SIMONS:  Whatever way the Court wants to

14    do it.

15         THE COURT:  I'll do it formally.  I'll have

16    the jury brought in, have the defendant rest, and then

17    entertain whatever motions you will have, and then we'll

18    go into the pre-charge conference.

19         Both sides are ready for the jury?

20         MR. SIMONS:  Yes.

21         MR. HALE:  Yes.

22         MR. SIMONS:  Actually, the defense does have

23    one thing to do.  The defense will introduce a certified

24    copy of Mr. Waiters' medical record.  That's all the

25    defense will do.

1          MR. HALE:  What relevance?

2          THE COURT:  Certainly --

3          MR. SIMONS:  Well, these are his medical

4    records from the injuries that he sustained.  There's

5    already been testimony he was taken off with a

6    stretcher, and these are his injuries.

7          This also goes towards his intoxication

8    defense.  In the record, it clearly shows that he was

9    very intoxicated, and he was treated for that.

10          MR. HALE:  Not without any explanation, Judge.

11          COURT OFFICER:  Ready for the jury, your

12    Honor?

13          THE COURT:  No, not quite yet.

14          MR. HALE:  It's simply not relevant.

15          MR. SIMONS:  Well, intoxication is a defense,

16    so it is relevant.  15.25 of the C.J.A. puts

17    intoxication as a defense for any pertinent element of

18    the charges.  In the medical records, it clearly shows

19    and it does state that he was intoxicated.  This would

20    be the day of the incident.  The Court has already heard

21    testimony regarding injuries sustained by Mr. Waiters

22    and how he was carried off on the stretcher.  So, this

23    is pertinent to this case.

24          MR. HALE:  Except that his injuries aren't

25    relevant to any issue in the trial.

PROCEEDINGS                           533

1        THE COURT:  Certainly, while they may not be,

2   the limited issue that he's raising in terms of

3   intoxication may bear upon and does bear upon his

4   intent.

5        MR. HALE:  Maybe if I can see exactly what

6   that says at what point, where it says intoxication.

7        MR. SIMONS:  Your Honor, the People have a

8   copy of his entire medical records.  So this is nothing

9   new.  It's throughout the whole medical records.

10       I mean, there's also other issues regarding a

11  statement allegedly made by Mr. Waiters after the fish

12  tank was thrown on top of his head.  I mean, the medical

13  records will clearly show that he did suffer a

14  concussion and injuries from that, which would put in

15  question any statement that he allegedly made after a

16  fish tank was dropped on his head.

17       MR. HALE:  Not without any explanation, Judge.

18  I don't think that we can get to B from A.

19       THE COURT:  I'm saying, certainly, as to the

20  intoxication that they're raising, if there is a

21  specific portion of the medical records that would be

22  relevant, I can see having those admitted, Mr. Simons.

23       MR. HALE:  That's why I just asked counsel

24  which part.

25       MR. SIMONS:  Your Honor, it's throughout, I

-VMG-

PROCEEDINGS                          534

1    believe, the entire medical record.

2              THE COURT:  I'm talking about from the date

3    that he was seen.  Because basically it's at the time

4    that he was admitted into the hospital.

5              MR. SIMONS:  Yes.  He was seen on May 7th of

6    '06, and I believe the E.M.S. and ambulance report

7    there's a notation of an overdose of E-T-H-O-H

8    substance, which is alcohol.  His blood work that was

9    taken --

10             (Pause in the proceedings)

11             THE COURT:  I'm waiting on you, Mr. Simons.

12             MR. SIMONS:  Oh.  I thought you were waiting

13   for something else.

14             THE COURT:  No, no.  I'm waiting on you,

15   Mr. Simons, to indicate and to show Mr. Hale what you're

16   referring to so that those portions can be extracted

17   from the medical records that you're proffering.

18             MR. SIMONS:  In the medical record, I believe,

19   there was a date May 7th of '06, there's a notation of

20   Mr. Waiters --

21             THE COURT:  Mr. Hale, do you have that or do

22   you wish to look on with him?

23             MR. HALE:  I'm going to have to look on with

24   him because I didn't bring that copy over.

25             THE COURT:  Okay.

PROCEEDINGS

1    MR. SIMONS: There's a notation where he was

2    intoxicated. There's also in here--and I'll have to

3    find it--where he is prescribed medicine because of his

4    intoxicated state. They have readings from lab reports.

5    His diagnosis was alcoholism when he did enter

6    the hospital.

7    MR. HALE: Just to note, alcoholism is

8    different than being intoxicated.

9    THE COURT: That is correct.

10    MR. SIMONS: In his lab report, they have a

11    reading from May 7th, which is described here, his

12    alcohol level was in the critical state.

13    THE COURT: Certainly, that would be relevant.

14    Mr. Hale?

15    MR. HALE: Here's what it says: Ethyl

16    alcohol--this is a parenthetical--(mg/dl): 386.24

17    (CRIT). That's a parenthetical. What does that mean?

18    I mean, if it's causes any sort of conjecture

19    or if there's any sort of ambiguity about it, you know,

20    it can't be just in the written document.

21    MR. SIMONS: It doesn't show -- I mean, all

22    the testimony has already been that Mr. Waiters was

23    drinking and intoxicated. And the medical records,

24    throughout the medical records, when he arrived at the

25    hospital, says he was intoxicated.

-VMG-

1          THE COURT:  As I said, if there's something

2    which says that, will you show it to Mr. Hale so we can

3    pull out those documents, and certainly that would be

4    relevant to be submitted before the jury.

5          MR. HALE:  Except voluntary intoxication is

6    not a defense.  It has to be intoxication that rises to

7    the level that negatives an element of the crime.  The

8    jury would have to conjecture on this.  There's nothing

9    in there that allows them, without explanation, to

10   evaluate at what level his intoxication is.  If at all.

11         THE COURT:  Well, I don't know if he has it.

12   I'm giving him an opportunity to go over it, Mr. Hale.

13         MR. HALE:  Okay.

14         MR. SIMONS:  Does the Court want me to pull

15   out all the reports that make reference to intoxication?

