UNITED STATES DISTRICT COURT  FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK

GENERAL WAITERS,

                          Petitioner,

- versus -

WILLIAM LEE,

                          Respondent.

MEMORANDUM AND ORDER
13-CV-3636 (JG)

APPEARANCES:

    LAW OFFICES OF GARY A. FARRELL
        305 Broadway
        Suite 1400
        New York, NY 10007
    By:    Gary Farrell
        *Attorney for Petitioner*

    KINGS COUNTY DISTRICT ATTORNEY
        350 Jay Street
        Brooklyn, NY 11201
    By:    Rhea A. Grob
        Leonard S. Joblove
        *Attorneys for Respondent*

JOHN GLEESON, United States District Judge:

        On September 26, 2015, I granted General Waiters's petition for a writ of habeas corpus. In my order, I directed respondent William Lee (hereinafter "the State") to release Waiters from custody within 45 days unless the State declared its intent within that period to retry Waiters on the charges against him. On November 6, 2015, the State declared such an intent, with the condition that any retrial would occur after its appeal of my order granting the writ, and would occur only if that order is affirmed. The State simultaneously moved for an order to stay Waiters's release pending that appeal. In opposing the latter motion, Waiters

submitted an application for release on certain conditions pending the outcome of the State's appeal.

For the reasons set forth below, Waiters is ordered released from custody conditioned on: (1) his posting of an appearance bond in the amount of $50,000; (2) placement of him by Pretrial Services in a three-quarter house in Brooklyn; and (3) his compliance with the following conditions: GPS monitoring, random drug and alcohol testing, educational development, vocational training, and refraining from all drug and alcohol use, handling of a weapon or firearm, and contact with the victims and their families. This order is stayed until March 25, 2016 to permit the State to seek appellate review.

BACKGROUND

Waiters's convictions arose from his firing a gun during an argument on May 7, 2006, which resulted in the death of a child and the injury of three others.[1] I granted his petition for habeas relief on September 26, 2015 on the ground that he was deprived at trial of his Sixth Amendment right to effective assistance of counsel. *See* Order, ECF No. 19, at 1. In my order granting Waiters's petition, I directed the State to release him within 45 days[2] unless, within those 45 days, it declared its intention to retry Waiters. *Id.* at 15.

On November 6, 2015, the State moved for a stay of my order pending appeal. *See* Mem. ("Mot. for Stay"), ECF No. 22. In its motion, the State declared its intent to retry Waiters "with the qualification that the State intends first to pursue an appeal that, if successful, would render a retrial unnecessary." *Id.* at 5. Waiters opposed the request for a stay on

---

[1] I assume familiarity here with the offense conduct, trial court proceedings, sentencing, and state court appellate procedural history set forth in my November 5, 2013 order. *See* ECF No. 7.

[2] The 45-day period ended on November 10, 2015.

November 12, 2015. *See* Resp., ECF No. 23. The State also moved for an interim stay of the order pending my decision on the instant motion to stay. Grob Aff., ECF No. 22, at ¶ 2. I granted the interim stay on November 12, 2015.

Because the motion before me concerns whether to release Waiters on conditions, on November 19, 2015, I directed the State to produce him for an interview with Pretrial Services. The interview was conducted on December 10, 2015.

The State filed a letter on December 9, 2015 requesting that if I should decide to release Waiters, I also grant a stay of release for a time period that would enable the State to: (1) move in the Court of Appeals for a stay of my order releasing him, and (2) produce Waiters to the New York State Supreme Court for that court to determine Waiter's status as a pretrial detainee on a pending indictment. *See* Letter, ECF No. 26. Waiters replied in opposition to that request on December 10, 2015. *See* Reply, ECF No. 27.

The next day, Waiters submitted a motion requesting his release on conditions proposed by the Osborne Association's Court Advocacy Services ("CAS").[3] *See* Mot. for Bond, ECF No. 28. The proposal detailed a release plan for Waiters, including options for housing with family or at a halfway house, mental health treatment and counseling, educational development toward a GED, and vocational training.[4] *Id.* Oral argument was held on December 11, 2015.

---

[3] On December 3, 2015, I authorized the appointment of Meredith Schriver, a court advocate and mitigation specialist at the Osborne Association, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.

[4] CAS supplemented this proposed plan in a letter dated December 15, 2015. *See* ECF No. 30. The State responded to the overall proposal on December 16, 2015. *See* ECF No. 31.

DISCUSSION

A. *Legal Standard*

The release of a successful habeas corpus petitioner is governed by Federal Rule of Appellate Procedure 23(c), which provides as follows:

> While a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise – be released on personal recognizance, with or without surety.