16         THE COURT:  That's correct.

17         MR. SIMONS:  Okay.  I can do that.

18         (Pause in the proceedings)

19         MR. SIMONS:  Your Honor, I believe I've found

20   the pertinent information regarding intoxication.  I

21   guess, just so the record is clear, it was the defense's

22   intent to present all the medical records regarding the

23   injuries sustained by Mr. Waiters because the defense

24   feels that the jury needs to know that that was part of

25   the incident, the injuries that he sustained.

PROCEEDINGS                                537

1              It's my understanding the Court is not

2     permitting the defense to do that.

3              THE COURT:  That is correct.

4              MR. SIMONS:  I would take an exception to

5     that.

6              But I do have the other records pertaining to

7     the intoxication.  I know some of it still needs to be

8     redacted because they have other information, but it

9     does clearly show that when he was admitted into the

10    hospital that he was intoxicated.

11             THE COURT:  Do you have those records for

12    Mr. Hale to review?  Certainly, if there's a question,

13    the Court will also review them.

14             (Handed to Mr. Hale)

15             MR. HALE:  If I can just review these for a

16    moment, your Honor, for the Court?

17             THE COURT:  Certainly.

18             MR. HALE:  The first page, is entitled "Adult

19    Medical Surgical Rehab Discharge Summary".  Under

20    "clinical information" it says:  "Admitting History."

21    Again, that means it's taken from somewhere else.  It

22    says:  "36 Y/0 male, BIB EMS," all caps, "intoxicated,

23    S/P, punch in right eye and pushed in a fish tank face

24    first."

25             Well, there is a reference to him having "DT"

-VMG-

1    Again, I can't expect the jury to know that that means

2    delirium tremens without any sort of expert testimony.

3                   That is the discharge summary.

4                   And there's a number of other things on there,

5    your Honor, that first page.

6                   The second piece of paper is called an

7    "Ambulance Call Report".  This was referenced to by

8    Mr. Simons before.  Under the center section of the

9    piece of paper, there's is "presenting problem".  There

10   are a number of boxes which would be checked out.  One

11   of those boxes is for "overdose"; that box is filled in.

12   Below that, where it has a line, it's printed

13   "substance" underneath, it says "ETOH".

14                   That's it on that.

15                   Again, a lot of other information.

16                   The third piece of paper is "Patient's

17   Progress Communication Record".  It's dated May 7th;

18   there is no time on it.

19                   At the bottom, it says "CNS:".  What that

20   means, I have no idea.  It says:  "Unable to assess due

21   to intoxicated state."  That's printed; that's not in

22   handwriting.

23                   The next page is also a "Patient's Progress

24   Communication Record".  It's from the 8th of May, 2006,

25   6 a.m.  I'll be darned if I can see anything on here

1      relating to alcohol.

2                   Maybe you can point that out to me.

3                   (Pause in the proceedings)

4                   MR. HALE:  Oh, yeah, there's a handwritten

5      notation that says "ETOH: 28.09".

6                   The next one, again, it's another "Patient's

7      Progress Communication Record", the 8th of May, 8 a.m.

8      Again, in handwriting, "ETOH: 28".

9                   The next piece of paper is "Kings County

10     Hospital Chart Review, Ophthalmology Inpatient Consult".

11     It's dated the 7th of May, '06.  Again, in terms of

12     history:  "36 Y/O B/M, plus intoxication, reportedly

13     started shooting a gun.  In order to be stopped, he was

14     punched, kicked and hit over the head."  It's the same

15     narrative as the other --  as the Discharge Summary.

16                   The next paper is dated the 21st of May, '06.

17     It's the "Initial Psychiatric Consult".

18                   Again, I don't know how this can get put in

19     without proffering the psychiatric defense.

20                   Actually, the consult time was the 14th of

21     May; the document was completed on the 21st of May.

22                   It says:  "Patient is a 36-year-old B/M with

23     alcohol abuse and dependence, who came in after

24     allegedly shooting at his family members, who in

25     retaliation beat him up and threw him through an

                              -VMG-

PROCEEDINGS                                    540

1     aquarium."

2                 It states in here, "According to the

3     girlfriend, the patient does not have any other

4     psychiatric issues outside the alcohol dependence and

5     occasional marijuana smoking."

6                 It says:  "Recommended continue present

7     alcohol detox management.

8                 The next couple pieces of paper are lab

9     results.  They're kept as a record in terms of

10    chronology.

11                It states for Mr. Waiters on the first one--I

12    think we referred to this before:  "Ethyl alcohol,

13    (mg/dl):  386.24 (CRIT)".

14                THE COURT:  It has ethanol alcohol actually

15    listed on that document?

16                MR. HALE:  It says "ethyl alcohol", and then

17    it has the "mg/dl" and gives that number.

18                THE COURT:  Okay.

19                MR. HALE:  I think the next page does the same

20    thing.  Right.  Here it says:  "Ethyl alcohol, mg/dl:

21    158.55 (ABN)".  That's still for the 7th, although it

22    doesn't give a time.

23                The last one, again for the 7th, I guess

24    that's 4:01 p.m.  No, I'm incorrect about that.

25                Again, it says:  "Ethyl alcohol, mg/dl:  28.9

-VMG-

PROCEEDINGS                                      541

1      (ABN)

2              Here's the problem, your Honor.  One, a lot of

3      these things are referenced to alcoholism as opposed to

4      alcohol level.  There is no definition about what these

5      levels mean.  A lot of them, it's very cryptic about.

6      For instance, when you just have the report that says

7      "ETOH", it's certainly not within the realm of lay

8      people to understand what that is.

9              A lot of this in terms of "admitting history",

10     we don't know if it's based on actual observation or if

11     it's based upon reportage from somewhere else.

12             Now, medical reports are generally admissible,

13     your Honor, when they have to do with an injury which is

14     part of the issue in the case.  I'm not even sure that

15     they're even admissible for this purpose at all, in

16     terms of trying to say what his alcohol level is.