Fed. R. App. Pr. 23(c). The Supreme Court stated in *Hilton v. Braunskill*, 481 U.S. 770 (1987), that Rule 23(c) "undoubtedly creates a presumption of release from custody in such cases."[5] *Id.* at 774; *see also Walberg v. Israel*, 776 F.2d 134, 135 (7th Cir. 1985) (the language of Rule 23(c) "has been interpreted to create a presumption in favor of bail pending review"). That presumption may be overcome by factors traditionally considered in whether to stay[6] the judgment of a civil case. *Hilton* at 776. They include:

---

[5] The presumption of release is indicated by the history of Rule 23(c). *See U.S. ex rel. Thomas v. State of N.J.*, 472 F.2d 735, 742 (3d Cir. 1973) ("An understanding of the full import of Rule 23(c) requires some knowledge of its history."). The rule stems directly from Supreme Court Rule 34(3) (now Rule 36(3)(b)), which the Court adopted in 1886. *Id.* The original Supreme Court Rule read as follows: "Pending an appeal from the final decision of any court or judge discharging the prisoner, he shall be enlarged upon recognizance, with surety, for appearance to answer the judgment of the appellate court, except where, for special reasons, sureties ought not be required." *Id.* (citing 117 U.S. 708). This original language made mandatory the release of a successful habeas corpus petitioner; the only discretion a district court had was to determine whether or not to require a surety. *Id.* In 1967, the mandatory language was revised to provide that the petitioner shall be released, with or without surety, "unless the court or justice or judge rendering the decision, or the court of appeals or this court, or a judge or justice of either court, shall otherwise order." *Id.* at 742-43. 1967 was also the year the Supreme Court created the Federal Rules of Appellate Procedure, and the conditional release provision was drafted into Rule 23(c). *Id.* at 742. "The 1967 change was not intended to adopt a general rule in favor of custody pending appeal, but only to substitute discretion, to be exercised in limited situations, for what was formerly a mandatory release requirement." *Id.* at 743 (citing E. Bosky & E. Gressman, The 1967 Changes in the Supreme Court's Rules, 42 F.R.D. 139, 161 (1967)).

[6] The Supreme Court presents the question of whether to stay the release of a successful habeas petitioner and whether to release him pending appeal "as mirror images of each other." *Franklin v. Duncan*, 891 F. Supp. 516, 518-19 (N.D. Cal. 1995) (citing *Hilton*); *see Hilton*, 481 U.S. at 775-76 ("[A] court's denial of enlargement to a successful habeas petitioner pending review of the order granting habeas relief has the same effect as the court's issuance of a stay of that order."). At oral argument, the State explained that, in its reading of Rule 23(c), its declared intent to retry Waiters requires a stay of his release – regardless of the State's appeal. *See also*

4

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.*; *see also O'Brien v. O'Laughlin*, 557 U.S. 1301 (2009). A court must also consider the possibility of a petitioner's flight, any danger the petitioner may pose to the public, and the state's interest in continued custody and rehabilitation of the petitioner pending a final ruling by the appellate court. *Hilton*, 481 U.S. at 777; *see also Dhine v. District Director*, 822 F.Supp. 1030, 1031 (S.D.N.Y. 1993).

  B. *Analysis*

  1. *Likelihood of Success on the Merits*

   In *Hilton*, the Supreme Court stated:

   > Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. Where the State's showing on the merits falls below this level, the preference for release should control.

481 U.S. at 778 (citations omitted). Courts have described the likelihood of success on appeal as "a calculation that requires disinterested analysis and frank self-criticism by the district court, [which] seems inevitably to gravitate toward immediate release." *Hernandez v. Dugger*, 839 F. Supp. 849, 852 (M.D. Fla. 1993); *see also Franklin*, 891 F.Supp. at 519. Obviously, had I believed the State's argument to be correct, I would not have granted Waiters's petition to begin with. Nonetheless, reviewing the circumstances of the case with all the disinterest I can muster, I conclude that the State's likelihood of success on appeal is low. Defense counsel's failure to

---

Mot. for Stay at 5. This is a misreading of Rule 23(c), which authorizes me to choose between release or a stay pending appeal; the State's reading would obviate the Rule altogether.

even inform the jury of Waiter's astronomically high blood alcohol content ("BAC"), let alone the consequences of that fact as they bore on his *mens* rea, require that conclusion. I further conclude for the same reason that the State has not established a "substantial case on the merits."