17             Again, you're talking about intoxication.

18     Yes, intoxication is a defense, but only to the extent

19     that it nullifies an element in the crime, and the

20     element that we're usually talking about is intent.

21     There's absolutely no way from this that would cause a

22     jury other than to just completely speculate on what his

23     level of intoxication is or whether it would nullify.

24     In other words, it's less guidance --  It's actually a

25     problem for the jury to speculate about this.  I don't

1    think that without explanation, medical or otherwise,

2    about what any of this means, that it is at all

3    relevant.  In fact, it would be completely misleading to

4    the jury.

5              THE COURT:  Officer, may I have those, please.

6              (Handed to the Court)

7              (Pause in the proceedings)

8              THE COURT:  Certainly, I've listened to the

9    arguments of both sides.

10             Over the People's objection, I'm going to

11   allow the proffered records to come in, which would

12   clearly indicate that at the time that he was admitted

13   to the hospital he was intoxicated.  I know that there

14   is an issue.

15             I'm also going to allow the part of the

16   records which mentions ethanol alcohol to be admitted.

17             The other portions certainly are not relevant.

18   In terms of the history, I'm not going to allow that to

19   be admitted.  Certainly, as to whether he suffers with a

20   history of alcohol abuse, that would not be relevant in

21   terms of his treatment and the diagnosis or

22   recommendations.  That's not really relevant.

23             I am going to allow certain portions in.  For

24   instance:  "CNS:  Unable to assess due to intoxicated

25   state."  Again, that would be relevant to the time and

PROCEEDINGS                              543

1     the place that the event occurred.  So that I will, in

2     fact, allow.

3                    MR. HALE:  Your Honor, to that end, what is

4     "CNS"?

5                    THE COURT:  That could be certified nursing?

6                    MR. HALE:  Exactly.  Could be.

7                    THE COURT:  Could be.  But, certainly, I'm

8     going to allow that line.  Anything that's not relevant

9     I would, in fact, redact.  It's going to be redacted

10    except for the certain portions which says "intoxicated"

11    and the dates on which in fact that observation was

12    made.

13                   MR. HALE:  Of course, there's also not a time

14    there, your Honor.

15                   Here's where the problem comes in, too.  Does

16    that come in --  Is that a treatment thing?  Is that an

17    opinion of whoever was looking at him?  Who was the

18    person that was looking at him?  Did it take into

19    account that he had a head injury at the same time?

20    What are we supposed to do with that?

21                   Like I said, I don't even know what "CNS"

22    means.  The Court doesn't know.  Does the jury know?

23                   THE COURT:  Certainly, one of the things that

24    we can do, which probably should have been done, was

25    either to have someone brought in or to call to find out

PROCEEDINGS                            544

1    what the definition of that is.

2              MR. HALE:  Exactly.

3              I think it doesn't become relevant until those

4    people do testify.

5              Now, here's the other thing that goes along

6    with all this, your Honor.  I don't know that this jury

7    is going to known that ethyl alcohol is the by-product

8    of drinking alcohol.  They're also not going to know on

9    those parts of the lab reports where they have the

10   little parenthesis and it says what level and whether

11   it's CRIT or ABN or NOR.  They're not going to be able

12   to quantify that whatsoever, your Honor.  So, how are

13   they going to determine at what level the intoxication

14   is?

15             Then there is another problem.  That is that

16   in proffering this, and perhaps making the argument to

17   the jury, it ignores what Mr. Simons already knows,

18   which is this defendant, in talking to both Doctor Drobb

19   and Doctor Bardey, said that he hadn't been drinking

20   that morning, was not intoxicated, and was able to give

21   a coherent version, his coherent version about what had

22   happened.

23             THE COURT:  Mr. Hale, certainly there was

24   testimony from the witness, Miss Warren, which indicated

25   that, in fact, he was drinking.

-VMG-

PROCEEDINGS                          545

1          MR. HALE:  I don't dispute that, your Honor.

2          What I do dispute is making the argument that

3    he's intoxicated while then having in the back pocket

4    his own statement that he's not.  And then can I

5    introduce those statements to rebut?

6          THE COURT:  May I see counsel at sidebar,

7    please.

8          (Off-the-record discussion held at the bench)

9          THE COURT:  Mr. Hale?

10         MR. HALE:  Your Honor, again, it's my position

11   that the parts which the Court is considering allowing

12   in in this case, again, remembering that medical records

13   admissible, if at all, are for the treatment of an

14   individual when that injury is part and parcel or

15   germane to the case.

16         Mr. Waiters' hospitalization is from injuries

17   that were sustained after the incident in question and

18   are not admissible because they do not involve any issue

19   for the jury to decide in this case.  Therefore, any

20   reference that is made in those medical records to his

21   intoxication or his level of alcohol would, one, not be

22   admissible even if his overall medical condition was an

23   issue in the case, because it does not have anything to

24   do with his treatment on it.  And this all comes out in

25   the C.P.L.R. in terms of the purposes of medical

1      records, where it has the hearsay exception.

2              Taking them out of that realm and taking them

3      just piecemeal in this regard, they are pure hearsay

4      because they don't go to any issue in the case.

5              Now, we are not talking about unavailable

6      witnesses who have made these observations.  Those are

7      available witnesses, according to the hospital records.

8      Therefore, if you want somebody to testify or if you

9      want to put in evidence of his intoxication and to make

10     sure that the jury understands the levels of

11     intoxication, because if the Court thinks that this is

12     admissible, and I submit that it is not because it's

13     hearsay, then they would be able to assess at what

14     level.

15             The issue is not whether he is intoxicated.

16     Because, as we know, the C.P.L. says intoxication is not

17     a defense.

18             THE COURT:  That's true.  However, the jury

19     may take into consideration in determining whether there

20     was intent.

21             MR. HALE:  Right.

22             So, the important part is not intoxication,

23     but the level of intoxication.