The State contends that the Court of Appeals is likely to reverse the order granting Waiters's petition because: (1) trial counsel provided reasonably effective assistance, or (2) "at the very least, . . . [because] the state court's holding to that effect was not an unreasonable application of Strickland . . . ." Mot. for Stay at 4; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("the proper standard for attorney performance is that of reasonably effective assistance" (citations omitted)); *see also id.* at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). Echoing the arguments it made in opposition to Waiters's petition, the State explains that in its view, trial counsel's failure to call an expert witness in support of an intoxication defense "was consistent with sound strategy" because "expert testimony might have weakened the intoxication defense by highlighting the point that, as a heavy user of alcohol . . . a high [BAC] would be less likely to render [Waiters] incapable of forming the requisite intent." Mot. for Stay at 3-4. In addition, the State argues, "there is no reasonable probability that expert testimony would have changed the verdict" because Waiters's acts at the time of the shooting demonstrated that he knew what he was doing. *Id.* at 4. I disagree.

As I discussed in my September 26, 2015 order, I reject the contention that trial counsel's failure to call a medical expert to explain Waiters's BAC and the effect of that BAC on his mental state at the time of the crime was a strategic decision. *See* Order at 10. No

reasonable defense attorney would have foregone the opportunity to present that defense, especially when the BAC was so probative on its face. *Id.* at 11. The State's argument that calling an expert may have worked against Waiters's interests because the testimony would have revealed his higher alcohol tolerance is not persuasive. The higher tolerance would not have precluded powerful expert testimony on the effect a .39 BAC likely had on Waiters specifically. I believe the Second Circuit will conclude that defense counsel's failure to offer Waiters's medical records at trial fell below the standard of care we demand of lawyers, and that it was unreasonable for the state court to conclude otherwise.

2. *Irreparable Injury Absent a Stay*

The Supreme Court stated in *Hilton* that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal . . . will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." 481 U.S. at 777. Waiters has served nearly ten years in prison already. Whether or not he wins on appeal, he may serve additional time in prison.[7] However, there is no evidence that Waiters is unlikely to appear if he is released on the conditions I am ordering here.

3. *Substantial Injury to Other Parties Interested in the Proceeding*

Continued detention of Waiters pending the outcome of the State's appeal could cause Waiters substantial injury. The appeal itself could easily take around 18 months to brief, argue, and decide.[8] The State argues that Waiters "would not be injured at all" during a stay

---

[7] If the State prevails on appeal, no retrial will be necessary, and Waiters will continue to serve the remainder of his sentence, which amounts to nearly 37 years. *See* Mot. for Stay at 6. If Waiters prevails, he will be retried. Assuming his intoxication defense is successful, his sentence will likely be between 10 and 30 years, or between 0 and 20 additional years. *See* Letter, ECF No. 29, at 1.

[8] The State has not moved for an expedited appeal at the Second Circuit.

7

period because in its view, he will likely have to serve additional years in prison. Mot. for Stay at 6. The Supreme Court has recognized, however, that a habeas petitioner's interest in release is "always substantial." *Hilton*, 481 U.S. at 777. The deprivation of a person's liberty has never been taken lightly in our justice system. The possibility that Waiters will spend additional years in prison despite the issuance of a writ of habeas corpus is of great significance. "Immediacy was and is [the] essence [of the writ]." *Jago v. U.S. Dist. Court*, 570 F.2d 618, 621 (6th Cir. 1978). Rule 23(c) preserves that essence.

Furthermore, conditionally releasing Waiters could be of great benefit to him if he makes good use of the time. It would be in his best interest to take full advantage of the vocational and educational opportunities I am imposing to prepare for reentry. If he is able to demonstrate that he has improved himself in the decade since his conviction during a term of conditional release, it is possible the sentencing judge at his retrial – if he reaches that point – could be persuaded toward leniency.

4. *Public Interest*

The *Hilton* Court stated that "if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him." 481 U.S. at 777. The State has not established such a risk.

While there is no overstating the significance of the crimes Waiters was convicted of, there is also no discounting the impact of nearly ten years in prison on who Waiters is today. The State's arguments now are based on the facts as of the time Waiters was arrested. But I do

not view Waiters as though he is a pretrial detainee who was just charged with serious violent crimes; the passage of so many years since the crime makes a big difference.[9]

Waiters is now 46 years old. He had no criminal history for the ten years prior to the May 7, 2006 incident. Since entering prison, he has had no disciplinary infractions. *See* Resp., ECF No. 23, at 5. He has become a deeply religious man and is committed to counseling others who have experienced alcohol addiction. *Id.* In addition, I am requiring that he live in a three-quarter house under GPS monitoring, spend his days busy in educational and vocational programs, undergo random drug and alcohol testing, and abstain from all contact with the victims' families, drug and alcohol use, and handling of violent weapons.