24             Now, the jury, if they just hear this, they're

25     going to be given numbers, which mean nothing.  They're

PROCEEDINGS                                                    547

1    going to be given opinions, which mean nothing.  They're

2    not going to be able to assess that level of

3    intoxication.  That's the issue for the jury.  Not

4    whether he was or whether he wasn't, but whether it

5    negatives an element of the crime.

6             Now, I don't know how anybody from this record

7    can argue without testifying, without speculating.  I

8    don't know that it can be done.  I don't see any way

9    that it can be done.

10             If it is that ambiguous and if it would tend

11   to mislead the jury, then it shouldn't be admitted.  At

12   least not without some support with it that says what

13   these things mean.

14             THE COURT:  Quite frankly, Mr. Hale, I would

15   agree with you that the best way would have been to get

16   someone from the hospital to certainly interpret the

17   records as to those limited issues.  Quite frankly, I

18   don't know why, you know, someone wasn't called or at

19   the very least to get an assessment by the doctor who

20   appeared, even if it was by the People, something that

21   would assist.

22             MR. HALE:  Well, I'm not in a position of

23   assisting him, your Honor.

24             THE COURT:  I understand that.  Nor should you

25   be.  But I'm saying that that is possibly one way that

1    it could have been rectified.

2            MR. HALE:  My position is it's the only way,

3    your Honor.

4            What is Mr. Simons going to get up there and

5    say?  That this level means something?  That this

6    person's observation is any better than any other

7    person's observation?  That one person's intox, what

8    does it mean in a medical standpoint?  Does it mean that

9    he can't form intent?  I mean, this is all going to be

10   speculation.  What's he going to do, testify?  Then it

11   becomes impossible for me to rebut.  Nor should I have

12   to.

13           Again, you say it might be the better course.

14   We're still not under a time crunch here, Judge.  It can

15   be done.

16           Again, my concern is this jury speculates.

17           THE COURT:  Mr. Simons, do you wish to

18   respond?

19           MR. SIMONS:  Just briefly, Judge.

20           I believe Mr. Hale must have forgotten during

21   his opening he stated Mr. Waiters was intoxicated.

22   Because he stated after Mr. Waiters has a drink, that

23   changed his demeanor and he became an abusive person.

24   Every witness that has testified so far has made

25   reference to Mr. Waiters drinking.  I believe Lorenzo

1    said he was intoxicated before the incident.  Jackie

2    says he was drinking.

3            So, this is not as big an issue as I believe

4    the People have made it out, because if he checks his

5    opening, he spent a lot of time making reference to how

6    intoxicated Mr. Waiters was and how that intoxication

7    changed him to commit the act that he's being charged

8    with.  So, I believe this is relevant.

9            THE COURT:  I agree that it is relevant.  My

10   point, Mr. Simons, is this:  That there's some portions

11   of the record that the Court is inclined to allow to get

12   introduced that need to have an explanation, because

13   "CNS", if it's a nursing assistant, certainly that

14   should be broken down.  I tend to agree with Mr. Hale as

15   to those points, and even with the level --  the amounts

16   of the ethanol alcohol.  There should be some assistance

17   to the jury.

18           Again, I'm inclined to allow you to do it.

19   The only thing that I'm saying is that there should have

20   been someone to at least, certainly for the jury's

21   edification, be able to explain what that means so that

22   they should have some kind of understanding as to those

23   numbers.

24           MR. HALE:  Here's the other part, your Honor.

25   Again, what I have said, it wasn't evidence.

1          THE COURT:  No, it's not evidence.  I hear

2   you.

3          MR. HALE:  But, again, if there is already

4   evidence that he was drinking, if there is already

5   evidence and they're talking about his behavior at the

6   time this was going on in terms of saying well, he's

7   drinking or well, he's intoxicated, then what is even

8   the necessity for having any of this brought in?  It

9   seems to me then just to be --  Since it is under this

10  hearsay sort of thing, what is the necessity for even

11  having this in?

12         THE COURT:  Certainly, as I said, while I'm

13  inclined to allow it in, the better course would be to

14  have a witness to be able to explain certain terminology

15  which is included in the records.

16         Because, again, as I said, I will allow you to

17  introduce it, Mr. Simons, but certainly there should be

18  an explanation in terms of what you pulled out, what I

19  have before the Court currently as what you seek to

20  introduce as part of the certified medical records.

21         MR. SIMONS:  Well, just based on the Court's

22  decision, because it was my intention, I believe the

23  records would show that Mr. Waiters was intoxicated on

24  the day of the incident, which I believe that's the

25  essence of what the records are showing, to be

PROCEEDINGS                    551

1    consistent with all the other witnesses.

2               Who "CNS" is --

3          THE COURT:  The other thing that concerns me

4    is the ethanol alcohol level, what that means.

5    Otherwise, there would be no basis to seek to introduce

6    that.

7               So, apparently, Mr. Simons, you also believe

8    that there's some relevance to having that portion of

9    the medical record introduced, and it would be for the

10   edification of the jury in terms of what that

11   specifically means.

12          MR. SIMONS:  Well, your Honor, it is the

13   defense opinion that the ethanol alcohol level, and as

14   made reference to each level, whether it's normal,

15   abnormal or a critical stage.  I mean, it's either

16   normal or it's not normal.  I believe this is a common

17   sense type of issue not beyond the realm of the jury.

18               I know the People object to it for more

19   strategic reasons, but I believe it is not beyond the

20   realm of the jury to understand that.

21          THE COURT:  Well, I know that there's

22   common-law indicia of intoxication, but certainly this

23   would go beyond the common-law indicia of intoxication.

24               So, if you're seeking to have blood levels,

25   the amount of ethanol alcohol in Mr. Waiters' blood

1       stream, then clearly there should be someone to explain

2       it for the edification of the jury as to what, in fact,

3       that would mean.  Otherwise, there's no point to seek to

4       introduce those levels of ethanol alcohol in his blood

5       stream.

6                   MR. SIMONS:  Your Honor, the defense at this

7       point is not introducing any additional witnesses at

8       this point.