\* \* \*

Taken as a whole, the relevant factors weigh in favor of release. In order to lessen the risk of flight and to protect the community, I am only ordering Waiters's release on a conditional basis. This conditional release is premised on Waiters posting a bond as well as Pretrial Services finding placement for him at a three-quarter house in Brooklyn.

5. *Staying Release to Allow Motion to Stay in Court of Appeals and State Court*

The State has requested that, should I order release, I give it time to move in the Court of Appeals for a stay pursuant to Rule 23(c).[10] That request is granted: the release of Waiters on the conditions set forth here is stayed until March 25, 2016.

---

[9] *But see Hilton*, 481 U.S. at 779 ("[W]e also think that a successful habeas petitioner is in a considerably less favorable position than a pretrial arrestee . . . to challenge his continued detention pending appeal.").

[10] In my mind, the correct procedure would be for the State to appeal this order rather than attempting to receive a stay from the Court of Appeals directly by means of Rule 23(c). *See Walberg*, 776 F.2d at 135 ("the usual rule with stays, and it applies with equal force to bail, is that the lower court is asked first, and the higher court afterward if necessary"). Furthermore, Rule 23(d) of the Federal Rules of Appellate Procedure provides:

The State also asks for time to present Waiters before the New York State Supreme Court, Kings County, for that court to determine the question of bail. That request misapprehends the legal framework within which Waiters's release status must be determined, and is therefore denied. Waiters is subject to federal court jurisdiction during the pendency of his petition for a writ of habeas corpus and any appeal from an order granting that writ. As the Third Circuit stated in *Thomas*, "The habeas corpus court by its writ requires that the respondent be delivered up to its custody. It may at some point conclude that state custody should be restored, and it is naturally interested in the availability of the petitioner to respond to its judgment. Thus, any recognizance, with or without surety, must in a habeas case run to and be filed with the federal court." 472 F.2d at 743; *see also Jago*, 570 F.2d at 621 (once the writ is issued, "the body of the petitioner came under the lawful control of the district court. In legal contemplation that control continues pending decision whether to free the petitioner or to return him to state custody."); *Rosa v. McCray*, 2004 WL 2827638, at *7 (S.D.N.Y. Dec. 8, 2004) (federal district court retains jurisdiction over bail order during appeal of order granting habeas petition at Court of Appeals); *Morales v. Portuondo*, 154 F. Supp. 2d 706 (S.D.N.Y. 2001); *Weisner v. Abrams*, 1990 WL 4745 (E.D.N.Y. Jan. 11, 1990); *Brown v. Smith*, 470 F.Supp. 131 (S.D.N.Y. 1979). Only when the State's appeal of the order granting Waiters's petition is

---

> An initial order respecting the custody or enlargement of the prisoner and any recognizance or surety taken, shall govern review in the court of appeals and in the Supreme Court unless for special reasons shown to the court of appeals or to the Supreme Court, or to a judge or justice of either court, the order shall be modified, or an independent order respecting custody, enlargement or surety shall be made.

Fed. R. App. P. 23(d). "Rule 23(d) creates a presumption of correctness for the order of a district court entered pursuant to Rule 23(c), whether that order enlarges the petitioner or refuses to enlarge him, but this presumption may be overcome in the appellate court 'for special reasons shown.'" *Workman v. Tate*, 958 F.2d 164, 166 (6th Cir. 1992) (citing *Hilton*, 481 U.S. at 774) (internal quotation marks removed).

resolved will he be back in the state's jurisdiction, either for retrial or for continued incarceration on his original conviction.

## CONCLUSION

For the foregoing reasons, Waiters is ordered released from custody conditioned on: (1) his posting of an appearance bond in the amount of $50,000; (2) placement of him by Pretrial Services in a three-quarter house in Brooklyn; and (3) his compliance with the following conditions: GPS monitoring, random drug and alcohol testing, educational development, vocational training, and refraining from all drug and alcohol use, handling of a weapon or firearm, and contact with the victims and their families. Release is stayed until March 25, 2016 to permit Pretrial Services the time to arrange an appropriate three-quarter house placement and to give the State an opportunity to seek a stay from the U.S. Court of Appeals for the Second Circuit.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 9, 2016
      Brooklyn, New York