9                   We would request that the Court permit all the

10      information in, and we're prepared for the Court to make

11      its ruling based on the defense not presenting any

12      additional witnesses at this time.

13                  THE COURT:  May I see counsel at sidebar.

14                  (Off-the-record discussion held at the bench)

15                  THE COURT:  It's the Court's understanding

16      that the defense is not going to be calling any medical

17      witness in order to certainly enlighten the jury as to

18      what the numbers mean contained in the medical records.

19                  So, at this point, the Court only has two

20      pages before it with two lines, one indicating:  CNS

21      unable to assess due to intoxicated state.  And the

22      other that says:  36-year-old male intoxicated, or BIB

23      EMS, brought in by E.M.S. intoxicated.

24                  That's really the two lines that would be

25      relevant.  Everything else that was handed up to the

PROCEEDINGS                                    553

1    Court really would not be without an explanation by

2    medical personnel to explain what the ethanol alcohol

3    level would be and certainly the amounts and how that

4    affected the defendant as far as this case is concerned.

5    Everything else is going to be redacted, any kind of

6    trauma or anything else but those two lines on those two

7    pages of the medical records that I have before me.

8                    Do you understand that, Mr. Simons, and is

9    that what you're saying you wish to go forward with?

10                   MR. SIMONS:  Your Honor, I would, of course,

11   take exception to your ruling, but, yes, I'm prepared to

12   go forward with that.

13                   THE COURT:  Mr. Hale, is there anything you

14   wish to say?

15                   MR. HALE:  Well, I guess let's then ask

16   whether his having put at least those portions of the

17   records in whether it's relevant and admissible to call

18   either Doctor Drobb or Doctor Bardey for the limited

19   purpose of saying that they had a conversation with

20   Mr. Waiters and that they had discussed the incident and

21   that he indicated that he was not intoxicated at the

22   time of the incident?

23                   MR. SIMONS:  Your Honor, I don't know whether

24   we would really have to address that.  That's not proper

25   in any sense.  That doesn't rebut the medical records.

-VMG-

1    Also, there's no basis for that.  These aren't

2    statements coming from Mr. Waiters.  These are medical

3    records.  So, we can't even rebut a medical record from

4    a statement of --  It's not relevant.  It's improper.

5             MR. HALE:  Except for the whole reason that

6    they're being admitted is because that they mean

7    something.  They mean something to counsel, they mean

8    something to the defendant.  They mean that he's going

9    to argue that he was so intoxicated that he couldn't

10   form intent.

11            THE COURT:  I mean, certainly, he has a right

12   to make that argument, and certainly there was evidence

13   adduced by the People's witnesses which indicated that,

14   in fact, he had been drinking.

15            As I said, certainly, there is common-law

16   indicia of intoxication, so certainly you don't have to

17   be an expert witness, and certainly the People's

18   witnesses testified to the fact that there had been --

19   that the defendant had been heavily drinking.

20            Now, if you're saying that that's subjective

21   in terms of what one person may do in terms of whether

22   two drinks is enough to intoxicate one person or five

23   drinks would be enough to intoxicate another person, so

24   it depends on their alcohol tolerance level, certainly

25   if that's what you're saying, Mr. Hale, I'm not quite

PROCEEDINGS                                    555

1       sure --

2                   MR. HALE:  I don't think the Court

3       understands.

4                   The issue is --  It's not whether he was

5       taking a drink and it's not whether he was intoxicated.

6       The issue is was he so intoxicated that it negatived the

7       element of the crime.  He gave accounts to both

8       Doctor Drobb and Doctor Bardey in which he talks about

9       that he clearly knew what was going on and that he had a

10      specific intent.

11                  THE COURT:  I understand it, Mr. Hale.

12      However, what I'm going to do is allow the defense, over

13      your objections --  I understand your arguments.  I

14      certainly would disagree them.  I'm going to allow them

15      to introduce the medical records.

16                  And you're saying that they're certified

17      medical records, the two pages, which redact everything

18      but the reference to the defendant being intoxicated.

19                  This is going to be handed back to the defense

20      as not relevant.  These are the two pages that it would

21      be, and they would have to be redacted appropriately.

22                  (Handed to Mr. Simons)

23                  THE COURT:  What I would be inclined to do is

24      have the jury brought in, certainly I'll ask whether the

25      defense rests, you'll indicate that you're offering

                              -VMG-

1    Defendant's E in evidence, with the appropriate

2    redactions.  That will be done over the People's

3    objection, which will be noted for the record.

4            Actually, that would be H, I believe.

5            MR. SIMONS:  H, right.

6            THE COURT:  It will be marked Defendant's H

7    for identification.

8            (Received and marked Defendant's Exhibit H for

9    identification)

10           COURT OFFICER:  So marked.

11           THE COURT:  Are both sides ready?

12           MR. SIMONS:  Yes.

13           MR. HALE:  Yes, your Honor.

14           (Pause in the proceedings)

15           COURT OFFICER:  Ready for the jury, your

16   Honor?

17           THE COURT:  Both sides are ready?

18           MR. HALE:  Yes.

19           MR. SIMONS:  Yes.

20           THE COURT:  Ready.

21           COURT OFFICER:  Jury entering.

22           (At this time, the jury entered the courtroom)

23           THE CLERK:  The jury is now present.

24           Do the attorneys waive the roll call?

25           MR. SIMONS:  Yes.

# EXHIBIT D

Case 1:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 124 of 136 PageID #: 1739

95 A.D.3d 1043, 943 N.Y.S.2d 589, 2012 N.Y. Slip Op. 03674

**View National Reporter System version**

**\*\*1** The People of the State of New York, Respondent

v

General Waiters, Appellant.

Supreme Court, Appellate Division, Second Department, New York

May 8, 2012

CITE TITLE AS: People v Waiters

HEADNOTE

Crimes

Sentence

Concurrent and Consecutive Terms—Separate and Distinct Acts

Lynn W. L. Fahey, New York, N.Y. (Jonathan M. Kratter of counsel), for appellant, and appellant pro se.
Charles J. Hynes, District Attorney, Brooklyn, N.Y. (Leonard Joblove and Rhea A. Grob of counsel), for respondent.

  Appeal by the defendant from a judgment of the Supreme Court, Kings County (Dowling, J.), rendered June 2, 2008, convicting him of murder in the second degree, attempted murder in the second degree, and assault in the first degree (two counts), upon a jury verdict, and sentencing him to an indeterminate term of 25 years to life imprisonment on the conviction of murder in the second degree, and determinate terms of 25 years imprisonment on his conviction of attempted murder in **\*1044** the second degree to be followed by a period of five years' postrelease supervision, 25 years imprisonment on his conviction of assault in the first degree under count four of the indictment to be followed by a period of five years' postrelease supervision, and five years' imprisonment on his conviction of assault in the first degree under count five of the indictment to be followed by a period of five years' postrelease supervision, with all sentences to run consecutively.

  Ordered that the judgment is modified, on the law, by directing that the sentences for attempted murder in the second degree and assault in the first degree under count five of the indictment run concurrently with each other and concurrently with the sentences for murder in the second degree and assault in the first degree under count four of the indictment; as so

Case 3:13-cv-03636-DLI   Document 11-1   Filed 05/18/15   Page 125 of 136 PageID #: 1740

modified, the judgment is affirmed.

On May 7, 2008, during an argument at his girlfriend's apartment, the defendant fired a gun five times, killing Tajmere Clark and injuring Mary Lee Clark, Lorenzo Warren, and Shatashia Lewis. After a jury trial, the defendant was convicted of murder in the second degree with respect to Tajmere Clark, attempted murder in the second degree with respect to Lorenzo Warren, and assault in the first degree with respect to Mary Lee Clark (count four) and Shatashia Lewis (count five). Upon sentencing the defendant, the Supreme Court ordered that all of the sentences run consecutively.

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt as to each count on which the defendant was convicted was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

The defendant did not preserve for appellate review his contentions regarding the **\*\*2** prosecutor's summation (*see* CPL 470.05 [2]; *People v Dien*, 77 NY2d 885 [1991]; *People v Nuccie*, 57 NY2d 818 [1982]; *People v Li*, 11 AD3d 483 [2004]). In any event, the remarks that the defendant now claims to have been improper did not deprive him of his right to a fair trial (*cf.* CPL 470.15 [6] [a]).

The defendant's claim, raised in his pro se supplemental brief, that he was deprived of the constitutional right to the effective assistance of counsel is based, in part, on matter appearing on the record and, in part, on matter outside the record, and thus **\*1045** constitutes a " 'mixed claim' " of ineffective assistance (*People v Maxwell*, 89 AD3d 1108, 1109 [2011], quoting *People v Evans*, 16 NY3d 571, 575 n 2 [2011], *cert denied* 565 US —, 132 S Ct 325). In this case, it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel (*cf. People v Crump*, 53 NY2d 824 [1981]; *People v Brown*, 45 NY2d 852 [1978]). Since the defendant's claim of ineffective assistance cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety (*see People v Freeman*, 93 AD3d 805 [2012]; *People v Maxwell*, 89 AD3d at 1109; *People v Rohlehr*, 87 AD3d 603, 604 [2011]).

The sentences must be modified, as the People correctly concede. The evidence established that the defendant's murder of Tajmere Clark and assault on Mary Lee Clark were committed by separate and distinct acts, so the sentences imposed on those two counts were properly ordered to run consecutively to each other (*see* Penal Law § 70.25; *People v Laureano,* 87 NY2d 640, 643 [1996]). By contrast, the evidence failed to establish that the acts constituting the attempted murder of Lorenzo Warren and assault on Shatashia Lewis were separate and distinct from each other and from the crimes committed against Tajmere Clark and Mary Lee Clark. Consequently, the imposition of consecutive sentences for the crimes against Warren and Lewis was improper, and we modify the judgment accordingly (*see* *People v Jones,* 41 AD3d 507, 508-509 [2007]). Rivera, J.P., Balkin, Eng and Austin, JJ., concur.

Copr. (c) 2013, Secretary of State, State of New York

NY,2012.
People v Waiters
95 A.D.3d 1043, 943 N.Y.S.2d 589, 2012 N.Y. Slip Op. 03674

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(c) 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT E

EXPERT VITAE

Richard Stripp, Ph.D., ACFE

132 Cove Road Huntington, NY 11743

rstripp@forensictox.com

## Education
St. John's University, College of Pharmacy and Allied Health Professions
Jamaica, New York 11439
Ph.D., Pharmacology & Toxicology Specialization, 1993
MS., Forensic Toxicology Specialization, 1988
BS. Toxicology (minors in Chemistry and Biology), 1983

## Toxicology Laboratory Certifications
New York State Department of Health Laboratory Director Certificate of Qualification
- Clinical Toxicology
- Forensic Toxicology

State of New Jersey Board of Medical Examiners
- Bioanalytical Laboratory Director-Toxicology

State of Florida Agency of Health Care Administration
- Toxicology

Maryland Department of Health and Mental Hygiene, Office of Healthcare Quality
- Forensic Toxicology
- Toxicology- Drugs of Abuse-Therapeutic Drug Level

Pennsylvania Department of Health
- Toxicology

State of California
- Toxicology

## Professional Profile & Current Faculty Appointment
The City University of New York 2001-Present
The John Jay College of Criminal Justice &
The Graduate Center of The City University of New York
Criminal Justice Doctoral Program, Forensic Science Program
Tenured Assistant Professor of Forensic Toxicology &
Member of the Center of Modern Forensic Practice
New York, NY

## List of the courses presently taught:
Forensic Toxicology
Toxicology
Analytical Toxicology
Forensic Pharmacology
Clinical Toxicology
Toxicology of Environmental and Occupational Chemicals

**Current Position**

Chief Scientific and Technical Officer          12/12-present
Sterling Healthcare Services
East Northport, NY 11731

Serve as the Chief Science Officer providing leadership to five toxicology laboratories; Sterling Reference Laboratories, Tacoma WA, American Forensic Toxicology Services, East Northport, NY Forensic Laboratories, Denver, CO and SECON Labs, MA.
- Direct all the technical and scientific programs for the Enterprise.
- Serve as Director of the Research & Development Laboratory.
- Provide senior leadership to the technical staff and toxicologists
- Senior member of the Executive Management Team for Sterling Healthcare Services
- Serve as the Technical Advisor to the Board of Directors of Sterling Healthcare Opco
- Provide oversight and direction to the Technical Advisory Board


CEO & Laboratory Director          09/09-12/12
American Forensic Toxicology Services, Inc.
East Northport, NY 11731

Directing all aspects of a clinical and forensic toxicology practices and serve as an expert consultant in the field of toxicology and pharmacology to attorneys, investigators and physicians involved in forensic and clinical toxicological evaluations associated with ethanol, drugs and chemicals. Provide expert unbiased case reviews involving drugs of abuse, iatrogenic/ therapeutic agents, lead and other toxic metals, carbon monoxide and environmental/occupational hazards. Providing services related to all aspects of forensic, clinical, environmental, and general toxicology including, impartial evaluations involving drug effects, overdose, toxic chemical exposure, medical malpractice associated with drug therapy, poisoning, and the role of drugs, alcohol, or chemical exposure in civil and criminal litigation. This covers a full breath of forensic medical-legal cases:
- Direction of all Laboratory Operations
- Review and Approve Toxicology Reports
- Consult with Clinicians Regarding Toxicology Results
- Serve as an Expert Witness: Experienced in Depositions and Court testimony
  - Forensic Toxicology Case Reviews
  - Litigation Support
  - Workers' Compensation
  - DUI/DWI
  - Drug and Alcohol Effects
  - Pharmacology Evaluations
  - Environmental/Occupational Chemicals & Toxic Chemical Exposure
  - Interpretation of Analytical Results and Drug Testing Cases
  - Continuing Education and Lectures
  - Chemical and Product Safety


**Other Professional Experience**
St. John's University
School of Pharmacy & Allied Health Professions
Visiting Associate Professor of Toxicology

Jamaica, NY 11439 1993-present

Long Island University
Arnold & Marie Schwartz
College of Pharmacy and Health Sciences
Assistant Professor of Toxicology and Pathophysiology
Division of Pharmacology, Toxicology and Medicinal Chemistry
75 Dekalb Avenue
Brooklyn, NY 11201 1994-2001

United States Department of Homeland Security (formerly DOE)
Research Toxicologist
New York, New York 10014-3621 1985-1994

Formulate, design, and direct investigations intended to determine the fate and effects of potentially toxic chemical agents, which result from energy related activities by using biomolecular and biochemical markers. The classes of contaminants studied include various heavy metals, organics, and radionuclides. Serve as the Principle Program Director responsible for the development of the scope and direction of the Laboratory's biological investigations including: planning, organization and performance of field investigations; arrangement for the biochemical and biological analyses of appropriate samples; evaluation of the quality of the analytical results; determination of the significance of the data to the research programs objectives; and dissemination of the relevant findings as written reports for peer-review publication or oral presentation at scientific symposia. Serve as an expert consultant in the field of toxicology to scientists with other Federal Agencies, D.O.E, officials, and academic organizations.

New York City Office of the Chief Medical Examiner
Toxicologist
New York, New York 10016 1983-1985

Performed the methods of forensic toxicological analysis of human samples collected at autopsy used to determine the role of drugs and other toxic chemicals in establishing the cause of death for medico-legal investigation. Determination of blood alcohol concentration. Analyzed the results of chemical analyses to identify potential toxic insults.

Courses at other Institutions:
Methods of Toxicology, Biochemistry, Clinical Toxicology, Forensic Toxicology, Analytical Toxicology, and Principles of Toxicology
St. John's University (9/93-present)
College of Pharmacy and Allied Health Professions, Jamaica, NY 11439

Pathophysiological Basis of Clinical Practice, Pathophysiology for Physicians Assistants
State University of New York
Downstate Health Sciences Center-School of Health Professions
Brooklyn, NY 11203

Pharmacology, Human Anatomy & Physiology
The City University of New York, Queensborough Community College
Queens, NY

PROFESSIONAL & UNIVERSITY ACTIVITIES

Member of the American Academy of Clinical Toxicology
Certified Forensic Consultant, American Board of Forensic Examiners
Member of the National Institute of Justice Peer Review Panel in Forensic Toxicology
The International Association of Therapeutic Drug Monitoring and Clinical Toxicology
Served as a Moderator for a Criminalistics session at the Academy of Forensic Sciences meeting, New Orleans, LA 02/05.
Appeared on various media outlets as an expert in poisoning cases presented.
President's Advisory Committee on Graduate Studies
American Scientific Consultants Corp.
New Directions Subcommittee of the President's Advisory Committee on Graduate Studies
Forensic Science Personnel and Budget Committee
Forensic Science Departmental Committee on Instrumentation
Forensic Science Department Curriculum Committee
Forensic Science Committee to Hear Appeals
Member of the Forensic Science Academic Standards Committee
Member of the Forensic Science Instrumentation Committee
Chairman of the Committee to Develop the Forensic Science Department 5 year Strategic Plan


Additional Training Courses Completed
Agilent GC/MS Training 2009

Thermo Scientific Corporation Onsite Trace DSQ, GC/MS Training Course 2006

FBI Laboratory Symposium Washington D.C.
Basic Forensic Toxicology I, II, III
Chemical Terrorism and Forensic Toxicology 2004

Perkin Elmer Corporation Danbury, CT
Atomic Absorption Spectrophotometry Training Course 1987


PUBLICATIONS & PRESENTATIONS (10 years, full list available upon

request)
Stripp, R.A. Drugs of Abuse and Alcohol, Book Chapter: Alcohol and Volatiles In: Forensic Chemistry ed. L. Kobilinsky.Stripp, R.A.

The Forensic Aspects of Poisons. The Forensic Science Series, Ed. L. Kobilinsky. Chelsea House Publishers, Langhorne, PA 19047-1813 2007.

Stripp, R.A. and Brinsko, K. Assessment of the role of endogenous opiate receptors in the development of hyperprolactinemia following acute ethanol exposure in mice. J. of Pharmacol. and Toxicol.2 (3): 290-294, 2007.

Stripp R. A., Riservato, L. and Lopez, B. The effect of ethanol on prolactin and luteinizing hormone release in μ deficient female ovariectomized mice. (submitted

Pharmacol and Toxicol).

Stripp, R. A. and Knorr, K. Hair drug testing: The assessment of the effectiveness of masking agents to produce false negatives in drug tests. (in preparation)

Stripp, R. A. and Guia, L. A study of cross reactivity of selected animal proteins on an enzyme-linked immunoassay for recombinant human erythropoietin. (in preparation)

Miller G. and Stripp, R.A. A determination of the extent of adulteration of Chinese patent/herbal medicines with western drugs. Legal Med 9, (5): 258-264, 2007.

Stripp, R. A. and Hoffman D.. Alteration in Prolactin Secretion in Female Ovariectomized Rats by some Endocrine Disrupting Chemicals. Int J of Toxicol. 3 (1) 2006.

Hoffman, D. and Stripp, R. A. The role of vomitus and mouth alcohol in assessing evidential alcohol testing. The Forensic Panel Letter, July 2000.

Hoffman, D. and Stripp, R. A. Commentaries on blood breath alcohol ratios and testing. The Forensic Panel Letter, March 2000.

Stripp, R.A. Chapter 1: Normal and Altered Cellular Function. In: Focus on Pathophysiology ed. Bullock & Henze, J.B. Lippincott Company, Philadelphia PA. 1999.

Stripp, R. A. A Concise Guide Medical Physiology and Pathophysiology. WCB McGraw-Hill Company, New York 1999.

Hoffman, D. and Stripp, R. A. The technical aspects of evidential breath alcohol testing in legal cases selected for review. The Forensic Panel Letter, August 1999

Miller G. and Stripp, R.A.. A determination of the extent of adulteration of Chinese patent/herbal medicines with western drugs. The American Academy of Forensic Science. Seattle, Washington. February 2006.

Stripp, R.A. and L. Guia. A study of cross reactivity of selected animal proteins on an enzyme-linked immunoassay for recombinant human erythropoietin, Joint Meeting of the Society of Forensic Toxicologists & The International Association of Forensic Toxicologists, Washington, D.C. August 2004.

Stripp, R.A. Endocrine Disruption and the Role of Drugs and Chemicals: Consideration to Women's Health Issues, JJC Science Department Seminar Series, March 2004.

LIST OF DEPOSITIONS AND COURT TESTIMONY AVAILABLE UPON REQUEST

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 1
----------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,    :
                                        :    **AFFIDAVIT**
          - against -                   :
                                        :    Indictment#
                                        :    3464/06
                                        :
GENERAL WAITERS,                        :
                                        :
                           Defendant.   :
----------------------------------------X


    **DR. RICHARD STRIPP** , hereby states the following to be true upon penalty of perjury:

    1.   I have a Ph.D from St. John's University, College of Pharmacy and Allied Health Professions.  I have laboratory certifications from the New York State Department of Health Laboratory Director Certificate of Qualification in clinical and forensic toxicology. My enclosed *curriculum vitae* describes my professional affiliations and accomplishments at length.

    2.   I have previously testified as an expert in the field of forensic toxicology.  I have been qualified as an expert in forensic toxicology in the State of New York and other states.  I have reviewed records and prepared expert opinions on hundreds of cases involving forensic toxicology.

    3.   I was retained by Gary Farrell, Esq., to review certain medical and court records pertaining to General Waiters in connection to his hospitalization at Kings County Hospital commencing on May 7, 2006.

    4.   Based upon my review of these records and my experience as a forensic toxicologist, I have concluded that Waiters blood alcohol level as noted in these records was extremely high such that the relevant and expected pharmacological effects of alcohol in this case would have

been consistent with the presence to various degrees of
severity with some or all of the following factors:

    a) Emotional instability; loss of critical judgment

    b) Impairment of perception, memory and comprehension

    c) Significant decreased sensatory response and altered
reaction times

    d) Lack of sensory-motor coordination; severe
impairment of balance, difficulty walking or standing

    e) Disorientation and mental confusion

    f) Disturbances of vision and of perception of color,
form, motion and dimensions and reduced visual acutity;
peripheral vision and glare recovery

    g) Alterations in muscular coordination and motor
functions; staggering gait and impairment to the extent that
simple tasks such as walking and standing would be difficult

    f) Blackouts and amnestic effects, are likely at this
level

    g) Loss of consciousness and fatal alcohol intoxication
is possible at BAC of this magnitude.

5. Notwithstanding the above opinions, I would acknowledge
that the effects of alcohol are greatly influenced by
individual variations among users. Some users may become
intoxicated at much lower BAC levels while others may be
more tolerant than the average person. Tolerance is the
diminution of the effectiveness of a drug after a period of
prolonged or heavy use of that drug or a related drug. The
extreme level of intoxication seen in this case has the
potential to affect the cognitive functions of the most
tolerant alcohol user, even if the physical functions were
not noticeably impaired.

6.    I  believe  that  these  medical  records  contain
sufficiently technical terms that an average juror would not
understand their significance without the explanation that I
or a similarly credentialed expert could provide.

_/S/ Richard Stripp_

Dr. RICHARD STRIPP

SWORN TO BEFORE ME ON THIS 5TH DAY OF DECEMBER 2013

GARY FARRELL
Notary Public, State of New York
No. 02FA5033968
Qualified in Westchester County
Commission Expires 11-6-2015

NOTARY PUBLIC